UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number 24-cv-21050-CMA

PRESIDENT DONALD J. TRUMP, an individual,

   Plaintiff,

v.

AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC NEWS, INC., a Delaware corporation, and GEORGE STEPHANOPOULOS, an individual,

   Defendants.

**DEFENDANTS' MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants American Broadcasting Companies, Inc., ABC News, Inc., and George Stephanopoulos (collectively, the "Defendants") move to dismiss with prejudice the Complaint of Plaintiff Donald J. Trump for failure to state a claim.

**PRELIMINARY STATEMENT**

In this case, former President Trump seeks to re-litigate a meritless theory of defamation that he has already lost twice in New York. Mr. Trump is collaterally estopped from doing so here.

And if this Court were to reach the merits, at bottom, this case asserts that even after a jury has found that a person committed a violent sexual assault, it is defamatory to say that the person committed a "rape." That is not a proposition Florida law recognizes. To the contrary, courts in this State and around the country have consistently rejected variations of this same theory. This action therefore presents straightforward issues of law that this Court can – and we submit should – resolve on this motion to dismiss.

Plaintiff's action arises out of two related and well-publicized civil actions that were tried in the Southern District of New York. Author E. Jean Carroll alleged that in the 1990s Mr. Trump

1

raped her in a department store changing room, an allegation Mr. Trump denied. In the first case tried, a jury found Mr. Trump liable for sexual battery based on his "sexual abuse" of Ms. Carroll. In addressing post-trial motions and a related defamation claim by Mr. Trump, Judge Lewis Kaplan twice held that the jury had specifically found that Mr. Trump had forcibly penetrated Ms. Carroll's vagina with his fingers.

The same jury did not find Mr. Trump liable for sexual battery on the basis of "rape," as that term is narrowly defined in New York's Penal Code – *i.e.*, penile penetration. As a result, in post-trial motions, Mr. Trump challenged the jury's multi-million dollar damage award for sexual battery, and in another related case also sued Ms. Carroll for defamation for accusing him of "rape." But in two separate court orders, the Southern District of New York court found that for all material purposes, the jury *did* find that Mr. Trump had "raped" Ms. Carroll. As Judge Kaplan explained, in both common parlance and many legal codes, digital penetration is "rape." Most relevant here, the court granted a motion to dismiss Mr. Trump's defamation claim against Ms. Carroll challenging her depiction of the assault as "rape," finding as a matter of law it was substantially true that a jury found that he had raped her. *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5017230, at *8 (S.D.N.Y. Aug. 7, 2023), *aff'd in part,* 88 F.4th 418 (2d Cir. 2023).

On March 10, 2024, ABC News aired a segment on *This Week with George Stephanopoulos*, in which Mr. Stephanopoulos interviewed Congresswoman Nancy Mace. Rep. Mace had recently endorsed Mr. Trump for President and had previously talked about her own experience as a rape survivor. During that interview, Mr. Stephanopoulos repeatedly and truthfully stated that a jury in the *Carroll* case had found Mr. Trump liable for rape and that finding was affirmed by a judge. Nonetheless, Mr. Trump now brings materially the same defamation claim against these Defendants that he lost on the pleadings against Ms. Carroll.

Mr. Trump alleges, as he did in New York, that it was defamatory to state that a jury found him liable for "raping" Ms. Carroll. Mr. Trump is collaterally estopped from re-litigating that question here. His claim also fails on the merits, because as the New York court found it is substantially true that Trump was found liable for raping Carroll. Finally, it also fails because the fair report privilege independently protects the rights of journalists to describe court proceedings – which is exactly what Mr. Stephanopoulos did here.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint ("Compl.") with prejudice.

## FACTUAL BACKGROUND

### A. The Parties

Plaintiff is former President Donald J. Trump. Defendant American Broadcasting Companies, Inc., doing business as ABC News, produces news programs, including *This Week with George Stephanopoulos* ("*This Week*"). Compl. ¶¶ 6-7.[1] Defendant George Stephanopoulos is a veteran Emmy and Cronkite-award winning journalist and the host of *This Week*.[2] *Id.* ¶ 8.

### B. The Carroll Litigations

Ms. Carroll, a New York-based journalist, published a book in 2019 reporting that Trump had "sexually assaulted ('raped') her in the mid-1990s." *Carroll*, 2023 WL 5017230, at *1. Immediately after, in June 2019, Mr. Trump attacked Ms. Carroll's claims as false, denied the assault, and claimed that she had accused him for "ulterior and improper purposes." *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, at *1 (S.D.N.Y. July 19, 2023). Those claims and counterclaims sparked two lawsuits:

*Carroll I.* In 2019, Ms. Carroll sued Mr. Trump for defamation, alleging he had falsely asserted she was lying about the assault. *Carroll*, 2023 WL 5017230, at *1.

*Carroll II.* In 2022, Ms. Carroll sued Mr. Trump a second time, asserting (1) additional claims for defamation based on his ongoing denial of her sexual assault allegations on social media, and (2) claims for battery on the basis of alleged rape and sexual abuse under New York's Adult Survivors Act ("ASA"). The ASA was passed after Ms. Carroll first filed suit in 2019, and it temporarily tolled the statute of limitations for civil claims alleging certain sexual offenses. *Carroll*, 2023 WL 5017230, at *1.

Although *Carroll I* was filed three years before *Carroll II*, the proceedings in the two cases did not proceed sequentially and developments in one case often impacted the other. The proceedings in both cases that are most relevant here are summarized below.

---

[1] Defendant ABC News. Inc. is not involved in news production, but for purposes of this motion to dismiss fully joins the merits of the motion.

[2] https://nationalpress.org/award-winner/george-stephanopoulos/ (last visited May 8, 2024).

3

1. **The Jury Verdict in *Carrol II* (May 2023)**

The sexual battery and defamation claims against Mr. Trump in *Carroll II* were tried first, in April and May 2023. Ms. Carroll testified that "Mr. Trump assaulted her in the dressing room of a New York department store…by, among other things, forcibly penetrating her vagina with his fingers and with his penis." *Carroll*, 2023 WL 5017230, at *1. The jury found that Trump had defamed and "sexually abused" Ms. Carroll, which is a felony under the New York Penal Law defined as "sexual contact by forcible compulsion." *Id.*; *see also* Declaration of Nathan Siegel ("Siegel Decl."), Ex. 1 at 1. The jury did not find that Trump had "raped her within the narrow, technical meaning of that term in the New York Penal Law", *i.e.,* by forcibly inserting his penis into her vagina. *Id.* The jury awarded Ms. Carroll compensatory and punitive damages totaling $5 million: $2.2 million for her sexual battery claim and $2.98 million for defamation. *Id.*

2. **Mr. Trump's Counterclaim in *Carroll I* (June 2023)**

About a month after the jury verdict in *Carroll II*, Mr. Trump pled a counterclaim in *Carroll I* based on a CNN interview Ms. Carroll gave after the *Carroll II* verdict. In that interview, Ms. Carroll stated that when she heard the jury's response to the rape issue on the verdict sheet was "No," she responded, "Oh yes he did." She also told Mr. Trump's counsel, "He did it and you know it." *Id.* at *4. Mr. Trump's counterclaim alleged that Ms. Carroll's statements to CNN were false and defamatory because they "disregarded the jury's finding that [Mr. Trump] did not rape her" – a claim that mirrors Mr. Trump's allegations against Defendants here. *Id.* at *2; *see also* Siegel Decl. Ex. 2 ¶ 10.

3. **The Court's Decision in *Carroll II* Holding the Jury Found that Mr. Trump had Raped Ms. Carroll (July 2023)**

Following the *Carroll II* verdict, Mr. Trump also moved for a new trial and/or remittitur in that case. *See Carroll*, 2023 WL 4612082. With respect to the sexual battery verdict, among other things Trump argued that the jury's verdict was excessive because the jury had concluded that he had not "raped" her. He further argued that the jury's verdict "could have been based upon *no more than* "groping of Ms. Carroll's breasts…" *Id.* at *3 (emphasis added).

In the July 19, 2023 decision, Judge Lewis Kaplan denied Mr. Trump's motion, holding the jury found that Mr. Trump had raped Ms. Carroll based on the common meaning of the word. Citing to the definition of "rape" in dictionaries, as well as many federal and state criminal statutes,

4

Judge Kaplan underscored the narrowness of New York's Penal Law's definition in concluding that Ms. Carroll had proven that Mr. Trump had "raped" her:

> The finding that Ms. Carroll failed to prove that she was "raped" within the meaning of the New York Penal Law does not mean that she failed to prove that Mr. Trump "raped" her as many people commonly understand the word "rape." Indeed, as the evidence at trial recounted below makes clear, the jury found that Mr. Trump in fact did exactly that.

*Id*. at *2. Observing that Mr. Trump's argument "ignores the bulk of the evidence at trial, misinterprets the jury's verdict, and mistakenly focuses on the New York Penal Law definition of 'rape,'" the Court found that Trump had "raped" Carroll in "the broader sense of the word":

> [T]he definition of "rape" in the New York Penal Law – which the jury was obliged to apply in responding to Question 1 on the verdict form – requires forcible penetration of the victim's vagina by the accused's penis. Accordingly, the jury's negative answer to Question 1 means only that the jury was unpersuaded that Mr. Trump's penis penetrated Ms. Carroll's vagina. It does not mean that he did not forcibly insert his fingers into her – that he "raped" her in the broader sense of that word which, as discussed above, includes any penetration by any part of an accused's body (including a finger or fingers) or any other object.
>
> * * *
>
> The jury's finding of sexual abuse therefore necessarily implies that it found that Mr. Trump forcibly penetrated her vagina. And since the jury's answer to Question 1 demonstrates that it was unconvinced that there was penile penetration, the only remaining conclusion is that it found that Mr. Trump forcibly penetrated her vagina with his fingers – in other words, that **he "raped" her in the sense of that term broader than the New York Penal Law definition.**

*Id.* at **3, 18, 20 (emphasis added). *See also id.* at *21, 26 (finding Trump "digitally raped" Carroll). [3] Accordingly, Judge Kaplan declined to reduce the damages awarded or to order a new trial.

---

[3] Judge Kaplan also concluded that Trump's "attempt to minimize the sexual abuse finding as perhaps resting on nothing more than groping of Ms. Carroll's breasts" was "frivolous," concluding that the "jury's finding of sexual abuse therefore necessarily implies that it found that Mr. Trump forcibly penetrated her vagina…in other words, that he 'raped' her in the sense of that term broader than the New York Penal Law definition." *Carroll*, 2023 WL 4612082, at *20.

### 4. The Court's Decision in *Carroll I* Dismissing Mr. Trump's Defamation Claim Over the "Rape" Allegation (August 2023)

A few weeks after its decision denying Mr. Trump's post-trial motions in *Carroll II*, the Court addressed in *Carroll I* the same arguments about "rape" and reached the same conclusion. This time, the Court addressed the issue in the context of a motion to dismiss Mr. Trump's defamation counterclaim in *Carroll I*. Judge Kaplan granted the motion to dismiss, finding that Ms. Carroll's statements on CNN that Trump had raped her were "substantially true" for purposes of a defamation claim. *Carroll*, 2023 WL 5017230, at *7-8.

The court recounted its rulings in the Court's July 19, 2023 decision in *Carroll II* – including that the jury's finding that Mr. Trump sexually abused Ms. Carroll when he forcibly penetrated her digitally amounted to a finding that "Mr. Trump in fact did 'rape' Ms. Carroll as that term commonly is understood." On that basis, Judge Kaplan concluded that Mr. Trump had failed to plausibly allege defamation since Ms. Carroll's statements on CNN that Mr. Trump raped her were "at least substantially true." *Id.* at *5. Observing that Mr. Trump's "only basis" for his "assertion of falsity" was that the jury in *Carroll II* had returned a finding of "no" on the question of whether "Mr. Trump had 'raped' [Ms. Carroll] within the meaning of the New York Penal Law," Judge Kaplan rejected that claim. *Id.* at *6; Compl. ¶ 28. The court reiterated that "the jury's verdict in *Carroll II* establishes, as against Mr. Trump, the fact that Mr. Trump 'raped' her, albeit digitally rather than with his penis," thereby establishing the "substantial truth of Ms. Carroll's 'rape' accusations.'" *Carroll*, 2023 WL 5017230, at *6.

In short, the court found that the difference between the literal truth (that he had "forcibly penetrated Ms. Carroll's vagina with his fingers") and Ms. Carroll's statements (that Trump had "'raped' her) was immaterial, as a matter of law. Both are "felonious sex crimes" and would have "no different effect on the mind of the average listener." *Id.* at *8. Judge Kaplan restated that "both acts constitute 'rape' in common modern parlance, its definition in some dictionaries, in some federal and state criminal statutes, and elsewhere." *Id.* Accordingly, Judge Kaplan concluded that Trump could not "plausibly allege that Carroll's statements were not true" because Carroll's "**allegedly defamatory statements are substantially true as a matter of law**." *Id.* (emphasis added).

> 5. **The Jury Verdict and Additional Proceedings in *Carroll I* – Including Two More Decisions Reiterating that Mr. Trump "Raped" Ms. Carroll**

Based in part on the jury verdict in *Carroll II* finding that Mr. Trump had committed sexual battery, in September 2023, the court granted Ms. Carroll's motion for partial summary judgment on liability in *Carroll I*, finding that Mr. Trump had defamed her by denying the assault. *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5731152, at *5 (S.D.N.Y. Sept. 6, 2023). In that decision, Judge Kaplan reiterated his prior holdings "that Mr. Trump in fact did 'rape' Ms. Carroll as that term commonly is used and understood in contexts outside of the New York Penal Law." *Id.* at *1 n. 2.

Because the issue of liability was already decided, *Carroll I* was tried in January 2024, limited only to damages. During the trial, the court issued evidentiary rulings *again* holding that the *Carroll II* jury had found that Mr. Trump "raped" Ms. Carroll. *See Carroll v. Trump*, No. 20-CV-7311 (LAK), 2024 WL 97359, at *6 (S.D.N.Y. Jan. 9, 2024) ("the fact that Mr. Trump sexually abused – indeed, raped – Ms. Carroll has been conclusively established and is binding in this case."). On January 26, 2024, the jury awarded Ms. Carroll $83.3 million in damages. *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2024 WL 475140, at *1 (S.D.N.Y. Feb. 7, 2024).

Thus, at various points in both *Carroll I* and *Carroll II*, the court reiterated at least *four times* its holding that the jury found that Mr. Trump had "raped" Ms. Carroll - including for the purpose of establishing the substantial truth of that statement in defamation law.

C.   ***This Week* Interview with Rep. Nancy Mace**

On March 10, 2024, George Stephanopoulos, on the weekly ABC News program *This Week*, interviewed South Carolina Congresswoman Nancy Mace. Compl. ¶ 37.[4] Mr. Stephanopoulos opened the interview by acknowledging Rep. Mace's "candid and courageous testimony about her own experience as a rape victim" and played a clip from her 2019 public statement discussing her decision to go public concerning her rape. Compl. ¶ 38; Compl. Ex. A at 8, Dkt. No. 3. After observing that Rep. Mace had endorsed Mr. Trump, and then referencing the *Carroll* rulings that Mr. Trump was found "liable for rape and for defaming the victim of that

---

[4] For this Court's convenience, a video copy of this episode has been included as Siegel Decl. Ex. 3. It is also available at https://abcnews.go.com/ThisWeek/video/voters-moved-jan-6-rep-nancy-mace-107976891.

rape," Mr. Stephanopoulos asked Rep. Mace, "How do you square your endorsement of Donald Trump with the testimony we just saw?"

In response, Rep. Mace argued that the question was meant to shame her, while Mr. Stephanopoulos emphasized that his question was about Donald Trump:

> **Mr. Stephanopoulos:** Donald Trump has been found liable for rape by a jury. Donald Trump [has] been found liable for defaming the victim of that rape by a jury. It's been affirmed by a judge.
> **Rep. Mace:** It was not a criminal court case, number one.

Compl. Ex. A at 8; *see also* Compl. ¶ 42. Mr. Stephanopoulos then queried whether "[I]t makes it harder for women to come forward when they're defamed by presidential candidates?" and Rep. Mace again accused Mr. Stephanopoulos of attempting to "judge" and "shame" her for "political choices." Compl. Ex. A at 8. Mr. Stephanopoulos responded:

> **Mr. Stephanopoulos:** No. I'm not, I'm asking you a question about why you endorse someone who's been found liable for rape.
> **Rep. Mace:** It was not a criminal court. This was, this was a, it was civil court.
> **Mr. Stephanopoulos**: It was a civil court that found him liable for rape.

Compl. ¶ 42; *id.* Ex. A at 8-9. After more back-and-forth in which both Rep. Mace and Mr. Stephanopoulos continue to make similar statements, Rep. Mace ultimately observed that Mr. Trump "defended himself over that and denies that it ever happened, but he was not found guilty in a criminal court of law. It was a civil judgment over sexual abuse." Compl. Ex. A at 10; *see also id.* (Rep. Mace observing that "It wasn't actually rape, by the way.").

In response, Mr. Stephanopoulos pulled up a graphic of a July 19, 2023 *Washington Post* article, headlined *Judge clarifies: Yes, Trump was found to have raped E. Jean Carroll. Id.*[5] Compl. Ex. A at 11; *see also* Siegel Decl. Ex. 3 at 6:20-28.

---

[5] *See* Siegel Decl., Ex. 4, *available at*
https://www.washingtonpost.com/politics/2023/07/19/trump-carroll-judge-rape/.



Siegel Decl. Ex. 3 at 6:20-28. Expressly referencing the *Washington Post'*s reporting about Judge Kaplan's July 19 decision, *id.* Ex 4, Mr. Stephanopoulos explained that, "[i]n fact, it has been shown to be rape. The Judge affirmed that it was, in fact, rape. Donald Trump was found to have committed rape. That's just a fact." Compl. Ex. A at 11; *id.* ¶ 42. Rep. Mace replied, "That is a civil judgment, not a criminal court. They're two very different things and you know better." *Id.* Ex. A at 11. Shortly after this exchange, Mr. Stephanopoulos thanked Rep. Mace for joining him and concluded the segment. *Id.* Ex. A at 13.

### D.     The Complaint

Based on this Segment, the Complaint brings two causes of action for defamation *per se* and defamation *per quod* based on 12 statements made by Mr. Stephanopoulos during the Segment in which he stated Mr. Trump was "found liable for rape" (the "Statements"). *Id.* ¶ 42. The Complaint alleges the Statements were false because "the jury expressly found that Plaintiff did not commit rape." *Id.* ¶ 1 (emphasis in original).

### ARGUMENT

Mr. Trump is collaterally estopped from re-litigating what is materially the same defamation claim he lost in New York. Even if that were not so, his claim fails on the merits for much the same reasons it failed there.

When ruling on a Rule 12(b)(6) motion to dismiss, this Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor – but

the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6]

To state a defamation claim, Plaintiff must plead and prove (1) a false and defamatory statement of and concerning them, (2) an unprivileged publication to a third party, (3) fault on the part of the publisher, and (4) damages. *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002). And for a defamation *per quod* claim, the allegedly defamatory statement "be put into context so as to demonstrate its defamatory meaning." *Anderson v. Smith*, No. 3:19-cv-222-J-20JRK, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020). Plaintiff must also plead "special damages," or "*actual, out of pocket* losses which must be proven by specific evidence as to the time, cause and amount." *Flynn v. Cable News Network, Inc.*, No. 8:22-CV-343-MSS-SPF, 2023 WL 5985196, at *5 (M.D. Fla. Mar. 17, 2023) (emphasis in original).

Importantly, early dismissal of defamation lawsuits is favored to avoid "the chilling effect" these claims have on First Amendment rights. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[T]here is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation."); *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) ("[I]n defamation cases ... pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom

---

[6] On a Rule 12(b)(6) dismissal motion, a court may also consider documents integral to the complaint's allegations – which are deemed incorporated by reference – without converting the motion into one for summary judgment. Courts may take judicial notice of the underlying reporting "for the limited purpose of determining which statements the documents contain." *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015). Here, the Complaint expressly discusses the Segment and court proceedings in *Carroll I* and *Carroll II*. *See* Compl. ¶¶ 13-36. The Court may properly take judicial notice of these materials, and in particular, the video of the Segment and Judge Kaplan's orders in these cases. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (document attached to a motion to dismiss may be considered without converting motion into one for summary judgment if the document is central to the plaintiff's claim and is undisputed), *aff'd*, 124 F. App'x 641 (11th Cir. 2004). Moreover, the Court may independently take judicial notice of other court records. *See Baker v. Sepich*, No. 21-14145, 2022 WL 4594318, at *3 (11th Cir. Sept. 30, 2022).

of speech.") (citation omitted).[7]  This is exactly the kind of defamation case that warrants early dismissal.

### A. This Defamation Case is Barred By the Doctrine of Collateral Estoppel

Collateral estoppel "bars the relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *In re Dorand*, 95 F.4th 1355, 1366 (11th Cir. 2024) (quotation omitted).  In this case, the "prior suit" (or suits) at issue are the *Carroll* cases, which were both litigated in the United States District Court for the Southern District of New York based on diversity jurisdiction.  To determine the preclusive effect of those judgments, as a matter of federal common law, this Court must apply the law of the state in which those judgments were rendered. *CSX Transportation, Inc. v. General Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017) ("We hold that federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction.").  Because the *Carroll* cases were litigated in New York, New York law determines their preclusive effect in this case. *See Sellers v. Nationwide Mutual Fire Ins. Co.*, 968 F.3d 1267, 1269 (11th Cir. 2020) ("When determining the preclusive effect of an earlier judgment rendered by a federal court exercising diversity jurisdiction, federal common law adopts the rules of issue preclusion applied by the State in which the rendering court sits."); *Meyrowitz v. Brendel*, No. 16-81793-CIV-MARRA/MATTHEWMAN, 2018 WL 6308709, *4 n. 10 (S.D. Fl., Aug. 28, 2018) (applying Texas law to determine the preclusive effect of a prior judgment rendered by a Texas federal court).

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC,* 988 F.3d 634, 642 (2d Cir. 2021) (citation omitted).  This test is plainly satisfied here.

In its opinion dismissing Mr. Trump's defamation counterclaim in *Carroll I*, the New York court specifically held that the jury's "implicit determination that Mr. Trump digitally raped her – is conclusive with respect to this [defamation] case.  As a result, Ms. Carroll's statements are

---

[7] Indeed, the Eleventh Circuit has repeatedly affirmed the dismissal of defamation claims on 12(b)(6) motions. *See Michel*, 816 F.3d at 707; *Turner v. Wells*, 879 F.3d 1254, 1273-74 (11th Cir. 2018); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252-53 (11th Cir. 2021); *Jacoby v. Cable News Network, Inc.*, 2021 WL 5858569, at *4-6 (11th Cir. Dec. 10, 2021).

11

substantially true." *Carroll*, 2023 WL 5017230, at *7. The court further explained that based on the jury's verdict, "[i]t accordingly is the "truth", as relevant here, that Mr. Trump digitally raped Ms. Carroll." *Id.* at *8. And because the court found that statements about digital and penile penetration carry materially the same gist and sting, it held that (1) Mr. Trump failed to plausibly allege that Ms. Carroll's statements about "rape" were false and (2) alternatively, those statements were "substantially true as a matter of law." *Id.*

In this case, Mr. Trump alleges materially the same theory of defamation that he did in *Carroll I*. Both cases even arise out of statements made on television interviews. As the below excerpts from Mr. Trump's defamation counterclaim in *Carroll I* and his Complaint here demonstrate, the only difference is that in *Carroll I* Mr. Trump sued the person being interviewed, while here he sues the interviewer:

> *Carroll I*: During the Interview, Counterclaim Defendant was specifically asked about the jury unanimously finding Counterclaimant not liable for rape in *Carroll II*. In response to that specific inquiry, Counterclaim Defendant disregarded the jury's finding that Counterclaim Defendant did not rape her, and replied "oh yes he did, oh yes he did." Siegel Decl. Ex. 2 ¶¶ 4-5.

> *Complaint*: Stephanopoulos questioned how Representative Mace could endorse Plaintiff given that, as Stephanopoulos claimed, Plaintiff had been "found liable for rape." Given that this was the first question of the Interview . . . it was clear the Stephanopoulos maliciously intended to convince his viewers of a falsity, i.e. that Plaintiff had been found liable for rape. Compl. ¶¶ 39-40.

*Carroll I* necessarily decided that Mr. Trump cannot state a claim for defamation by alleging the jury did not find him liable for rape – because it is substantially true that he raped Ms. Carroll. As set forth below, those findings of both fact and law dispose of this defamation case as well. In fact, the New York court's finding in *Carroll II* that the jury found Mr. Trump to be liable for rape, and his denial of post-trial motions on that basis, also independently collaterally estops Mr. Trump from re-litigating that same issue here. Judge Kaplan specifically found that "[t]he finding that Mr. Trump digitally raped Ms. Carroll . . . was necessary to support the judgment in *Carroll II*."

Indeed, New York courts have often found defamation claims to be barred by collateral estoppel when the facts alleged to be false were previously determined to be accurate in prior litigation. *See, e.g., Zappin v. NYP Holdings Inc.*, 769 F. App'x 5, 10–11 (2d Cir. 2019) (defamation claim "challenging the truth of the abuse allegations is barred by collateral estoppel" where those allegations were previously upheld in prior matrimonial proceedings); *Bonheur v.*

12

*Dresdner Bank, A.G.*, No. 85 CIV. 4925 (GLG), 1986 WL 4702, at *3–4 (S.D.N.Y. Apr. 14, 1986) (defamation claim barred by collateral estoppel where truth of allegedly defamatory statement had been established in administrative proceedings); *Kartiganer Assocs., P.C. v. Wehran Eng'g, P.C.*, 92 A.D.2d 911, 912 (N.Y. App. Div. 1983). Perhaps most notably, Mr. Trump himself has successfully used the doctrine of collateral estoppel to defeat, on a Rule 12(b)(6) motion, defamation claims brought against him based on rulings in a prior defamation case involving the plaintiff. *See Jones v. Trump*, No. 96 CIV. 2995 (SAS), 1997 WL 277375, at *5 (S.D.N.Y. May 27, 1997), *amended on reconsideration in part*, 971 F. Supp. 783 (S.D.N.Y. 1997), *and aff'd,* No. 97-9017, 1998 WL 1967891 (2d Cir. Sept. 21, 1998) (ruling in prior defamation case that plaintiff was libel-proof collaterally estopped his defamation claims pled against Mr. Trump).

Nor can there be any doubt that Mr. Trump had a "full and fair opportunity" to litigate those issues in the *Carroll* litigation. To the contrary he litigated them *twice*, once in each *Carroll* case, with all of the relevant motions in those cases fully briefed by both sides. *See generally Carroll*, 2023 WL 5017230; *Carroll*, 2023 WL 4612082; Siegel Decl. Exs. 5 & 6.

Finally, under New York law it is irrelevant that those rulings are presently the subject of pending appeals. Indeed, Mr. Trump has already conceded that point in the *Carroll* litigation. *Carroll*, 2023 WL 5731152, at *4 n. 11 ("[Trump] concedes, however, that under New York law 'the "pendency of an appeal does not prevent the use of the challenged judgment as the basis of collateral estoppel[.]"'") (internal citation omitted).

In short, the Complaint should be dismissed because Plaintiff is collaterally estopped from re-litigating for a third time the finding that a jury found him liable for rape.

### B. Mr. Stephanopoulos' Statements Were Substantially True

If this Court were to reach the merits of the Complaint, it would make no difference. As Judge Kaplan found, the Complaint should be dismissed because all of the challenged Statements – that Mr. Trump was found liable for rape – are substantially true.

"A false statement of fact is the *sine qua non* for recovery in a defamation action." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983). A "statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (citation omitted). This means that defamation law "overlooks minor inaccuracies and concentrates upon substantial truth." *Id.* at 516. Under the substantial truth doctrine, a statement

13

does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014) (citation omitted), *aff'd,* No. 14-13855 (11th Cir. Feb. 17, 2015). A statement is only actionable if it is "substantially and materially false, not just if it is technically false.'" *Id.* at 1253-54.

In applying the doctrine of substantial truth, courts have consistently recognized that journalists are not lawyers and speak to a general lay audience. Thus, "[i]n conveying news and comment . . . [journalists] need not describe legal proceedings in technically precise language." *Rasmussen v. Collier Couty Pub. Co.*, 946 So. 2d 567, 570 (Fla. 2d DCA 2006). Journalists may discuss legal matters using "popular or lay terminology" rather than the "technical legal terminology employed by courts." *Rouch v. Enquirer & News,* 487 N.W.2d 205, 218-19 (Mich. 1992).

Even more specifically, courts have repeatedly held that it is substantially true to describe an individual alleged or found to have committed sexual assault as responsible for "rape," because the gist and sting of the two terms are not materially different. *See, e.g.*, *Simonson v. United Press, Intern., Inc.*, 654 F.2d 478, 481-82 (7th Cir.1981) (it was substantially true for defendant to substitute the word "rape" for the technically correct term sexual assault); *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1109 (N.D. Ala. 2022) ("Even if a reader interprets Dunleavy's statement [that Roy Moore tried to "rape" her] to mean forced vaginal sex rather than forced oral sex, the statement still carries "the substance, the gist, [and] the sting" of truth that justifies Dunleavy's reporting."); *Nanji v. National Geographic Soc.*, 403 F. Supp. 2d 425, 432 (D. Md. 2005) ("National Geographic's use of the term "rape" as shorthand for sexual misconduct, *i.e.,* "sexual assault" or "sexual abuse," does not render the article inaccurate."); *Hovey v. Iowa State Daily Publication Bd., Inc.*, 372 N.W.2d 253, 255-56 (Iowa 1985) (newspaper article stating the female bartender had been "raped" when in fact she had been forced to perform oral sex, resulting in charge against perpetrator of second-degree sexual assault, was "substantially truthful").

Indeed, Florida's First District Court of Appeal has affirmed the dismissal of a defamation case on precisely this ground. *See Clark v. Clark*, Civ. A No. 93-47-CA, 1993 WL 528464 (Fla. 4th Jud. Cir. June 22, 1993), *aff'd* 641 So.2d 866 (1st DCA 1994). As a technical matter, Florida's criminal statutes do not use the word "rape" to describe any sexual crime. Rather, sexual crimes fall under the umbrella of "sexual battery." § 794.011 (1)(h), Fla. Stat. The plaintiff in *Clark* alleged that it was defamatory for a newspaper to refer to him as being charged with "rape," when

14

in fact he was alleged to have committed some unspecified form of sexual battery. The trial court dismissed that theory, holding that "[t]he word 'rape' is an ordinary and accurate description of a sexual contact without consent . . . An article does not become 'false' simply because an editor or writer has chosen to employ the accepted, common term instead of the technical or statutory legalism." 1993 WL 528464, at *2.

The same conclusion applies here. The Complaint alleges that the Statements are false because "the jury made a finding of sexual assault," not "rape." Compl. ¶ 29. Yet, time and again, courts reject this precise legal theory and dismiss defamation claims. In fact, the Complaint illustrates the emptiness of its own theory. It alleges that Mr. Trump was found liable for "sexual assault," Compl. ¶ 29, but literally, that is not accurate. Rather, technically he was found liable for "sexual abuse." *Carroll v. Trump,* 22CV10016, 2023 WL 3378158 (S.D.N.Y. May 9, 2023); *see also* Siegel Decl. Ex. 6. The fact that Mr. Trump's own Complaint uses different words to describe the same sexual offense merely underscores why this case is meritless.

Thus, even if the court in the *Carroll* cases had not already addressed this issue, the Complaint should be dismissed because Mr. Stephanopoulos's statements that the jury found Mr. Trump liable for "rape" are substantially true. Even ignoring the doctrine of collateral estoppel, this case is especially meritless because the New York court has already applied these well-settled principles of defamation law to reach the same conclusion – and dismissed Plaintiff's defamation claim against Ms. Carroll on that basis. As Judge Kaplan emphasized, even under the technical distinctions in New York's criminal code, both the "sexual abuse" for which Mr. Trump was found liable (*i.e.,* digital penetration) and rape (*i.e.,* penile penetration) "are felonious sex crimes." The difference between the two would have "no different effect on the mind of the average listener." *Carroll*, 2023 WL 5017230, at *8. The same reasoning applies here and warrants the dismissal of Mr. Trump's effort to re-litigate the same failed defamation theory in this Court.[8]

---

[8] The Complaint also alleges that Mr. Stephanopoulos "falsely stated on several occasions that Plaintiff had been found liable by multiple juries for the rape of Ms. E. Jean Carroll." Compl. ¶ 1. The Complaint does not specify on what "occasions" Mr. Stephanopoulos allegedly stated that "multiple" juries found Mr. Trump liable for rape. In a letter sent to ABC News after the interview aired, Mr. Trump's counsel pointed to a single statement near the top of the interview: "Judges in (sic) two separate juries have found him liable for rape and for defaming the victim of that rape." Compl. Ex. A at 8. This statement would fail to support a defamation claim for either of two reasons.

15

Indeed, Mr. Trump's effort to re-litigate this issue in this jurisdiction is especially ironic given that Florida's criminal law does not recognize the New York Penal Law's distinction between "sexual abuse" and "rape." Florida law defines sexual battery broadly as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object. § 794.011 (1)(h), Fla. Stat. Thus, in Florida forcible digital and penile penetration constitute the same criminal offense. This merely underscores why the Complaint fails to state a claim under Florida law.

Since it is substantially true that Mr. Trump was found liable for raping Ms. Carroll, his defamation claims based on the twelve Statements in the interview must be dismissed.

### C. The Fair Report Privilege Also Requires Dismissal of Plaintiff's Defamation Claims.

This defamation action independently fails as a matter of law because each of the challenged Statements accurately reports on legal proceedings in the *Carroll* litigations. They are therefore squarely protected by Florida's fair report privilege.

---

*First*, even if Mr. Stephanopoulos had stated that more than one jury found Mr. Trump liable for rape (which he did not, *see infra*), it would make no difference. The gist and sting would be the same whether it was one jury or two that found Mr. Trump culpable for the same rape. Courts consistently reject defamation claims premised on far more significant alleged quantitative errors regarding legal matters. *See, e.g.*, *Jeter v. McKeithen*, No. 5:14-cv-00189-RS-EMT, 2014 WL 4996247, at *3 (N.D. Fla. Oct. 7, 2014) ("[R]egardless of whether [plaintiff] was alleged by the police to have bullied 'dozens' of victims or 'at least one' victim the statement communicates the same 'gist' to the audience."); *Koniak v. Heritage Newspapers, Inc.*, 198 Mich. App. 577, 581 (1993) ("[A]rticle stating that plaintiff had allegedly assaulted his stepdaughter thirty to fifty times" was "close enough to the truth" when she testified it was only eight times because "whether plaintiff assaulted his stepdaughter once, eight times, or thirty times, would have little effect on the reader.").

*Second*, an allegedly defamatory statement must be construed in the context of the program as a whole. *See Folta* v. *New York Times Co.*, No. 1:17cv246-MW/GRJ, 2019 WL 1486776 (N.D. Fla. Feb. 17, 2019). A review of the whole interview makes clear that Mr. Stephanopoulos did not assert that "multiple" juries found Mr. Trump liable for rape. His opening comment simply summarized the totality of two cases that included a verdict for rape, two verdicts for defamation, and multiple affirmances by the court including an instruction to the second jury that it must assume a rape was committed. *See generally* Compl. Ex. A. Each time during the interview that Mr. Stephanopoulos referred specifically to the rape finding, he referred to one jury and one judicial proceeding. *See, e.g., id.* at 8 ("Donald Trump has been found liable for rape by a jury."); *id.* at 9 ("It was a civil court that found him liable for rape."); *id.* at 11 ("A civil judgment is…okay, but a criminal judgment is not"?); *id.* (showing excerpt of *Washington Post* article referring to "the jury").

16

Florida's fair report privilege "exists so that the public may be kept informed of the workings of [the] government…That purpose is served…when the information brought out in official proceedings is reported." *Ortega v. Post-Newsweek, Florida, Inc.*, 510 So. 2d 972, 976 (Fla. 3d DCA 1987). Reports on court proceedings, like jury verdicts and Judge Kaplan's orders in *Carroll I* and *Carroll II* are quintessentially protected by Florida's fair report privilege. *See Folta*, 2019 WL 1486776, at *2 (explaining that the fair report is a qualified privilege that protects reporting on "official proceedings—like court proceedings"). The applicability of the fair report privilege is a question of law and Florida courts routinely dismiss defamation claims at the motion to dismiss stage when they are based on privileged reporting. *See Huszar v. Gross*, 468 So. 2d 512, 516 (Fla. 1st DCA 1985) (affirming dismissal where allegedly defamatory statements were protected by the fair report privilege, observing that "trial courts, upon motions to dismiss, routinely make decisions as to whether a privilege applies to protect an allegedly defamatory statement") (collecting cases).

Much like the doctrine of substantial truth, the fair report privilege requires only that reporting be "a substantially correct account of information contained in public records or from a government source." *Larreal v. Telemundo of Fla., LLC*, 489 F. Supp. 3d 1309, 1319 (S.D. Fla. 2020). "The fair report privilege is broad" and "its fair and accurate bar is a low standard." *Id.* (citation omitted). The privilege does not require that the publication "be exact in every immaterial detail or that it conform to the precision demanded in technical or scientific reporting. Rather, it is enough that it conveys to the persons who read it a substantially correct account of the proceedings." *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502-03 (Fla. 3d DCA 1993) (quoting Restatement (Second) of Torts § 611, cmt. f (1977)).

Here too, lay journalists need not be "technically precise in discussing legal proceedings." *Larreal*, 489 F. Supp. 3d at 1319. The privilege also allows media defendants to "summarize and focus publications as they choose," and does not require that they include facts to show Plaintiff in a better light. *Id.* at 1320. (citation omitted). Otherwise, a "cramped reading of the fair report privilege" would "open the door" to harassing lawsuits and would "contribute to the ongoing chipping-away of the rights and privileges necessary to the press's ability to play its intended role as government watchdog." *Id.* (citation omitted).

The Statements at issue are prototypically privileged as fair reports, because they accurately describe Judge Kaplan's July 19 Order and the jury verdict in the Carroll Litigations.

Mr. Stephanopoulos stated that Trump had been "found liable for rape by a jury," that he was "found liable for defaming the victim of that rape by a jury," and this jury verdict had been "affirmed by a judge." Compl. Ex. A at 8. Mr. Stephanopoulos even made it clear what he was referring to by displaying a *Washington Post* headline dated July 19, 2023, stating, "Judge clarifies: Yes, Trump was found to have raped E. Jean Carroll." *Id.* at 11 ("Can we pull up the "Washington Post" headline right there? In fact, it has been shown to be rape. The Judge affirmed that it was, in fact, rape. Donald Trump was found to have committed rape. That's just a fact."). Mr. Stephanopoulos also made clear that Trump was held liable in a "civil court." *Id.* In short, there is no question that the Statements in suit—which repeat Judge Kaplan's holdings that a jury found Trump liable for "rape"—were substantially accurate reports of court proceedings. Such reporting stands at the heart of Florida's broad fair report privilege.

And here too, even if Mr. Stephanopoulos had reported that Trump had been found liable for "raping" Carroll based solely on the jury verdict rather than Judge's Kaplan's post-verdict rulings, it would make no difference. As previously noted, mere technical distinctions—like that between sexual assault and rape (both felonies in New York)—cannot defeat the privilege. *See Folta*, 2019 WL 1486776, at *4 ("a publication's language does not have to be 'technically precise' in discussing legal proceedings").

Finally, even assuming *arguendo* there could somehow be some merit to Mr. Trump's apparent belief that forcing his fingers inside Ms. Carroll's vagina sounds more favorable than saying he "raped" her, Defendants are "under no obligation to include additional information that would portray the Plaintiff in a more favorable light." *Larreal*, 489 F. Supp. 3d at 1319-20. Defendants' motion to dismiss should therefore be granted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: May 10, 2024

Respectfully Submitted,

| **DAVIS WRIGHT TREMAINE LLP** | **SHULLMAN FUGATE PLLC** |
|---|---|
| */s/ Nathan Siegel* | */s/ Rachel E. Fugate* |
| Nathan Siegel (*pro hac vice*) | Rachel E. Fugate (Florida Bar No. 144029) |
| 1301 K Street NW, Suite 500 | rfugate@shullmanfugate.com |

Washington, DC 20005
Phone: 202-973-4237
Email: nathansiegel@dwt.com

Elizabeth A. McNamara (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com

Minch Minchin (Florida Bar No. 1015950)
mminchin@shullmanfugate.com
2101 Vista Parkway Suite 4006
West Palm Beach, Florida 33411
(813) 935-5098

*Attorneys for Defendants American Broadcasting Companies, Inc., ABC News, Inc., and George Stephanopoulos*