EXHIBIT 6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

*Plaintiff,*

v.

DONALD J. TRUMP, in his personal capacity

*Defendant.*

No. 20 Civ. 7311 (LAK)

## PLAINTIFF E. JEAN CARROLL'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS AND MOTION TO STRIKE

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................... 8

    I.   TRUMP FAILS TO STATE A CLAIM ......................................................... 9

        A.  Carroll's Real-Time Reaction to the Jury's Determination on Rape Did Not Constitute Defamation ........................................................... 10

            1.  Carroll's Statement Is Substantially True ........................................ 10

            2.  Carroll's Statement Was Not Made with Actual Malice ................ 15

            3.  Carroll's Statement Is a Fair and True Report of the *Carroll II* Trial.............. 16

        B.  Carroll Did Not Commit Defamation When She Described Her Conversation with Opposing Counsel ................................................. 20

    II.  TRUMP'S COUNTERCLAIM IS IMPROPER AT THIS STAGE OF THE CASE ....... 22

    III. TRUMP'S AFFIRMATIVE DEFENSES THAT HAVE ALREADY BEEN REJECTED SHOULD BE STRICKEN ........................................................... 27

CONCLUSION ........................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Abkco Music, Inc. v. William Sagan,*
   No. 15 Civ. 4025, 2016 WL 2642224 (S.D.N.Y. May 6, 2016) ............................................ 17

*Alan L. Frank L. Assocs., P.C. v. OOO RM Inv.,*
   No. 17 Civ. 1338, 2021 WL 3269010 (E.D.N.Y. July 30, 2021) ........................................... 27

*Albert v. Loksen,*
   239 F.3d 256 (2d Cir. 2001) ................................................................................................... 9

*Apotex Inc. v. Acorda Therapeutics, Inc.,*
   823 F.3d 51 (2d Cir. 2016) ..................................................................................................... 9

*Aronson v. Wiersma,*
   65 N.Y.2d 592 (1985) ........................................................................................................... 22

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................................... 8

*Barbash v. STX Fin., LLC,*
   No. 20 Civ. 123, 2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020) ............................................ 9

*Bauer v. Baud,*
   No. 22 Civ. 1822, 2023 WL 2307413 (S.D.N.Y. Mar. 1, 2023) ........................................... 14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955 (2007) .............................................................................. 8, 22

*Birkenfeld v. UBS AG,*
   172 A.D.3d 566 (1st Dep't 2019) ......................................................................................... 10

*Biro v. Conde Nast,*
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) ............................................................................ 15, 22

*Biro v. Conde Nast,*
   807 F.3d 541 (2d Cir. 2015) ........................................................................................... 10, 15

*Brimelow v. N.Y. Times Co.,*
   No. 20 Civ. 222, 2020 WL 7405261 (S.D.N.Y. Dec. 16, 2020) ............................................ 9

*Brimelow v. N.Y. Times Co.,*
   No. 21-66, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ............................................... 9, 15, 16

*Brooklyn Union Gas Co. v. Exxon Mobil Corp.*,
    478 F. Supp. 3d 417 (E.D.N.Y. 2020) .................................................. 27

*Calvin Klein Trademark Tr. v. Wachner*,
    129 F. Supp. 2d 248 (S.D.N.Y. 2001) .............................................. 18, 19

*Carroll v. Trump*,
    No. 22 Civ. 10016, 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023) ................. 16, 17, 18, 19, 20

*Carroll v. Trump,*
    No. 20 Civ. 7311, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) ..................... *passim*

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ............................................................ 8

*Chau v. Lewis*,
    935 F. Supp. 2d 644 (S.D.N.Y. 2013) .............................................. 2, 10

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014) ........................................................ 2, 10, 11

*Clark v. Clark*,
    No. 93-47-CA, 1993 WL 528464 (Fla. Cir. Ct. June 22, 1993) ................... 14

*Clark v. Clark*,
    641 So. 2d 866 (Fla. Dist. Ct. App. 1994) ........................................ 14

*Conason v. Megan Holding, LLC*,
    25 N.Y.3d 1 (2015) ..................................................................... 14

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004) .............................................. 21

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*,
    981 F. Supp. 112 (E.D.N.Y. 1997) .................................................. 11

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
    551 F. Supp. 3d 320 (S.D.N.Y. 2021) ............................................. 17, 19

*Cummings v. City of New York*,
    No. 19 Civ. 7723, 2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) ................... 19

*Daleiden v. Planned Parenthood Fed'n of Am.*,
    No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) .......................... 17

*Davitashvili v. Grubhub Inc.*,
 No. 20 Civ. 3000, 2022 WL 958051 (S.D.N.Y. Mar. 30, 2022)...................................... 8

*DiStiso v. Cook*,
 691 F.3d 226 (2d Cir. 2012).......................................................................................... 15

*Donoghue v. Gad*,
 No. 21 Civ. 7182, 2022 WL 3156181 (S.D.N.Y. Aug. 8, 2022)...................................... 5

*Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*,
 No. 17 Civ. 124, 2020 WL 1031271 (S.D.N.Y. Mar. 2, 2020)...................................... 27

*Fine v. ESPN, Inc.*,
 11 F. Supp. 3d 209 (N.D.N.Y. 2014) .............................................................................. 18

*Fossil Grp., Inc. v. Angel Seller LLC*,
 627 F. Supp. 3d 180 (E.D.N.Y. 2022)....................................................................... 23, 25

*Franklin v. Daily Holdings, Inc.*,
 135 A.D.3d 87 (1st Dep't 2015).................................................................................... 111

*Free Holdings Inc. v. McCoy*,
 No. 22 Civ. 881, 2023 WL 2561576 (S.D.N.Y. Mar. 17, 2023)...................................... 21

*GEOMC Co. v. Calmare Therapeutics Inc.*,
 918 F.3d 92 (2d Cir. 2019)......................................................................... 9, 23, 24, 25, 28

*Goel v. Bunge, Ltd.*,
 820 F.3d 554 (2d Cir. 2016)............................................................................................ 5

*Gonzalez v. Gray*,
 69 F. Supp. 2d 561 (S.D.N.Y. 1999).............................................................................. 18

*Gonzalez v. Gray*,
 216 F.3d 1072 (2d Cir. 2000)................................................................................... 18, 20

*Guccione v. Hustler Mag., Inc.*,
 800 F.2d 298 (2d Cir. 1986)........................................................................................... 12

*Harrell v. Miller*,
 No. 21 Civ. 6714, 2022 WL 375289 (S.D.N.Y. Feb. 8, 2022)...................................... 13

*Holy Spirit Ass'n v. N.Y. Times Co.*,
 49 N.Y.2d 63 (1979)................................................................................................. 18, 19

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018) ....................................................... 16

*Hybrid Athletics, LLC v. Hylete, Inc.*,
No. 3:17 Civ. 1767, 2019 WL 6358246 (D. Conn. Nov. 27, 2019) ........................................ 24

*In re Livent, Inc. Noteholders Secs. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ....................................................... 21

*James v. Gannett Co.*,
40 N.Y.2d 415 (1976) ....................................................... 22

*Jewell v. NYP Holdings, Inc.*,
23 F. Supp. 2d 348 (S.D.N.Y. 1998) ....................................................... 10, 11

*Kinsey v. N.Y. Times Co.*,
991 F.3d 171 (2d Cir. 2021) ....................................................... 18

*Konikoff v. Prudential Ins. Co. of Am.*,
No. 94 Civ. 6863, 1999 WL 688460 (S.D.N.Y. Sept. 1, 1999) ............................................. 16

*Konikoff v. Prudential Ins. Co. of Am.*,
234 F.3d 92 (2d Cir. 2000) ....................................................... 16

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
753 F.3d 395 (2d Cir. 2014) ....................................................... 8

*Mulder v. Donaldson, Lufkin & Jenrette*,
611 N.Y.S.2d 1019 (Sup. Ct., N.Y. Cty. 1994) ....................................................... 19

*Mulder v. Donaldson, Lufkin & Jenrette*,
623 N.Y.S.2d 560 (1995) ....................................................... 19

*Nunes v. NBCUniversal Media, LLC*,
No. 22 Civ. 1633, 2022 WL 17251981 (S.D.N.Y. Nov. 28, 2022) ................................... 10, 11

*Pasternack v. Shrader*,
863 F.3d 162 (2d Cir. 2017) ....................................................... 24

*People v. Blodgett*,
37 A.D.2d 1035 (3d Dep't 1971) ....................................................... 4

*People v. Starnes*,
206 A.D.3d 1133 (3d Dep't 2022) ....................................................... 13

*People v. Velett*,
 205 A.D.3d 1143 (3d Dep't 2022) ........................................................ 2, 13

*Pepper v. United States*,
 562 U.S. 476, 131 S. Ct. 1229 (2001) ...................................................... 27

*Printers II, Inc. v. Pros. Pub., Inc.*,
 784 F.2d 141 (2d Cir. 1986) ...................................................................... 11

*Ramsay-Nobles v. Keyser*,
 No. 16 Civ. 5778, 2018 WL 6985228 (S.D.N.Y. Dec. 18, 2018) ............... 24

*Sheindlin v. Brady*,
 597 F. Supp. 3d 607 (S.D.N.Y. 2022) ....................................................... 17

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
 No. 06 Civ. 11407, 2007 WL 4820968 (S.D.N.Y. Sept. 18, 2007) ............ 17

*Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*,
 No. 17 Civ. 8528, 2022 WL 836890 (S.D.N.Y. Mar. 21, 2022) .............. 23, 24

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
 No. 18 Civ. 5075, 2020 WL 3472597 (S.D.N.Y. June 25, 2020) ............... 27

*Vetere v. Associated Press, Inc.*,
 No. 88 Civ. 4115, 1989 WL 39664 (S.D.N.Y. Apr. 17, 1989) ................... 12

*Wheeler v. Twenty-First Century Fox*,
 322 F. Supp. 3d 445 (S.D.N.Y. 2018) ....................................................... 15

**STATUTES**

10 U.S.C. § 920 ........................................................................................... 13

Cal. Penal Code § 263.1 ............................................................................. 13

N.Y. C.P.L.R. § 214-j ............................................................................... 3, 4

N.Y. Civ. Rights Law § 74 ........................................................ 17, 18, 19, 22

N.Y. Correct. Law § 168-a ............................................................................ 2

N.Y.P.L. § 70.02 ........................................................................................... 2

N.Y.P.L. § 130.65 ................................................................................. 2, 123

**Rules**

Federal Rule of Civil Procedure 12 ............................................................... 8, 9, 15, 22

Federal Rule of Civil Procedure 15 ................................................................... 9, 28

**Other Authorities**

Ben Protess et al., *Donald Trump Faces Several Investigations. Here's Where They Stand.*, N.Y. Times (June 16, 2023) ....................................................................... 26

David Aaron, *How Much Prison Time Does Former President Trump Face? Applying the U.S. Sentencing Guidelines*, Just Security (June 12, 2023) ....................................... 26

Erica Orden, *Trump Now Faces Four Trials Over Six-Month Span During Critical Phase of 2024 Campaign*, Politico (June 15, 2023) ................................................... 26

*Important Dates in the 2024 Presidential Race,* Ballotpedia ....................................... 26

Katelyn Polantz, *Special Counsel Asks for December Trial Date for Trump in Mar-a-Lago Documents Case*, CNN (June 23, 2023) .................................................... 26

New York Bill Jacket, 2011 S.B. 1882, Ch. 26, Governor Andrew M. Cuomo Statement of Appproval ............................................................................ 13

New York Bill Jacket, 2011 S.B. 1882, Ch. 26, Senator Joseph A. Griffo Letter in Support ...... 13

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.) ....................................... 23

## PRELIMINARY STATEMENT

In May 2023, Donald J. Trump lost a two-week trial in the related case known as *Carroll II*, No. 22 Civ. 10016 (S.D.N.Y.), after the jury had deliberated for less than three hours. In light of E. Jean Carroll's gut-wrenching testimony describing how Trump sexually assaulted her in a department store dressing room—as well as testimony from *ten* other witnesses, not one of whom testified on behalf of Trump—the unanimous jury found that Trump had sexually abused Carroll and that he had subsequently defamed her when he claimed that she had made up her story to sell a book. In essence, the jury in *Carroll II* found that Carroll was telling the truth and that Trump was not. Since that time, Trump has alternated between calling the trial in *Carroll II* a complete sham and illogically claiming vindication based on the jury verdict.

Trump's "tit for tat" counterclaim is nothing more than his latest effort to spin his loss at trial. Trump alleges that Carroll defamed him and caused him "inordinate" harm by implying in a post-trial interview that when he sexually assaulted her, he not only used his fingers, but also his penis. While that might read like an article penned by Andy Borowitz in the *New Yorker* or by a writer at the *Onion*, it's actually the theory of the counterclaim that Trump now purports to assert in this action. But here in federal court, where logic and reason rather than satire prevail, it is clear that Trump's new counterclaim for defamation should be dismissed with prejudice.

First and foremost, Trump's counterclaim should be dismissed because it fails to state a claim upon which relief can be granted. Trump alleges that Carroll falsely asserted that he raped her during a television interview on the morning of May 10, the day after the trial ended. But the two statements Trump picks out from that ten-minute interview cannot possibly constitute defamation as a matter of law. Read in their entirety—as the law requires—Carroll's statements are not plausibly susceptible of a defamatory meaning, are substantially true, were uttered without

actual malice, and are protected by the fair reporting privilege. Indeed, the New York criminal statute that corresponds to the claim on which the jury found Trump liable (sexual abuse) not only carries a prison sentence of up to seven years, but requires a convicted defendant to register as a sex offender for the rest of his life. *See* N.Y.P.L. § 70.02(1)(c), (3)(c); N.Y. Correct. Law § 168-a(3)(a)(i), (7)(b). It is most commonly associated in New York with the prosecution of child sex offenses. *See, e.g.*, N.Y.P.L. § 130.65(c), (d); *People v. Velett*, 205 A.D.3d 1143, 1143 (3d Dep't 2022). In other words, the fact that the civil jury found by a preponderance of the evidence that Trump engaged in that offense does not differ substantially from a statement that Trump engaged in rape. The "gist" and the "sting" of both—especially in the context of the CNN interview here—are substantially the same. *Chau v. Lewis*, 935 F. Supp. 2d 644, 662 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014).

Trump's counterclaim should also be dismissed on the independent and alternative ground that a new counterclaim asserted this late in an action should, as a general rule, not be permitted if it exceeds the scope of the new claims set forth in a plaintiff's amended pleading. Here, Carroll's recently amended complaint contains no new claims. There is thus no basis for allowing Trump to proceed with a counterclaim, which would impose on Carroll undue burden and significant expense, not to mention hold up yet again this otherwise trial-ready, much-delayed case.

## BACKGROUND

This Court is familiar with the parties' history. In June 2019, when Trump was still President of the United States, Carroll spoke publicly for the first time about how Trump had sexually assaulted her in a Bergdorf Goodman dressing room in the mid-1990s. *See Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 4393067, at *2 (S.D.N.Y. July 5, 2023). In response, Trump lashed out, issuing a series of defamatory statements over the course of four days in which he

denied Carroll's "accusation, stated that he 'has no idea who this woman is,' and suggested that she fabricated her accusation for ulterior and improper purposes, including to increase sales of her then-forthcoming book in which she discusses having been sexually assaulted by [] Trump and other men." *Id.* at *1. Based on these statements, Carroll sued Trump for defamation in November 2019. *Id.* at *4. Largely due to Trump's dilatory tactics, Carroll's single defamation claim based on Trump's June 2019 statements has now been pending for more than three and a half years. *Id.* at *12.

During that time, the New York legislature passed the Adult Survivors Act ("ASA"), which temporarily revived certain battery claims so long as they satisfied the definition of a sexual offense under New York law. *See* C.P.L.R. § 214-j. Shortly before the ASA took effect, Trump also found occasion to defame Carroll yet again, this time in a statement he posted to Truth Social on October 12, 2022. *Carroll*, 2023 WL 4393067, at *1. Therefore, on Thanksgiving of last year, Carroll filed another suit against Trump, bringing a battery claim for the sexual assault and for defamation based on his October 2022 statement. *See Carroll v. Trump*, No. 22 Civ. 10016 (S.D.N.Y.) ("*Carroll II*").

Capitalizing on the discovery that had already taken place in the current action, *Carroll II* went to trial on April 25, 2023. The jury heard an overwhelming amount of credible evidence describing Trump's violent sexual assault, his subsequent defamatory statements, and the harms that Carroll suffered. On the stand, Carroll recounted the relevant events in graphic and painful detail. She testified that after a chance encounter in the spring of 1996, she accompanied Trump to the lingerie department to help him pick out a gift for a "girl." *See* Ex. A ("*Carroll II* Trial Tr.") at 170–73, 356. Trump ultimately led her into a dressing room and, once inside, "immediately shut the door and shoved [her] up against the wall," banging her head. *Id.* at 177. Trump then "pulled

down [her] tights" and inserted his fingers into her vagina. *Id.* at 179–80. Carroll testified that "it was a horrible feeling because … he put his hand inside of [her] and curved his finger," which "was extremely painful, extremely painful." *Id.* at 180–81. Carroll also testified that she then felt Trump's penis inside her, but also acknowledged that she could not see it because Trump's body was pressed up so closely against hers, and she managed to push Trump off her and escape seconds later. *Id.* at 181, 636. Carroll went on to explain how the attack and Trump's defamatory statements denying it had negatively impacted her life. *See, e.g.*, *id.* at 181, 215–16, 221, 225–26, 320, 322–24. Carroll's testimony was supported by the consistent testimony of eight additional fact witnesses and two expert witnesses. Trump chose not to present any witnesses and decided not to testify on his own behalf.

At the end of the two-week trial in *Carroll II*, on May 9, 2023, the jury deliberated for approximately two and a half hours. On the first count of battery, the jury was asked to evaluate whether Trump had, by a preponderance of the evidence, committed an ASA predicate sex offense, thereby reviving Carroll's claim. *See* C.P.L.R. § 214-j. Consistent with the parties' proposals, the jury was presented with three possible ASA predicates under New York's criminal code: rape, sexual abuse, and forcible touching. *Carroll II*, ECF 174. The Court instructed the jury to address each predicate in that order until they found that Trump's conduct fit one of those offenses, if at all. *Id.* The jury answered "no" on rape and "yes" on sexual abuse—and it awarded Carroll a total of $2.02 million in damages on that claim. *Id.*[1]

---

[1] As the Court instructed the *Carroll II* jury, under the New York Penal Law, rape requires proof that the defendant engaged in sexual intercourse with the victim and did so without the victim's consent by the use of forcible compulsion. *Carroll II* Trial Tr. at 1416. "Sexual intercourse" is defined as "any penetration, however slight, of the penis into the vaginal opening." *Id.* at 1417. Sexual abuse, by contrast, similarly requires proof that the defendant subjected the victim to sexual contact and did so without the victim's consent by the use of forcible compulsion. *Id.* at 1418. "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying the sexual desire of either person." *Id.* "Sexual part" is defined as "an organ of human reproduction." *Id.*; *see People v. Blodgett,* 37 A.D.2d 1035, 1036 (3d Dep't 1971).

On the second count of defamation, the jury found that Trump's October 2022 Truth Social post—in which Trump again denied knowing Carroll, claimed he "had nothing to do with" her, and insisted that the incident at Bergdorf's "never happened" and was "completely made up"— was defamatory. *Id.* In order to do so, the jury determined by clear and convincing evidence that Trump's statement was false, meaning that it was "highly probable" and "beyond any 'substantial doubt'" that his statement was not substantially true, and that Trump had made this false statement with actual malice. *Carroll II* Trial Tr. at 1439. The jury awarded Carroll a total of $2.98 million for this claim, including $280,000 in punitive damages based on a finding that Trump had made the October 2022 statement about Carroll "with deliberate intent to injure, or … hatred or ill will or spite," or "with willful or wanton or reckless disregard of another's rights." *Carroll II*, ECF 174; *Carroll II* Trial Tr. at 1435.

The next morning, on May 10, Carroll participated in a live televised interview on CNN. ¶ 3.[2] The segment was just over ten minutes long and involved Carroll, her counsel, and two CNN reporters. *See* Ex. B (CNN interview video); Ex. C (CNN interview transcript).[3] The segment opened with one reporter providing background on the case, including that the jury had found that "Trump sexually abused Carroll in a department store dressing room in the '90s and then defamed her by denying her claim." Ex. B. The reporter then played a video clip released by Trump shortly after the verdict where he states as follows: "What else can you expect from a Trump hating,

---

[2] Standalone "¶ __" references are to the counterclaim that Trump included in his answer to Carroll's amended complaint. *See* ECF 171.

[3] Trump's counterclaim references the interview Carroll gave on CNN on May 10, 2023. ¶¶ 3–8. But the counterclaim does not include or attach the full transcript from that interview. Because the CNN interview is incorporated by reference in the counterclaim, the Court can consider it fully, along with any other matters of which judicial notice may be taken such as what happened at the *Carroll II* trial. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Donoghue v. Gad*, No. 21 Civ. 7182, 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022). The interview is available at https://www.youtube.com/watch?v=PPrBo2_fyAI&t=144s. The transcript of the interview is available at https://transcripts.cnn.com/show/ctmo/date/2023-05-10/segment/05 and https://transcripts.cnn.com/show/ctmo/date/2023-05-10/segment/06.

Clinton appointed judge, who went out of his way to make sure that the result of this trial was as negative as it could possibly be? Speaking to and in control of a jury from an anti-Trump area, which is probably the worst place in the United States for me to get a fair trial, will be appealing this decision, it's a disgrace." *Id.* With the end of that video, the interview began.

What followed during the interview was a series of questions from the two CNN reporters about the case, the jury verdict, and the trial. One reporter started off by reminding Carroll how she had said at one point that she was "here to try and get my life back." *Id.* Carroll responded, "That was why yesterday … I was such a happy woman. I felt like we had accomplished that." *Id.* The same reporter then asked Carroll to "talk about what you were thinking as the jury's decisions were read off in your mind." *Id.* Carroll and her counsel responded with comments about the makeup of the jury and the overall excitement of the moment. *Id.* The following exchange then occurred:

> Reporter: What about when that first finding was found? This jury found that Trump did not rape you. What about that moment?
>
> Carroll: Robbie can explain the legal.
>
> Reporter: Sure. And I want you to, but I just wonder, E. Jean, what went through your head when you heard that?
>
> Carroll: Well, I just immediately say in my own head, oh, yes, he did—oh, yes, he did. So that's my response.
>
> Counsel: So, look, New York law on sexual crimes like this is complicated, and it's not probably appropriate for morning viewers. But the truth of the matter is, is that sexual abuse, which he was found guilty of, is a very, very serious offense. I'm not going to get into the body parts situation with you, but people go to jail for sexual abuse. It's a very serious offense, and most importantly, E. Jean brought this case because she wanted her name back, as you said at the very beginning, she got her name back and the jury found that he lied. And he lied about her maliciously.

*Id.*

The conversation then shifted to other issues in the case, such as the eleven witnesses presented by Carroll and their testimony. *Id.* The conversation also addressed how the verdict destroyed the false narrative of the "perfect victim" of sexual assault—one "who always screamed, a woman who immediately reported, a woman whose life is supposed to fold up, and she's never supposed to experience happiness again." *Id.* Of course, all of these topics were the subject of questioning by Trump's lawyer at trial and were discussed by Carroll's counsel during his closing rebuttal argument at the end of trial. *See, e.g.*, *Carroll II* Trial Tr. at 405–08, 411–12, 434–35, 437–38, 550–52, 646–47, 1406–08. At this point, the interview turned to a post-verdict exchange between Carroll and Trump's lawyer in the courtroom:

> Reporter: There in the courtroom was an encounter, an exchange, between you and the president's lawyer, Joe Tacopina. He came up, you shook hands, I believe. What did he say?
>
> Carroll: Well, Joe Tacopina is very likeable. He's sort of like an 18th century strutting peacock. And people like him. So, when he sticks out his hand to—first, he congratulated Robbie. And then, he was congratulating people on the team. And as I put my hand forward, I said, "he did it and you know it." Then we shook hands, and I passed on.

Ex. B.

Throughout the interview, the chyron on the bottom of the screen read, "TRUMP FOUND LIABLE," with two additional sentences underneath it: "TRUMP CALLS VERDICT A 'WITCH HUNT,' VOWS TO APPEAL $5M JUDGMENT," and "E. Jean Carroll | Won Sexual Abuse, Defamation Case Against Donald Trump." *Id.* That chyron continued to display these words as the panelists turned away from Tacopina and toward other topics, such as the impact of the jury's verdict, potential avenues for Trump to appeal, Trump's failure to attend the trial or testify, and the ASA. *Id.*

On May 22, 2023, Carroll moved to amend her complaint in this action. ECF 155. Her proposed amendment included allegations: (1) drawing from Trump's deposition in this action that demonstrate his personal motive for defaming Carroll in June 2019; (2) accounting for the verdict in *Carroll II*; and (3) describing Trump's statements about Carroll following that verdict. The proposed amendment did not add any new claims. The Court granted Carroll's motion. ECF 169.

On June 27, Trump answered Carroll's first amended complaint. His answer largely duplicated his previous answer in *Carroll II*, but this time, he added a counterclaim for defamation based on Carroll's post-trial CNN interview. *See* ECF 171. In a barebones pleading, Trump now alleges that Carroll defamed him by saying "oh yes he did, oh yes he did" when asked by a reporter what she was thinking when she heard the first part of the jury's verdict. ¶ 5. Trump also alleges that Carroll defamed him by recounting that she told Trump's lawyer that "[Trump] did it and you know it" during their brief courtroom exchange following the jury verdict. ¶ 7.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Although a court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor," *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014), it "does not credit 'mere conclusory statements' nor 'threadbare recitals of the elements of a cause of action.'" *Davitashvili v. Grubhub Inc.*, No. 20 Civ. 3000, 2022 WL 958051, at *4 (S.D.N.Y. Mar. 30, 2022) (Kaplan, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). In deciding a motion to dismiss, a court may also consider documents "incorporated by reference" in or "integral to" the complaint, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and may take

"judicial notice of facts that are publicly available if their accuracy cannot reasonably be questioned," *Barbash v. STX Fin., LLC*, No. 20 Civ. 123, 2020 WL 6586155, at *2 (S.D.N.Y. Nov. 10, 2020) (citing *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016)). As many courts have recognized, "[b]ecause a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself,' courts should, where possible, resolve defamation actions at the pleading stage." *Brimelow v. N.Y. Times Co.*, No. 20 Civ. 222, 2020 WL 7405261, at *4 (S.D.N.Y. Dec. 16, 2020), *aff'd*, 2021 WL 4901969 (2d Cir. Oct. 21, 2021).

Where a new counterclaim is improper, the counterdefendant may move to dismiss it pursuant to Rule 12(b)(6). That procedure is necessary because a counterclaim asserted in an answer to an amended complaint would not have been the subject of a motion to amend pursuant to Rule 15, and the counterdefendant would thus have had no "opportunity to oppose" the counterclaim before it was asserted. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101 (2d Cir. 2019). In deciding such a motion to dismiss, a court may "exercise the discretion the court would have been entitled to use if the counterclaimant had moved under Rule 15 to file the new counterclaim." *Id.*

## I.     TRUMP FAILS TO STATE A CLAIM

To properly state a cause of action for defamation, a plaintiff must plausibly allege "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting [defamation] per se, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001) (citation omitted). Because he is a public figure, the level of fault Trump must show to satisfy (v) is that the allegedly defamatory "statements were made with 'actual malice'—that is, with knowledge that the statements were

false or with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). As demonstrated below, Trump's counterclaim does not satisfy parts (ii), (v), and (vii) of this standard.

### A. Carroll's Real-Time Reaction to the Jury's Determination on Rape Did Not Constitute Defamation

#### 1. Carroll's Statement Is Substantially True

In response to a reporter's question about her immediate reaction to the jury's rape determination, Carroll initially referred to her lawyer to "explain the legal." Ex. B. She then added that she "[said] in [her] own head, oh, yes, he did—oh, yes, he did." *Id.* This statement about Carroll's recollection was not defamatory as a matter of law because it was substantially true.

Truth is a complete defense to defamation. *See Birkenfeld v. UBS AG*, 172 A.D.3d 566 (1st Dep't 2019). Assessing whether a statement is true—and thus non-defamatory—is not a "binary" question. *Chau v. Lewis*, 935 F. Supp. 2d 644, 662 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014). "Some statements are held to be non-actionable because they are completely true." *Id.* But, as relevant here, some statements are "held to be substantially true where the admitted truth becomes more tenuous, but still the overall 'gist' or 'sting' cannot be said to be 'substantially' different." *Id.* (cleaned up). Under this substantial truth principle, a statement cannot qualify as defamatory unless "the difference between the statement and reality is 'plainly substantial.'" *Id.* (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 367 (S.D.N.Y. 1998)).

In conducting that analysis, "[c]ourts typically compare the complained of language with the alleged truth." *Nunes v. NBCUniversal Media, LLC*, No. 22 Civ. 1633, 2022 WL 17251981, at *4 (S.D.N.Y. Nov. 28, 2022) (citation omitted). They then assess whether "the overall 'gist or substance of the challenged statement' is true," *Chau*, 771 F.3d at 129, and "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced,"

*Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dep't 2015). "Whether a statement is substantially true is an issue of law properly decided on a motion to dismiss." *Nunes*, 2022 WL 17251981, at *4.

    *Chau v. Lewis* exemplifies this approach. There, the Second Circuit evaluated a defamation claim arising from a statement concerning "Plaintiffs' investment 'in nothing but CDOs backed by the triple-B tranche of a mortgage bond.'" 771 F.3d at 130–31. Although this characterization was inaccurate, the Second Circuit held the statement to be non-defamatory as a matter of law. *Id.* It reasoned that even if the defendant had published the strict truth—*i.e.*, that not even half of the plaintiffs' portfolios were backed by A-/A3 securities or better—"the effect on the reader would have been appreciably the same." *Id.* at 130. In other words, when considered in the context in which the statement was made, no reader would come away with a "different impression" of the plaintiff's business. *Id.*; *see also id.* at 131 (same for statement that plaintiff took home $26 million a year in fees from selling these securities, when he actually took home considerably less than that).

    Similar conclusions have been reached under various other different fact patterns. Courts, for example, have considered the following statements to be "substantially true": (1) making  the "literally false" statement that the defendant was overdue in paying debts, when the defendant had disputed the "bill with such vigor that it was apparent that [it] would not pay the bill when due," *Printers II, Inc. v. Pros. Pub., Inc.*, 784 F.2d 141, 146–47 (2d Cir. 1986); (2) labeling plaintiff a "prime suspect" and "main suspect," when he was in fact just "a suspect," *Jewell*, 23 F. Supp. 2d at 369; (3) reporting that plaintiff was "forced to leave the military … for less than satisfactory service," when he had submitted a request for discharge "for the good of the service" in order to avoid a court martial, *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 981 F. Supp. 112, 120–

21 (E.D.N.Y. 1997); (4) stating that plaintiff was a member of the American Nazi Party, when he had in fact participated in a march organized by the National Socialist White People's Party, *Vetere v. Associated Press, Inc.*, No. 88 Civ. 4115, 1989 WL 39664, at *1–*2 (S.D.N.Y. Apr. 17, 1989); and (5) implying that plaintiff was an adulterer, even though he had stopped cheating on his wife, but had committed adultery for more than a decade prior, *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 302–03 (2d Cir. 1986).

Under that line of authority, Trump's defamation claim cannot stand. For starters, Trump does not allege that Carroll lied about her own recollections. In other words, he does not claim that she lied when she told CNN's reporters that she had thought "oh, yes, he did—oh, yes, he did" while listening to the jury verdict. Nor does Trump claim that Carroll falsely told the CNN reporters that the jury found Trump liable for rape. Instead, Trump alleges that by reciting her own undisputed internal thoughts, Carroll falsely implied that Trump had raped her. ECF 171 ¶ 5.

In assessing whether that implication is defamatory, the question is not whether it was defamatory to claim that Trump raped Carroll in a context where he had never met her. Rather, the real question is whether it is defamatory to claim that Trump raped her as that term is used in the New York Penal Law, when a jury had found not only that Trump had in fact met Carroll, but that he had also sexually abused her, as that term is used in the New York Penal Law. And the answer to this question is straightforward: Carroll's statement on CNN was substantially true because its overall gist and substance was true, and because there is no meaningful difference in the effect that would be produced in the minds of viewers.

As noted above, the jury found Trump liable for inserting his fingers into Carroll's vagina (sexual abuse), but not for inserting his penis into her vagina (rape). First degree sexual abuse in New York is a class D felony that carries a potential prison term of up to seven years. *See* N.Y.P.L.

§§ 70.02(1)(c), (3)(c), 130.65. A conviction for sexual abuse in the first degree requires the defendant to register as a sex offender for life. N.Y. Correct. Law § 168-a(3)(a)(i), (7)(b) (defining "sexually violent offender" as someone who is convicted of, *inter alia*, sexual abuse in the first degree); *id.* § 168-h(2) (requiring sexually violent offender to be registered and verified "annually for life"). It is frequently used to indict child sex offenders. *See, e.g.*, *People v. Velett*, 205 A.D.3d 1143, 1143 (3d Dep't 2022); *People v. Starnes*, 206 A.D.3d 1133, 1136 (3d Dep't 2022) (upholding sexual abuse in the first degree conviction where thirteen year-old victim testified that defendant "reached his hand into the bath and digitally penetrated the victim's vagina" against her consent); *Harrell v. Miller*, No. 21 Civ. 6714, 2022 WL 375289, at *1 (S.D.N.Y. Feb. 8, 2022) (describing conviction for sexual abuse in the first degree, among other sexual crimes, where habeas petitioner pulled down the fifteen year-old victim's pants and "inserted two fingers into [her] vagina," which caused the victim to "cr[y] in pain," and then "took out his penis," "rubbed it against" the victim's vagina, and "unsuccessfully tried to penetrate her"). *See also* New York Bill Jacket, 2011 S.B. 1882, Ch. 26, Governor Andrew M. Cuomo Statement of Approval (explaining that N.Y.P.L § 130.65 was amended in 2011 to provide "greater protections … to young sexual abuse victims"); *id.*, Senator Joseph A. Griffo Letter in Support (the amended legislation added "a new subdivision to Sexual Abuse in the First Degree [§ 130.65(d)], making it a class D violent felony offense for a child under the age of thirteen to be subjected to sexual contact by a person who is twenty-one years old or older"). In other jurisdictions, forcibly inserting a finger into a woman's vagina, as the jury found Trump did here, would, in fact, constitute rape. *See, e.g.*, 10 U.S.C. § 920 (defining rape to include "the penetration, however slight, of the vulva ... of another by any part of the body or any object"); Cal. Penal Code § 263.1 ("[A]ll forms of nonconsensual sexual assault may be considered rape for purposes of the gravity of the offense."). As a result, the

truth (that Trump sexually abused Carroll) did not differ so substantially from Carroll's statement on CNN (that she recalled thinking he had raped her) so as to render her remark defamatory. *See Bauer v. Baud*, No. 22 Civ. 1822, 2023 WL 2307413, at *6 (S.D.N.Y. Mar. 1, 2023); *see also Clark v. Clark*, No. 93-47-CA, 1993 WL 528464, at *2 (Fla. Cir. Ct. June 22, 1993) (report was substantially true when newspaper said a deputy sheriff had been arrested for rape when he had actually been charged with sexual battery), *aff'd*, 641 So. 2d 866 (Fla. Dist. Ct. App. 1994).

Any doubt on that score is resolved by all of the contemporaneous circumstances surrounding Carroll's statement: listeners of the CNN interview were informed of exactly what the jury had found, and Carroll was simply sharing the immediate (and non-legal) thoughts that had entered her head as the verdict was read. Ex. B. If it can be substantially true to call someone an adulterer when he has stopped cheating on his wife, or to call someone a member of the American Nazi Party when he had marched with a different fascist group, then any implication from Carroll's account of her internal thoughts was also substantially true in context. *See Bauer*, 2023 WL 2307413, at *6 (rejecting plaintiff's "wrong distinction" for substantial truth analysis when it contradicted objective (and incorporated) documentary evidence). At bottom, the "*true* bridge between" Trump's conduct and Carroll's statement is "small enough to render the 'gist' or 'sting' of the statements unchanged." *Id*. (emphasis in original).

This conclusion is independently supported by the principle of collateral estoppel. *See Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015) (elements of collateral estoppel). The jury in *Carroll II* found by clear and convincing evidence that Trump defamed Carroll when he denied her allegation of sexual assault. *Carroll II*, ECF 174. In other words, the jury found that there was a high probability that Carroll's account of what happened at the department store was itself substantially true. For that reason, Carroll's repeating her reaction to the jury verdict—a

reaction that reflected the very account that she had testified to in court and that was disputed in connection with the *Carroll II* defamation claim—represented a substantially true statement. And for the reasons already given, a substantially true statement cannot be defamatory.

### 2. Carroll's Statement Was Not Made with Actual Malice

Trump's counterclaim must be dismissed under Rule 12(b)(6) for still another reason: Trump fails to plausibly allege that Carroll made the challenged statement "with knowledge that [it was] false or with reckless disregard of whether [it was] false or not." *Brimelow v. N.Y. Times Co.*, No. 21-66, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021) (citation omitted). "[G]iven the difficulty of proving [such] actual malice, as well as the fact that actual malice must be proven by clear and convincing evidence in order for a plaintiff to succeed, it stands to reason that Rule 12(b)(6) should play a particularly important role in testing the plausibility of a plaintiff's defamation claim." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (citation omitted).

Here, Trump alleges only that "[Carroll] made these false statements with actual malice and ill will with an intent to significantly and spitefully harm and attack [Trump's] reputation, as these false statements were clearly contrary to the jury verdict in *Carroll II* whereby [Trump] was found not liable for rape by the jury." ¶ 10. But it is black letter law that such conclusory and boilerplate allegations "must be discarded at the outset." *Biro*, 963 F. Supp. 2d at 279–81; ("[P]leading 'actual-malice buzzwords' is simply not enough to nudge a case into discovery."); *see also DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) ("A court cannot credit a plaintiff's merely speculative or conclusory assertions."); *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 456 n.9 (S.D.N.Y. 2018) ("[c]onclusory statements" of actual malice "will not suffice").

Once Trump's conclusory allegation is set aside, nothing remains. "The element of actual malice in a defamation claim focuses primarily on what a defendant knew or believed at the time

a purportedly false statement was made." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018). Yet here, Trump offers no allegations about Carroll's own thought process when she made the allegedly defamatory statement. Nor does he offer any allegations meant to support an inferential finding of actual malice. Instead, the facts he pleads, and the facts incorporated by reference into his pleading, render it *implausible* to conclude that Carroll acted with actual malice. During the CNN interview, Carroll answered a question that asked her to explain what she was thinking at the time she heard the verdict on her battery claim. Ex. B. Trump does not allege that she lied or misrepresented her own recollection. *See* ECF 171. Moreover, Carroll expressly deferred discussion of the legal issues to her counsel—and offered her memory of events during a segment that otherwise fully described the jury verdict (including its finding that Trump had not raped her within the meaning of the New York Penal Law). *See* Ex. B. Nothing about these allegations makes it plausible to believe that Carroll lied or acted without regard for the truth. *See Konikoff v. Prudential Ins. Co. of Am.*, No. 94 Civ. 6863, 1999 WL 688460, at *28 (S.D.N.Y. Sept. 1, 1999) ("[I]naccurate or imprecise language, even if critical of the plaintiff, does not suffice to demonstrate malice where the underlying facts have been disclosed." (collecting cases)), *aff'd*, 234 F.3d 92 (2d Cir. 2000). As a result, there is "no combination of allegations from which one could plausibly infer that [Carroll] was purposely avoiding the truth" when she was asked to recite what she was thinking when she heard the jury's verdict. *Brimelow*, 2021 WL 4901969, at *3.

   **3. Carroll's Statement Is a Fair and True Report of the *Carroll II* Trial**

   Trump's counterclaim also fails for a third reason: it seeks to impose liability on a statement that is clearly shielded by the fair and true reporting privilege. *See Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2669790, at *5 (S.D.N.Y. Mar. 28, 2023) (addressing this privilege in the *Carroll II* case).

"New York law recognizes certain privileges that shield an individual from liability for defamation." *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 629 (S.D.N.Y. 2022). Under Section 74 of the New York Civil Rights Law, "a civil action cannot be maintained against any person for the publication of a fair and true report of any judicial proceeding." *Carroll*, 2023 WL 2669790, at *5 (quoting N.Y. Civ. Rights Law § 74). This privilege exists to encourage the public dissemination of information about judicial proceedings and extends beyond the institutional press to "any person, firm or corporation." *Id.* (citation omitted). Moreover, it is not limited to comments made at any particular point in a judicial proceeding. *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 331–32 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022).

As this Court has recognized, a statement falls within the fair and true reporting privilege where two elements are met: (1) it constitutes a report on a judicial proceeding, and (2) it is fair and true. *Carroll*, 2023 WL 2669790, at *5–*7. Unlike Trump's October 2022 statement at issue in *Carroll II*, Carroll's statement here satisfies both requirements. *See Abkco Music, Inc. v. William Sagan, Norton LLC*, No. 15 Civ. 4025, 2016 WL 2642224, at *4, *7 (S.D.N.Y. May 6, 2016) (granting motion to dismiss where statement was protected by fair reporting privilege and collecting cases doing same); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, No. 06 Civ. 11407, 2007 WL 4820968, at *3 (S.D.N.Y. Sept. 18, 2007) ("It is for the Court to determine as a matter of law if a publication is a 'fair and true' report under section 74, unless the Court determines that an issue of fact remains.").

Carroll's statement about the jury verdict certainly qualifies as a "report" of a judicial proceeding. For a statement to qualify as a "report" under Section 74, an "ordinary viewer or reader" must be able to "determine from the [statement] itself that the [statement] is reporting on

17

[a judicial] proceeding." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 178–79 (2d Cir. 2021) (final alterations in original) (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014)). Where context makes it "impossible for the ordinary viewer [or reader] to determine whether [the publication] was reporting on a judicial proceeding, the absolute privilege does not apply." *Carroll*, 2023 WL 2669790, at *5 (alterations in original) (quoting *Kinsey*, 991 F.3d at 178). But a "report" can otherwise take many forms and can encompass even "statements or allegations that go beyond matters in a proceeding." *Fine*, 11 F. Supp. 3d at 216–17; *see also Gonzalez v. Gray*, 69 F. Supp. 2d 561, 568 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000) (collecting cases). Thus, the privilege applies wherever the "content or context" confirm that a statement is "sufficiently connected" to a legal proceeding and is not merely an independent attack focused "exclusively on underlying events." *Carroll*, 2023 WL 2669790, at *6.

Applying those principles here, Carroll's statement is clearly a "report" of the *Carroll II* trial proceeding—which was the overriding, unmistakable subject of her CNN interview. Indeed, this was clear in context: Carroll made her statement during a post-trial interview about the trial verdict, on a screen plastered with chyrons about the trial verdict, in which reporters asked Carroll and her lawyer questions about the trial proceedings and Trump's stated intention to appeal the verdict. There is no plausible basis for inferring that Carroll's statement was not a "report" of the trial: she was quite literally reporting on her thought process as the jury issued its verdict on her own claim. This was not an independent attack focused on the "underlying events." Any viewer would instantly grasp that CNN's interview and Carroll's statements were reporting on the case.

And that report was both fair and true. For purposes of Section 74, a report is considered fair and true "if its substance is substantially accurate." *Id.* at *7 (quoting *Calvin Klein Trademark Tr. v. Wachner*, 129 F. Supp. 2d 248, 253 (S.D.N.Y. 2001); *accord Holy Spirit Ass'n v. N.Y. Times*

*Co.*, 49 N.Y.2d 63, 67 (1979)). The question is only whether a statement "is a substantially accurate description of the claims *made in the … proceeding*." *Mulder v. Donaldson, Lufkin & Jenrette*, 611 N.Y.S.2d 1019, 1023–24 (Sup. Ct., N.Y. Cty. 1994), *aff'd*, 623 N.Y.S.2d 560 (1995) (emphasis added). That holds true even if the "allegations are erroneous," since "section 74's privilege is purposely designed to immunize reporting on the allegations made in proceedings regardless of the veracity of those underlying allegations." *Cummings v. City of New York*, No. 19 Civ. 7723, 2020 WL 882335, at *19 (S.D.N.Y. Feb. 24, 2020) (cleaned up). A report is "substantially accurate" if it "suggest[s] [no] more serious conduct than that actually suggested in the official proceeding." *Carroll*, 2023 WL 2669790, at *7 (quoting *Calvin Klein Trademark Tr.*, 129 F. Supp. 2d at 253). To gauge the accuracy of the statement, "the language … should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n*, 49 N.Y.2d at 68; *see also Ctr. for Med. Progress*, 551 F. Supp. 3d at 331 (litigant "cannot cherry-pick one of several definitions of a word, take the word entirely out of context, and claim that such definition precludes a finding that the Challenged Statements were substantially accurate").

Trump alleges that Carroll's comment—"oh yes he did, oh yes he did"—"disregarded the jury's finding that [Trump] did not rape her." ¶ 5. But whether her single statement accurately reflected the jury's finding is not the relevant inquiry. The question is whether Carroll's comment suggests "conduct more serious than the conduct *alleged* in the underlying court case[]." *Ctr. for Med. Progress*, 551 F. Supp. 3d at 331 (emphasis added). Clearly, it does not. When Carroll took the witness stand just a few days prior to hearing the jury's verdict, she explained to the jury that she thought Trump had inserted his penis into her vagina. *Carroll II* Trial Tr. at 181, 636. Both at opening and closing argument, her counsel asked the jury to find that Trump had raped Carroll under the New York Penal Law. *Id.* at 46, 1258. Carroll's report of her thoughts in hearing the jury

verdict was thus "substantively equivalent" to her position in the case. *Gonzalez v. Gray*, 216 F.3d 1072, at *1 (2d Cir. 2000).

As the Court no doubt recalls, Trump moved for summary judgment in *Carroll II* on the ground that his October 2022 Truth Social statement was a fair and true report of his answer in *Carroll I. See Carroll*, 2023 WL 2669790, at *6. The Court denied that motion, concluding that no reasonable juror could find "the content or context" of Trump's statement to be a report of a judicial proceeding. *Id*. The Court reached that conclusion because Trump's statement was "an amalgamation of Mr. Trump's personal views and comments on a wide range of subjects," with only "passing references" to the judicial proceeding, and Trump's comments about Carroll focused "exclusively on underlying events" rather than a "judicial proceeding relating to those events." *Id*. at *6–*7 (cleaned up). Here, Carroll's statement on CNN could hardly be more different. The interview was styled as a report on the very judicial proceeding between Carroll and Trump that had just concluded the day before. Carroll's comment concerned the jury verdict specifically. Moreover, whereas Trump's statement in *Carroll II* implied "a far broader and more corrosive conspiracy than anything that was at issue in *Carroll I*," *id*. at *9, the statement at issue here was perfectly consistent with (and merely described) Carroll's own testimony in *Carroll II*. Carroll simply repeated on CNN her recollection that Trump had used his penis to penetrate her—a position that had been fully aired and explored at trial, and that was therefore shielded by Section 74.

### B. Carroll Did Not Commit Defamation When She Described Her Conversation with Opposing Counsel

Trump separately alleges that Carroll defamed him in the CNN interview by describing an in-court, post-verdict exchange with his lawyer, Joseph Tacopina, where she stated: "[H]e did it and you know it." ¶ 7. Trump does not (and could not) allege that Carroll's statement was literally

false in the sense that she inaccurately described her conversation with Tacopina. Nor does Trump

allege that Carroll falsely characterized Tacopina's actual beliefs about Trump's guilt—a theory

that would turn on Carroll's opinion about Tacopina's subjective state of mind. Carroll did not

"imply that [she] [was] aware of any undisclosed facts that would lend a factual connotation to

[her] speculation," *Condit v. Dunne*, 317 F. Supp. 2d 344, 369 (S.D.N.Y. 2004), nor does Trump

allege that Carroll somehow commented on Tacopina's own subjective beliefs with actual malice,

*Free Holdings Inc. v. McCoy*, No. 22 Civ. 881, 2023 WL 2561576, at *15 (S.D.N.Y. Mar. 17,

2023).

Instead, Trump alleges that Carroll's retelling of her exchange with Tacopina "reaffirm[ed]

her claim that [Trump] raped her." ¶ 7. But this allegation stumbles at the start, since it depends

on a characterization of Carroll's statement that is inconsistent with the statement itself. *See In re

Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court

need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would

render a claim incoherent, or that are contradicted … by documents upon which its pleadings rely,

or by facts of which the court may take judicial notice." (citation omitted)).

Neither Carroll's statement about what she said to Tacopina, nor the question posed to her

by the CNN interviewer, used the word "rape." Ex. B. So there is nothing on the face of her

statement that suggests she was specifically referring to rape when she said "he did it." And the

context of her statement renders any such inference implausible. As Carroll related it on CNN, her

exchange with Tacopina occurred right after the verdict was announced. At that time, Tacopina

congratulated Carroll's counsel and then Carroll herself on the trial victory; Carroll (in the

statement here at issue) responded to Tacopina's congratulations by telling him, "He did it and you

know it." *Id.* On its face, this statement was a reaction to—and an endorsement of—the jury verdict

that Trump had sexually abused and defamed her. *See Carroll II*, ECF 174. In other words, Trump *did* do it (and, in Carroll's subjective estimation, Tacopina knew that he did it). A reasonable viewer of the CNN interview would not understand this statement as a claim that Trump raped Carroll.

In asserting otherwise, Trump would have this Court conclude that by using the pronoun "it," Carroll specifically meant "rape," as that term is defined in the New York Penal Law. But the "it" as used by Carroll at the time is not "susceptible of the meaning" that Trump "ascribe[s]" to it. *James v. Gannett* Co., 40 N.Y.2d 415, 419 (1976). Trump's interpretation requires "straining to place a particular interpretation on the published words" that, as discussed, is untethered to the context and the content of Carroll's statement. *Id.* at 420; *see also Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985) (defamation claims cannot be supported by "strained or artificial construction"). In that crucial sense, Trump's defamation claim is not "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

But there is more: Trump's defamation claim based on this statement fails for the same two additional reasons given above. *First*, it fails for want of any plausible allegation of malice, since all that Trump pleads are "actual-malice buzzwords." *Biro*, 963 F. Supp. 2d at 279–80 (citation omitted). And *second*, it fails by virtue of Section 74's fair and true reporting privilege, since Carroll's statement was a report of events that occurred in the courtroom and Trump does not deny that her account is accurate.

## II.   TRUMP'S COUNTERCLAIM IS IMPROPER AT THIS STAGE OF THE CASE

Trump's counterclaim not only fails on the merits (and should therefore be dismissed for failure to state a claim under Rule 12(b)(6)), but it is also procedurally improper.

The Second Circuit recently clarified the standard that applies when a counterclaim is asserted in response to an amended complaint. More specifically, the Second Circuit addressed

whether the counterclaim "may respond as broadly as one included in an answer to an original complaint or whether it must respond only to the new allegations of an amended complaint." *GEOMC Co.*, 918 F.3d at 99. For a counterclaim "presented at an early stage of the litigation," the Second Circuit held that "the new counterclaim may normally be as broad as those filed in response to an original complaint." *Id.* at 100. But the opposite rule applies to a counterclaim asserted "[a]t a late stage of the litigation." *Id*. At that point, "a new counterclaim that raises issues beyond the scope of the new claims made in the most recent amended complaint will usually cause escalating prejudice to the counterdefendant and undue expansion of litigation that the court is charged with managing." *Id.* Thus, a late-stage counterclaim that "exceeds the scope of the plaintiff's new claims" should "normally not be permitted." *Id*; *accord Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17 Civ. 8528, 2022 WL 836890, at *8 (S.D.N.Y. Mar. 21, 2022) (dismissal of late-stage counterclaim turns on "(1) how far into the litigation the new counterclaim[ is] asserted," and "(2) whether the counterclaim raises issues beyond the scope of the new claims made in the … [a]mended [c]omplaint" (citation omitted)).

Trump's counterclaim indisputably arrives at a late stage of this nearly four-year litigation. Discovery has been closed since November 2022; Trump's summary judgment motion has been decided; motions *in limine* are fully briefed and substantially resolved; a joint pretrial order has been submitted; and trial is scheduled to begin on January 15, 2024. ECF 77, 100, 129, 145, 170, 173. Trump himself has acknowledged that this case is "ready to proceed to trial." ECF 164 at 9. The Second Circuit has recognized that "the risk of substantial prejudice increases with the passage of time," *GEOMC Co.*, 918 F.3d at 100 (quoting Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.)), and courts have found far less mature cases to still be at "a late stage" in determining that dismissal of a counterclaim is warranted, *see Fossil Grp., Inc. v. Angel Seller LLC*, 627 F.

Supp. 3d 180, 196 (E.D.N.Y. 2022) (counterclaim came at late stage where "fact discovery [was] largely complete"); *Thor 680 Madison Ave. LLC*, 2022 WL 836890, at *8 (same where counterclaim was filed "eighteen months after this action was filed and after the close of fact discovery" and while "the parties were in the midst of briefing cross-motions for summary judgment"); *see also Hybrid Athletics, LLC v. Hylete, Inc.*, No. 3:17 Civ. 1767, 2019 WL 6358246, at *5 (D. Conn. Nov. 27, 2019) (counterclaim came at "advanced stage" even though discovery was ongoing).

Nor can there be any dispute that Trump's counterclaim raises issues "beyond the scope of the new claims" in Carroll's amended pleading. *GEOMC Co.*, 918 F.3d at 100. This is explained by the simple fact that Carroll's "amended complaint did not add any new claims or otherwise change the focus of her original complaint." *Carroll*, 2023 WL 4393067, at *2 n.6; *see* ECF 156 at 2 (explaining limited nature of new allegations, which respond to the scope-of-employment issue as recently clarified by the D.C. Court of Appeals). In the absence of any new claims against him, Trump's counterclaim obviously fails the Second Circuit's test. *See, e.g.*, *Ramsay-Nobles v. Keyser*, No. 16 Civ. 5778, 2018 WL 6985228, at *5 (S.D.N.Y. Dec. 18, 2018) (rejecting counterclaim that "add[ed] a whole new issue for litigation" in response to an amended complaint that "did not generate new issues or theories" or alter claims against the counterdefendant, but instead "simply added more detail to the original allegations").

And if Trump's counterclaim is not dismissed, Carroll will be forced "to expend significant additional resources to conduct discovery and prepare for trial." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citation omitted). Although discovery has fully explored whether Trump sexually assaulted Carroll, *Carroll II*, ECF 19, Carroll would need (and be entitled) to take discovery to defend against Trump's new claim that Carroll's "repeated falsehoods and defamatory

statements" have caused "significant harm to his reputation, which, in turn, has yielded an inordinate amount of damages." ¶ 12. That, in turn, would probably include, at a minimum, document discovery relating to Trump's financial situation before and after the alleged defamation, another deposition of Trump, and expert discovery.[4] It may also require nonparty discovery of Trump's presidential campaign (to respond to any claim that Trump was injured in his political pursuits) and of Trump's *Carroll II* counsel (as one of the allegedly defamatory statements concerned comments Carroll made to him).

Following that additional discovery, there would be additional summary judgment briefing and, if Trump survived summary judgment, trial. A trial that included Trump's counterclaim would be far broader than a trial on Carroll's single claim of defamation. By virtue of collateral estoppel, the jury verdict in *Carroll II* resolved most of the triable issues present in this action, leaving only a narrow dispute as to damages. *See* ECF 168 at 8–9. Trying the counterclaim, by contrast, would require resolution of additional factual questions and the participation of additional witnesses whose testimony would not otherwise be needed. *See GEOMC Co.*, 918 F.3d at 102 (affirming rejection of counterclaims that "greatly expand the relatively narrow scope of [the] case" (citation omitted)); *Fossil Grp., Inc.*, 627 F. Supp. 3d at 188 (denying leave to assert counterclaim that "would necessitate a lengthy period of time for additional fact and expert discovery").

All of this would substantially delay resolution of Carroll's original defamation claim against Trump even in the best of circumstances. But here the circumstances are actually far worse. Trump is running for president, with 56 primary elections and caucuses expected to take place

---

[4] Trump would presumably take the position that discovery on his counterclaim would involve four other statements, identified by Trump for the first time dating back to April 2020. ¶ 2. The statute of limitations on those alleged instances of defamation has passed, and Trump not once sought to raise them in this action, even when he previously sought leave to amend his answer. ECF 59. For the avoidance of doubt, Trump has confirmed in writing that "the cause of action set forth in the Counterclaim is solely premised on the statements made by the plaintiff/counterclaim-defendant, E. Jean Carroll, during her May 10, 2023 appearance on CNN."

between January and June 2024. *Important Dates in the 2024 Presidential Race*, Ballotpedia.[5]

Trump already has four other trials scheduled between now and March 2024. Erica Orden, *Trump*

*Now Faces Four Trials over Six-Month Span During Critical Phase of 2024 Campaign*, Politico

(June 15, 2023);[6] Katelyn Polantz, *Special Counsel Asks for December Trial Date for Trump in*

*Mar-a-Lago Documents Case*, CNN (June 23, 2023).[7] Trump currently faces two separate criminal

indictments, *United States v. Trump*, No. 9:23 Cr. 80101 (S.D. Fl. 2023); *People v. Trump*, Ind.

No. 71543-23 (N.Y. Sup. Ct., N.Y. Cty. 2023), with a sentencing guidelines range on his federal

charges of potentially 210 to 262 months, even if all sentences were to run concurrently, *see* David

Aaron, *How Much Prison Time Does Former President Trump Face? Applying the U.S.*

*Sentencing Guidelines*, Just Security (June 12, 2023).[8] And there is the possibility of at least two

more criminal indictments in the coming months. Ben Protess et al., *Donald Trump Faces Several*

*Investigations. Here's Where They Stand.,* N.Y. Times (June 16, 2023).[9]

    Delay, of course, is exactly what Trump wants. Carroll "now has litigated this case for

more than three and a half years[,] completed discovery, engaged in extensive motion practice,

resisted the government's attempt to defeat her claim before [this] Court, the Second Circuit and

the D.C. Court of Appeals, and devoted untold hours and resources to pursuing her claim." *Carroll*,

2023 WL 4393067, at *12. Trump's own actions, however, "have been dilatory throughout the

litigation." *Id.* (citation omitted). He has pursued a strategy of "slow-rolling his defenses, asserting

or inventing a new one each time his prior effort to delay the case fails." *Id.* (citation omitted). His

---

[5] https://ballotpedia.org/Important_dates_in_the_2024_presidential_race.

[6] https://www.politico.com/news/2023/06/15/trump-trial-date-carroll-lawsuit-00102328.

[7] https://www.cnn.com/2023/06/23/politics/trump-federal-trial-date-special-counsel/index.html.

[8] https://www.justsecurity.org/86901/how-much-prison-time-does-former-president-trump-face-applying-the-u-s-sentencing-guidelines.

[9] https://www.nytimes.com/article/trump-investigations-civil-criminal.html.

"conduct both in this case and in *Carroll II*" has "only [] corroborated the Court's earlier hypothesis of his dilatory motive." *Id.* The Court has already acknowledged these considerations in its recent decision denying Trump's request to amend his answer to add the affirmative defense of absolute immunity, *id.* at *9–*13, and should take them into account again in dismissing Trump's counterclaim as procedurally improper at this time.

## III. TRUMP'S AFFIRMATIVE DEFENSES THAT HAVE ALREADY BEEN REJECTED SHOULD BE STRICKEN

Although courts generally proceed cautiously in deciding whether to strike affirmative defenses, courts routinely strike affirmative defenses that raise issues that were previously decided in the case. *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18 Civ. 5075, 2020 WL 3472597, at *5, *13–*14 (S.D.N.Y. June 25, 2020) (invoking law of the case doctrine and striking affirmative defense "to the extent that it seeks to relitigate the legal sufficiency of claims already decided"). *See also, e.g.*, *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, No. 17 Civ. 124, 2020 WL 1031271, at *2 (S.D.N.Y. Mar. 2, 2020) (striking affirmative defense because "[t]here is no need to litigate the same issue again"); *Alan L. Frank L. Assocs., P.C. v. OOO RM Inv.*, No. 17 Civ. 1338, 2021 WL 3269010, at *3 (E.D.N.Y. July 30, 2021) (striking affirmative defense where it was based on an argument that was already "considered and rejected"); *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 437 (E.D.N.Y. 2020) (striking affirmative defense that the court had "already determined … [was] not warranted"). This is so because "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506, 131 S. Ct. 1229, 1250 (2001) (citation omitted).

Here, the Court should strike Trump's First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses because the Court considered and rejected each of these defenses in denying

Trump's motion for summary judgment. *Compare Carroll*, 2023 WL 4393067, at *5–*13 (rejecting Trump's presidential immunity defense); *id.* at *13–*14 (holding that "Carroll adequately has alleged that Mr. Trump's statements are libelous *per se*"); *id.* at *15–*17 (holding that "Trump's statements were factual assertions rather than expressions of opinion"); *id.* at *19–*20 (rejecting Trump's argument that Carroll "failed to establish … the prerequisites to a punitive damages award" as a matter of law), *with* ECF 171 at 20–21 ¶ 1 (asserting presidential immunity defense); *id.* at 21 ¶ 3 (asserting defense based on Constitutional immunities); *id.* at 21 ¶ 5 (asserting that Trump's statements are non-actionable opinion); *id.* at 22 ¶ 12 (asserting that plaintiff is not entitled to punitive damages as a matter of law); *id.* at 22 ¶ 15 (asserting that plaintiff "has not sufficiently pled" defamation or defamation *per se*).

## CONCLUSION

The Court should grant Carroll's motion to dismiss on both independent grounds discussed above: (1) Trump fails to state a claim for defamation; and (2) his counterclaim is procedurally improper. In doing so, the Court will avoid the possibility of piecemeal resolution of the issues and resolve a claim that implicates Carroll's First Amendment rights. *GEOMC Co.*, 918 F.3d at 101 ("In ruling on a motion to dismiss a new counterclaim, a district court can either assess the new counterclaim's legal sufficiency or exercise the discretion the court would have been entitled to use if the counterclaimant had moved under Rule 15 to file the new counterclaim."). In addition, the Court should grant Carroll's motion to strike Trump's First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses.

Dated: New York, New York
     July 11, 2023

Respectfully submitted,

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

     *Plaintiff,*

  v.

DONALD J. TRUMP, in his personal capacity,

     *Defendant.*

Civil Action No.: 1:20-cv-7311-LAK-JLC

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STRIKE

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
   -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
    mmadaio@habbalaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................... ii

BACKGROUND ...........................................................................1

ARGUMENT ..............................................................................3

   I.   Plaintiff Post-Verdict Statements Were Defamatory and Not Privileged .........................4

     A.  Plaintiff's Statement that Defendant "Did" Rape Her is Defamatory .........................4

        1.  Plaintiff's Statements Were Unequivocally False and Directly Contradicted the Jury's Verdict.................................................................5

        2.  Defendant Has Sufficiently Alleged Actual Malice ..........................................8

        3.  The Fair and True Reporting Privilege Does Not Apply...............................11

           i.   Plaintiff's Statements are Not a "Report of an Official Proceeding ....12

          ii.   Plaintiff's Statements are Not "Fair and True"....................................15

     B.  Plaintiff's Publication of Her Post-Verdict Statements to Defense Counsel is Defamatory ........................................................18

  II.   DEFENDANT'S COUNTERCLAIM IS PROCEDURALLY PROPER.........................19

 III.   NONE OF DEFENDANT'S AFFIRMATIVE DEFENSES SHOULD BE STRICKEN .22

CONCLUSION.............................................................................28

# TABLE OF AUTHORITIES

*Cases*

*Arrow Commc'ns Labs., Inc. v. Pico Prods., Inc.,*
    606 N.Y.S.2d 114, 115 (4th Dep't 1993) ...............................................................6

*Biro v. Conde Nast,*
    807 F.3d 541, 545 (2d Cir. 2015) ........................................................................5

*Bose Corp. v. Consumers Union of United States, Inc.,*
    692 F.2d 189, 196 (1st Cir. 1982) ......................................................................5

*Branca v. Mayesh,*
    101 A.D.2d 872, 476 N.Y.S.2d 187, 188–89 (2d Dep't 1984) ..............................15

*Cafferty v. Southern Tier Publishing Co.,*
    226 N.Y. 87, 93 (1919) .......................................................................................7

*Carroll v. Trump,*
    No. 22-CV-10016 (LAK), 2023 WL 2669790, at *6 (S.D.N.Y. Mar. 28, 2023) .................11

*Carroll v. Donald J. Trump,*
    Case No. 1:22-cv-1001 (S.D.N.Y 2022).................................................................5

*Celle v. Filipino Rep. Enterprises Inc.,*
    209 F.3d 163, 176 (2d Cir. 2000) ...........................................................7, 8, 9, 10

*Cholowsky v. Civiletti,*
    69 A.D.3d 110, 114 (2d Dept. 2009) ...................................................................12

*Clark v. AII Acquisition, LLC,*
    886 F.3d 261, 264 (2d Cir. 2018) .................................................................27, 28

*Cohen v. Stephen Wise Free Synagogue,*
    No. 95 CIV. 1659 (PKL), 1996 WL 159096, at *5 (S.D.N.Y. Apr. 4, 1996) ....................24

*Conti v. Doe,*
    535 F. Supp. 3d 257, 272 (S.D.N.Y. 2021) ..........................................................5

*Davis v. Boeheim,*
    4 N.Y.3d 262, 272, 22 N.E.3d 999, 1006 (2014).............................................6, 7, 18

*D'Annunzio v. Ayken, Inc.,*
    876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012) ..........................................................5

*Daniel Goldreyer, Ltd. V. Van de Wetering,*
    217 A.D.2d 434, 436 (1st Dep't 1995) ....................................................................17

*Deutsch v. Health Ins. Plan of Greater New York,*
    573 F. Supp. 1443, 1445 (S.D.N.Y. 1983) ...................................................25, 26

*Dillon v. City of New York,*
    261 A.D.2d 34, 37–38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)....................................9

*Easton v. Pub. Citizens, Inc.,*
    No. 91-cv-1639 (JSM), 1991 WL 280688, at *7 (S.D.N.Y. Dec. 26, 1991) .........14

*Enigma Software Group USA v. Bleeping Computer,*
    194 F.Supp. 3d 263, 286 (S.D.N.Y. 2016) ............................................................7

*Feldman v. Comp. Trading, LLC,*
    *No.* 19-CV-4452 (RPK) (RLM), 2021 WL 930222, at *2 (E.D.N.Y. Mar. 11, 2021) ..........26

*Flamm v. Am. Ass'n of Univ. Women,*
    201 F.3d 144, 152 (2d Cir. 2000) ..........................................................................6

*Fine v. ESPN, Inc.,*
    11 F.Supp. 3d, 209, 216-218 (N.D.N.Y. 2014) ...................................................14

*Fossil Grp., Inc. v. Angel Seller LLC,*
    No. 20-CV-2441(WFK) (TAM), 2021 WL 5409605, at *4 (E.D.N.Y. Aug. 27, 2021) ........19

*Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York,*
    101 A.D.2d 175, 475 N.Y.S.2d 383, 388–89 (1st Dep't 1984)................................5

*Fine v. ESPN, Inc.,*
    11 F.Supp. 3d, 209, 216-218 (N.D.N.Y. 2014) .....................................................5

*Geiger v. Town of Greece,*
    311 F. App'x 413, 417 (2d Cir. 2009) ..................................................................15

*GEOMC Co. v. Calmare Therapeutics Inc.,*
    918 F.3d 92, 100 ....................................................................................19, 23, 24

*Gilmore v. Shearson/American Express, Inc.,*
    811 F.2d 108, 112 (2d Cir. 1987) ........................................................................27

*Goldman v. Reddington,*
    417 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) ...........................................................6

*Guiffre v. Maxwell,*
    165 F.Supp.3d 147, 151 (S.D.N.Y. 2013). .......................................................6, 18

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
    491 U.S. 657, 667 (1989) ................................................................8

*Harris v. City of N.Y.,*
    186 F.3d 243, 249 (2d Cir. 1999) ...................................................25

*Harris v. Steinem*,
    571 F.2d 119, 123 (2d Cir. 1978) ...................................................21

*Jewell v. NYP Holdings, Inc.,*
    23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998) ......................................8

*Jones v. Ford Motor Credit Co.,*
    358 F.3d 205, 209 (2d Cir.2004) ...................................................21

*Karedes v. Ackerly Group, Inc.*,
    423 F.3d 107, 114 (2d Cir. 2005) ...................................................15

*Karp v. Hill & Knowlton, Inc.,*
    631 F. Supp. 360, 363 (S.D.N.Y. 1986) ...................................14, 15

*Katz v. Donna Karan Co. Store, L.L.C.*,
    872 F.3d 114, 118 (2d Cir. 2017). ...................................................9

*Kinsey v. New York Times Co.,*
    991 F.3d 171, 178 (2d Cir. 2021) ...................................................16

*Levine v. Merrill Lynch,*
    No. 09 CIV. 304 (PGG), 2009 WL 10691070, at *1, 4 (S.D.N.Y. Dec. 22, 2009) ...............23

*Lipsky v. Commonwealth United Corp.,*
    551 F.2d 887, 893 (2d Cir. 1976) ...................................................23

*McFadden v. Monroe Cty. Sheriff,*
    No. 00 Civ. 6034, 2002 WL 1348508, at *3 (W.D.N.Y. Apr. 16, 2002) ..............25

*McRedmond v. Sutton Place Rest. & Bar, Inc.,*
    851 N.Y.S.2d 478, 480 (2008) ......................................................15

*Meloff v. New York Life Ins. Co.*,
    240 F.3d 138, 146 (2d Cir.2001) .....................................................5

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1, 2, 110 S. Ct. 2695, 2697, 111 L. Ed. 2d 1 (1990) ...................6

*New York Times Co. v. Sullivan,*

376 U.S. 254, 279–80 (1964) ....................................................................................................8

*NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC,*
No. 20CV2875LDHPK, 2022 WL 900604, at *9 (E.D.N.Y. Mar. 28, 2022) ........................9

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.,*
No. 96 CIV. 9469 (RWS), 1999 WL 191527, at *19 (S.D.N.Y. Apr. 7, 1999) ...................24

*Palin v. New York Times Company,*
940 F.3d 804, 815 (2d Cir. 2019) ...........................................................................................9

*Pfeffer v. Mark,*
No. 98-CV-6771(ILG), 2000 WL 516891, at *2 (E.D.N.Y. Mar. 16, 2000) ........................5

*Pisani v. Staten Island Univ. Hosp.,*
440 F. Supp. 2d 168, 178 (E.D.N.Y. 2006) ....................................................................15, 17

*Porsch v. LLR, Inc.,*
380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) ..........................................................................22

*Rodriguez v City of New York,*
18 CIV. 4805 (NRB), 2021 WL 5360120, at *4 (S.D.N.Y. Nov. 16, 2021) ........................26

*Ramsay-Nobles v. Keyser,*
No. 16-CV-5778 (CM), 2018 WL 6985228, at *3 (S.D.N.Y. Dec. 18, 2018) .....................19

*Rosenblum v. Thomson Reuters (Markets) LLC,*
984 F. Supp. 2d 141, 145 (S.D.N.Y. 2013) ...........................................................................9

*Salcer v. Envicon Equities Corp.,*
478 U.S. 1015 (1986).......................................................................................................22, 25

*Shields v. Citytrust Bancorp, Inc.,*
25 F.3d 1124, 1128 (2d Cir. 1994) .................................................................................25, 26

*Tardif v. City of New York,*
302 F.R.D. 31, 32 (S.D.N.Y. 2014) ......................................................................................23

*Town & Country Linen Corp. v. Ingenious Designs LLC,*
No. 18-CV-5075 (LJL), 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020) .................9, 10

*United Mine Workers v. Gibbs,*
383 U.S. 715, 725 (1966)........................................................................................................5

*US Dominion, Inc. v. Fox News Network, LLC,*
No. 21 Civ. 03- 257, 2021 WL 5984265, at *25 (Del. Super. Ct. Dec. 16, 2021) ................21

*VNB Realty, Inc. v. Bank of Am. Corp.,*
No. 11-cv-6805 (DLC), 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013)........................5

*Wenz v. Becker,*
948 F. Supp. 319, 322 (S.D.N.Y. 1996) .........................................................................11, 12

*Wexler v. Alegion,*
*(UK) Ltd.,* 374 F. Supp. 3d 302, 313 (S.D.N.Y. 2019)........................................................13

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,*
744 F.2d 935, 939 (2d Cir. 1984) .....................................................................................22

*Young v. Gannett Satellite Info. Network, Inc.,*
734 F.3d 544, 548 (6th Cir. 2013) .......................................................................................1

## **Rules, Statutes, and Miscellaneous**

Federal Rule of Civil Procedure 12 ...........................................................................................3

Federal Rule of Civil Procedure 13 ...................................................................................20, 21

Federal Rule of Civil Procedure 15 ...........................................................................................5

N.Y. Civ. Rights Law § 74 .................................................................................11, 12, 13, 15, 16

Restatement (Second) of Torts § 558 (1976)............................................................................4

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1430...................................................................21

6 Wright & Miller, § 1488 .......................................................................................................19

Defendant/Counterclaimant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in opposition to the Motion to Dismiss and Motion to Strike (the "Motion") filed by the plaintiff and Counterclaim Defendant, E. Jean Carroll ("Plaintiff"), on July 11, 2023 (ECF 174). For the reasons set forth herein, the Motion should be denied in its entirety.

## **BACKGROUND**

Defendant recognizes the Court's familiarity with the parties' history and procedural posture of this action and the companion case, *E. Jean Carroll v. Donald J. Trump*, No. 1:22-cv-1001 (S.D.N.Y 2022) ("*Carroll II*").

In June of 2019, Plaintiff, for the first time, launched public accusations against Defendant, then-sitting President of the United States, claiming that he raped her at some point in the mid-1990s. *See generally* ECF 1. In response, Defendant issued three separate statements refuting Plaintiff's allegations. Plaintiff then filed her action in the Supreme Court of the State of New York on November 4, 2019. Plaintiff's single-count complaint alleged that Defendant defamed her when he made the challenged statements. *Id.*

Thereafter, on November 24, 2022, Plaintiff filed *Carroll II*, a second civil action against Defendant. The *Carroll II* complaint also detailed Plaintiff's account of the alleged Bergdorf Goodman incident and included a cause of action under the Adult Survivor's Act, as well as a new defamation claim stemming from Defendant's October 12, 2022 statement relating to the litigation *sub judice*.

Trial commenced in *Carroll II* on April 25, 2022. The consistent theme throughout Plaintiff's testimony was her claim that she had been raped by Defendant in the mid-1990s. After hearing the testimony of Plaintiff and her "outcry" witnesses, as well as all other evidence in the

case, the jury found that Defendant had not raped Plaintiff within the relevant definition of New York's Penal Law. *Carroll II*, ECF 174. Thereafter, Defendant timely filed a notice of appeal of the *Carroll II* judgment, and the matter is pending before the Second Circuit. *Carroll II*, ECF 179.

On May 10, 2023, the morning following the *Carroll II* verdict, Plaintiff and her counsel, Roberta Kaplan, appeared on the televised news program, *CNN This Morning*.[1] During the interview, Plaintiff was asked to comment on the jury's finding that she was not raped by Defendant, and the following interaction took place:

> Reporter: What about when that first finding was found? This jury found that Trump did not rape you. What about that moment?
>
> Plaintiff: Robbie can explain the legal.
>
> Reporter: Sure. And I want you to, but I just wonder, E. Jean, what went through your head when you heard that?
>
> Plaintiff: Well, I just immediately say in my own head, oh, yes, he did—oh, yes, he did. So that's my response.

ECF 175 at 6.

After answering a series of additional questions, the interview shifted towards Plaintiff's recollection of an exchange between her and Defendant's trial counsel, Joseph Tacopina.

> Reporter: There in the courtroom was an encounter, an exchange, between you and the president's lawyer, Joe Tacopina. He came up, you shook hands, I believe. What did he say?
>
> Plaintiff: Well, Joe Tacopina is very likeable. He's sort of like an 18th century strutting peacock. And people like him. So, when he sticks out his hand to—first, he congratulated Robbie. And then, he was congratulating people on the team. And as I put my hand forward, I said, "he did it and you know it." Then we shook hands, and I passed on.

ECF 175 at 7.

---

[1] CNN, "E. Jean Carroll says Trump is 'incorrect' about civil trial jury," YouTube (May 10, 2023), https://bit.ly/3WRSXeF.

Shortly thereafter, Plaintiff moved to amend her complaint in the instant action. *See* ECF 155. The proposed allegations included in her amendments were substantial which included: (1) removing virtually every reference to her original allegation that Defendant raped her; (2) certain allegations pertaining to whether Defendant was acting within the scope of his office as President of the United States when making the challenged statements; and (3) Plaintiff alleges that Defendant's post-verdict statements made during a televised CNN Town Hall program should serve as grounds to increase any punitive damages awarded against the Defendant. *Id*. This Court granted Plaintiff's motion. *See* ECF 169.

In response to Plaintiff's Amended Complaint, Defendant filed an Amended Answer with Counterclaim on June 27, 2023. *See* ECF 171. Defendant answered each of Plaintiff's amended allegations, put forth various affirmative defenses, and raised a counterclaim based on the defamatory statements that Plaintiff made during her CNN interview.

## **ARGUMENT**

In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint. *See, Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020). When considering a motion to dismiss a complaint under Rule 12, the Court must "accept[ ] all of the [counterclaim's] factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor." *See Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017). A claim should not be dismissed if the plaintiff has stated facts sufficient to state a claim to relief that is plausible on its face. *Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F. Supp. 2d 141, 145 (S.D.N.Y. 2013). Furthermore, plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 145 (S.D.N.Y. 2013).

## I. DEFENDANT ASSERTS A COGNIZABLE CLAIM FOR DEFAMATION

Defendant's counterclaim sets forth a viable claim for defamation with respect to two statements that Plaintiff made during her May 10, 2023 interview on CNN.

The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege. *See, e.g., Dillon v. City of New York*, 261 A.D.2d 34, 37–38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (citing Restatement (Second) of Torts § 558 (1976)); *see also Albert v. Loksen*, 239 F.3d 256, 266 (2d Cir. 2001) (setting forth the same elements for a slander claim under New York law).

In the instant matter, it is readily apparent that Defendant's counterclaim satisfies all of the above elements. Therefore, for the reasons set forth below, Defendant has asserted a cognizable claim for defamation.

### A. Plaintiff's Statement that Defendant "Did" Rape Her is Defamatory

Defendant has satisfied each of the elements for defamation when pleading that Plaintiff defamed him by repudiating the jury's finding in *Carroll II* and declaring that Defendant raped her. First, Defendant sufficiently pled that Plaintiff made a false statement by reaffirming her previous assertion that Defendant had committed rape, even after the jury's verdict in Carroll II. Second, Plaintiff knew it was false or acted in reckless disregard of its truth or falsity when she again accused Defendant of rape. Third, Plaintiff's statements are not protected by the fair and true reporting privilege. Therefore, Defendant's counterclaim sets forth a valid claim for defamation.

**1. Plaintiff's Statements Were Unequivocally False and Directly Contradicted the Jury's Verdict.**

Plaintiff contends that her statement repudiating the jury's verdict was "substantially true" because she was simply "reciting her own undisputed internal thoughts" when she repudiated a key aspect of the jury's verdict on a nationally syndicated news program. *See* ECF 175 at 12. This argument, however, is misguided and inconsistent with binding authority as to what constitutes defamation under New York law.

"Substantial truth" is assessed on "the understanding of the 'average reader.'" *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir.2001). In this way, a "statement is 'substantially true' only if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Conti v. Doe,* 535 F. Supp. 3d 257, 272 (S.D.N.Y. 2021) (internal quotation marks omitted) (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998)).

New York courts have developed a three-prong test for determining whether a statement should be considered to be "substantially true." First, courts "must give the disputed language a fair reading in the context of the publication as a whole." *Karedes v. Ackerly Group, Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) (quoting *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000). Second, courts "are not to strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous." *Id*. Third, courts are to read statements "as they would be read and understood by the public to which they are addressed" and not with the precision with which judges and lawyers read documents. *Id*.

Here, Plaintiff's statement was demonstrably false. Plaintiff does not dispute, nor can she, that the jury in *Carroll II* determined that Defendant did not rape her. Notwithstanding the jury's

finding, Plaintiff appeared on national television the next day and clearly, and unequivocally, contradicted that finding:

> Reporter: . . . [W]hat went through your head when you heard that [the jury found that Trump did not rape you]?
>
> Plaintiff: Well, I just immediately say in my own head, oh, yes, he did—oh, yes, he did. So that's my response.

ECF 175 at 6.

It is undeniable that, in making the above statement, the message Plaintiff communicated to CNN viewers is that Defendant raped her. *See Arrow Commc'ns Labs., Inc. v. Pico Prods., Inc.,* 606 N.Y.S.2d 114, 115 (4th Dep't 1993) (finding statements defamatory because "read in context, [they] convey the unmistakable impression that they are statements of fact."); *see also Guiffre v. Maxwell*, 165 F.Supp.3d 147, 151 (S.D.N.Y. 2013) (Kaplan, J.) ("'The dispositive inquiry is whether, on the basis of the overall context in which the assertion were made, a reasonable reader could have concluded that the statements were *conveying facts about the plaintiff*.'") (citing *Davis v. Boeheim*, 24 N.Y.3d 262, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014)). Plaintiff's statement unambiguously conveyed a simple fact – the jury got it wrong because, as Plaintiff put it, the rape "did" occur. *See Goldman v. Reddington*, 417 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) (finding plaintiff adequately pleaded falsity where plaintiff "unambiguously disavow[ed]" the defamatory statement and "present[ed] specific facts ... to plausibly allege" the statements were not true). In view of the jury's finding, there is simply no argument that Plaintiff's statement was "substantially true" as a matter of law.

In attempting to counter this point, Plaintiff disingenuously argues that she was merely "reciting her own undisputed internal thoughts" because her statement was couched as being "in her own head." *See* ECF 175 at 12. However, this argument is merely a red herring, as it is squarely

foreclosed by binding precedent. Indeed, the Second Circuit has clarified that "[t]he mere recitation of prefatory phrases such as 'in my opinion' or 'I think' will not render innocent an otherwise defamatory statement," *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000) (citations omitted). Similarly, the Supreme Court has confirmed that "[s]imply couching a statement . . . in terms of opinion . . . does not dispel the factual implications contained in the statement." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 2, 110 S. Ct. 2695, 2697, 111 L. Ed. 2d 1 (1990). Likewise, the New York Court of Appeals has consistently rejected these types of 'technical' arguments, noting that "libel law is not a system of technicalities, but reasonable regulations whereby the public may be furnished news and information, but not false stories about any one." *Cafferty v. S. Tier Pub. Co.*, 226 N.Y. 87, 93 (1919). Thus, "notwithstanding [Plaintiff's] qualifier phrases, '[t]he impression created by [her] words in the mind of a reasonable person could be that they were purporting to state the truth of the matter, not merely [her] opinion.'" *Enigma Software Group USA v. Bleeping Computer*, 194 F.Supp. 3d 263, 286 (S.D.N.Y. 2016) (citing *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F.Supp. 661, 688 (S.D.N.Y. 1991). In other words, simply because Plaintiff attempted to couch her statement as being her "own internal thoughts," the defamatory effect is not lost.

Further, Plaintiff's attempt to distinguish the various uses of the term "rape" is similarly unavailing. While it is true that "rape" has different meanings in different jurisdictions, and in different context, that fact is wholly irrelevant here. In her motion papers, Plaintiff concedes that her statement on CNN "concerned the jury verdict specifically." *See* ECF 175 at 20. In other words, she was not commenting on whether she was 'raped' as the term is used colloquially or in other jurisdictions; she was directly responding to the jury's finding in *Caroll II* that there was no 'rape' as the term is defined in N.Y. Penal Law. Thus, it is beyond dispute that her statement runs contrary

to the *Carroll II* jury's finding, or that, at a minimum, a reasonable jury could interpret her statement as applying in this context. *Celle*, 209 F.3d at 178 ("If the words are reasonably susceptible of multiple meanings, some of which are not defamatory, it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood."); *see also*, *Davis*, 24 N.Y.3d at 272 (2014) ("It may well be that [the challenged statements] are subject to defendants' interpretation ... the motion to dismiss must be denied if the communication at issue, taking the words in their ordinary meaning and in context, is also susceptible to a defamatory connotation.") (internal quotation omitted).

Therefore, Plaintiff has no basis to contend that the challenged statement was substantially true, and Defendant should be permitted to proceed with his counterclaim.

## 2. Defendant Has Sufficiently Alleged Actual Malice

To show actual malice, a plaintiff must prove that the defendant either knew her statements were false or acted with reckless disregard as to whether they were false. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). As the Supreme Court has explained, while "the concept of 'reckless disregard' cannot be fully encompassed in one infallible definition, we have made clear that the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotation marks, citations, and alterations omitted).

Although the "actual malice" standard is demanding, the Second Circuit has made clear that it is not an "insurmountable" hurdle, especially at the pleadings stage. *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015). Rather, "at the pleading stage" actual malice may be inferred "from allegations that refer[] to the nature and circumstances of the alleged defamation or previous

dealings with the defendant." *Id.* at 546. In this way, a person acts with reckless disregard when she publishes the statement at issue entertaining serious doubts as to the truth of the statement or having a high degree of awareness that the statement is probably false. *Harte–Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). "Although actual malice is subjective, a 'court typically will infer actual malice from objective facts.'" *Celle*, 209 F.3d at 183 (quoting *Bose Corp. v. Consumers Union, Inc.*, 692 F.2d 189, 196 (1st Cir. 1982)).

Plaintiff argues that Defendant's allegation of actual malice fails because it is conclusory. *See* ECF 175 at 15. However, Plaintiff's contention is entirely off base. Defendant pleaded actual malice with specificity by alleging that "[c]ounterclaim Defendant made these false statements with actual malice and ill will with an intent to significantly and spitefully harm and attack Counterclaimant's reputation, as these false statements were *clearly contrary to the jury verdict in Carroll II* whereby Counterclaimant was found not liable for rape by the jury." ECF 171 at 26, ¶ 10 (emphasis added). On this motion to dismiss, drawing all inferences in Defendant's favor, there is little doubt that Defendant has put forth a sufficient showing of actual malice, especially where the jury's verdict leaves no room for doubt as to whether or not Defendant was found liable of rape. This is particularly true at the pleading stage, given that defendants to a defamation claim rarely admit their true state of mind. *See Celle*, 209 F.3d at 183 ("whether [defendant] in fact entertained serious doubts as to the truth of the statement may be proved by inference, as it would be rare for a defendant to admit such doubts.") (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 692 F.2d 189, 196 (1st Cir. 1982)).

While a showing of actual malice often turns on the sufficiency of circumstantial evidence, this case is unique in that there is already a prevailing authority that has found Plaintiff's statement to be false —the jury's verdict in *Carroll II*. As per a well-established body of case law, defamatory

statements made in direct contradiction to publicly available information are deemed to be made with actual malice. *See*, *e.g.*, *NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*, No. 20-CV-2875, 2022 WL 900604, at *9 (E.D.N.Y. Mar. 28, 2022), reconsideration denied, No. 20-CV-2875, 2023 WL 2667006 (E.D.N.Y. Mar. 27, 2023) (finding actual malice where the challenged statements were readily contradicted in public documents); *Palin v. New York Times Company*, 940 F.3d 804, 815 (2d Cir. 2019) (evidence that the editor of the column was editor-in-chief of a major magazine and reviewed numerous articles rejecting any connection of plaintiff to the shooting at issue, was evidence of the editor's "opportunity to know the journalistic consensus that the connection was lacking gives rise to the inference that he actually did know); *Celle*, 209 F.3d at 186–87 (a variance between the text and headline and the defamatory sub-headline was circumstantial evidence he knew that the thrust of the sub-headline was false); *Young v. Gannett Satellite Info. Network, Inc.*, 734 F.3d 544, 548 (6th Cir. 2013) (newspaper author had read an arbitrator's report containing several items she should have seen as "red flags" contradicting her conclusion).

Turning to the case at hand, Plaintiff made her statement with full knowledge that a jury of her peers rejected her assertion that Defendant raped her, as defined under New York Penal Law, and expressly disavowed this finding on national television. Plaintiff's contention that she relied on counsel to explain the legal implication of the verdict only weakens her argument. In *Carroll II*, this Court issued an opinion detailing how Plaintiff's prior understanding of rape came from a broader definition that is understood in society to go beyond sexual intercourse. *Carroll II*, ECF 212 at 3-5. Even if this was her original understanding (which is not conceded), it is not conceivable that Plaintiff was referring to the colloquial definition of the term since she was responding to a specific question about the verdict rendered by the jury in *Carroll II*. Indeed, after instructing her counsel to provide a 'legal' explanation as to the jury's verdict, Plaintiff went on to

emphatically claim that Defendant had raped her in *direct response* to a question regarding the jury's finding as it related to the definition of rape in the New York Penal Law. Thus, it is readily apparent that Plaintiff acted with knowing falsity or, at a minimum, reckless disregard for the truth when she knowingly repudiated the jury's determination that this specific act had not occurred.

Based on the foregoing, Defendant has sufficiently alleged that Plaintiff acted with actual malice in making her defamatory statements.

### 3. The Fair and True Reporting Privilege Does Not Apply

Civil Rights Law § 74 provides, in pertinent part: "A civil action cannot be maintained . . . for the publication of a fair and true report of any judicial proceeding." N.Y. Civ. Rights Law § 74.

"The purpose of providing immunity to fair and true reports of judicial proceedings is said to be to encourage the dissemination of information concerning the judicial branch of government and thereby to serve the public interest 'in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice.'" *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790, at \*6 (S.D.N.Y. Mar. 28, 2023) ("*Carroll II*") (citing *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012)). "Originally 'a qualified privilege for newspapers publishing 'a fair and true report' of 'any judicial, legislative, or other public official proceedings,'" the law was amended in 1930 "to make the privilege absolute" and ten years later "was extended from newspapers to 'any person, firm or corporation.'" *Id.* (citing *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dept. 2009))

Pursuant to Section 74, out-of-court statements are privileged only if two requirements are met: "(1) the allegedly defamatory statement is connected to a judicial proceeding; and (2) the

statement fairly and accurately reports the judicial proceeding." *See Wenz v. Becker*, 948 F. Supp. 319, 322 (S.D.N.Y. 1996).

In the instant matter, Plaintiff is unable to satisfy either requirement. First, the subject statements are not a 'report' on a judicial proceeding since it is focused exclusively on underlying events and are accurately described as 'commentary' on the jury's verdict. Second, the statements are not "fair and true" accounts because the content of said statements are not substantially accurate. Therefore, the fair and true reporting privilege does not apply.

### i. Plaintiff's Statements are Not a "Report" of an Official Proceeding

"Allegedly defamatory statements are protected by Section 74 only where the statements report on a judicial proceeding." *Wenz*, 948 F. Supp. at 323. The party asserting the privilege bears the burden of demonstrating that this requirement is met. *See Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 596 (2d Dep't 2009). "Doubt regarding whether the report is 'of' a proceeding is resolved against the privilege." *US Dominion, Inc. v. Fox News Network, LLC*, No. 21 Civ. 03- 257, 2021 WL 5984265, at *25 (Del. Super. Ct. Dec. 16, 2021) (applying New York law).

The standard to determine "whether a report qualifies for the fair and true reporting privilege is whether 'the ordinary viewer or reader' can 'determine from the publication itself that the publication is reporting on [a judicial] proceeding.'" *Carroll II*, 2023 WL 2669790, at *6 (S.D.N.Y. Mar. 28, 2023) (citing *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021)). "In other words, '[i]f the context in which the statement [is] made make[s] it impossible for the ordinary viewer [or reader] to determine whether [the publication] was reporting on a judicial proceeding, the absolute privilege does not apply.'" *Id.* As this Court noted previously:

> "'An overlap between the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on the proceeding . . . Thus, there must be some perceptible connection between the challenged report and

the[ ] proceeding . . . How 'direct' this connection must be has not been clearly defined . . . And, in light of the broad construction of § 74 . . . reports that bear a more attenuated relationship to a proceeding have been deemed sufficiently connected. [(citing cases)]'

'However, a report's mere mention of [a judicial] proceeding does not automatically extend the privilege to an entire publication; the privilege may apply to some portions of a report and not others . . . If context indicates that a challenged portion of a publication *focuses exclusively on underlying events*, rather than [a judicial] proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding. . . . Furthermore, [t]he privilege *does not extend to commentary on the proceeding* or to additional facts not established in the proceedings.'"

*Id.* (citing *Fine v. ESPN, Inc.*, 11 F.Supp. 3d, 209, 216-218 (N.D.N.Y. 2014) (emphasis added).

Here, the fair and true reporting privilege is not applicable because an "ordinary viewer" of the CNN interview would not have been able to determine that Plaintiff's statements were "reporting on [a judicial] proceeding" in light of the context in which they were made. *Kinsey*, 991 F.3d at 178. Far from merely "reporting on" the *Carroll II* trial in any objective sense, Plaintiff— a party to those proceedings—was providing commentary on the jury's findings based upon her purported personal knowledge of the underlying facts. As Plaintiff previously argued, in taking the contrary position in *Carroll II*, "there is particularly good reason to doubt that a statement qualifies as a 'report' on a judicial proceeding when the statement is made by a party to the case, rather than by a reporter," *Carroll II*, ECF 79 at 8, because, in such a scenario, "the odds are much greater—given their obvious interest—that they have . . . engaged in 'commentary on the proceeding,' *id.* (citing *Fine*, 11 F. Supp. 3d at 218), or have 'focused on underlying events," *Wexler v. Alegion (UK) Ltd.,* 374 F. Supp. 3d 302, 313 (S.D.N.Y. 2019). Both exceptions to the fair and true reporting privilege are applicable here.

13

*First*, it is readily apparent that Plaintiff's statements—responding "oh yes he did, oh yes he did" when asked about the jury's finding "that [Defendant] did not rape [her]"; and telling opposing counsel "he did it, and you know it"—are "focus[ed] exclusively on underlying events." *Fine*, 11 F.Supp. 3d at 218. These comments are directed towards the underlying conduct that is alleged to have occurred in Bergdorf Goodman dressing room in the mid-1990s, and, more specifically, whether Defendant "did" commit these acts.

As such, there is no material difference between these statements and the alleged defamatory statement that was the subject of *Carroll II*, wherein Defendant stated, in pertinent part, that Plaintiff had "completely made up a story that [he] met her at the doors of this crowded New York City [d]epartment [s]tore." *See Carroll II*, 2023 WL 2669790, at *17. In assessing whether Defendant's statement was covered by the fair and true reporting privilege, this Court determined that it was not because it was "'focus[ed] exclusively on underlying events' – namely, the substance of Ms. Carroll's rape accusation – 'rather than a[] [judicial] proceeding relating to those events.'" *Id.* (citing *Fine*, 11 F.Supp. 3d at 217; *Easton v. Pub. Citizens, Inc.*, No. 91-cv-1639 (JSM), 1991 WL 280688, at *7 (S.D.N.Y. Dec. 26, 1991), *aff'd sub nom.*, 969 F.2d 1043 (2d Cir. 1992); *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 363 (S.D.N.Y. 1986)). The same holds true for Plaintiff's statements here, as they go towards "the substance of Ms. Carroll's rape accusation" in an identical fashion. *Id.*

*Second*, Plaintiff's statements constitute commentary on the *Carroll II* proceedings by setting forth Plaintiff's evaluation of—and rejection of—the jury's verdict.

In *Karp v. Hill & Knowlton, Inc.*, after the Second Circuit issued a decision in a related fraud action, the defendant released a public statement claiming that "[t]he [Second Circuit's] ruling supports our claim[ ] that [the plaintiff] defrauded Buckingham[.]" 631 F. Supp. at 362. In

determining that this statement was not protected by the fair and true reporting privilege, the district court explained:

> "[The defendant's] one word assessment of the Second Circuit's opinion does not publish that opinion, or otherwise expose the public to the workings of the judicial system. Rather, it conclusionally evaluates the circuit court's opinion. The Civil Rights Law does not protect such bald-faced commentary about the judicial branch and the proceedings therein."

*Id.* at 363 (citing *Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York,* 475 N.Y.S.2d 383, 388–89 (1st Dep't 1984); *Branca v. Mayesh,* 476 N.Y.S.2d 187, 188–89 (2d Dep't 1984)).

Here, similarly, Plaintiff's statements "conclusionally evaluates" the jury's verdict in *Carroll II*. *Id.* By disputing the jury's finding that Defendant did not rape her—through her assertion that the underlying event in question did in fact occur—Plaintiff is providing "bald-faced commentary" as to the accuracy of the verdict in *Carroll II*. *Id.* Thus, Plaintiff's statements cannot be considered a "report" on *Carroll II* since they are accurately described as "commentary" on the case.

Based on the foregoing, Plaintiff's statements do not fall within the purview of Section 74 because they do not constitute a "report" on *Carroll II*.

### ii. Plaintiff's Statements are Not "Fair and True"

For a report to be "fair and true" within the meaning of Section 74, the substance of the publication must also be "substantially accurate." *McRedmond v. Sutton Place Rest. & Bar, Inc.*, 851 N.Y.S.2d 478, 480 (2008); *Geiger v. Town of Greece*, 311 F. App'x 413, 417 (2d Cir. 2009). "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005). A report, for purposes of Section 74, is not fair and true if it

"transform[s] allegations … into fact." *Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 178 (E.D.N.Y. 2006) (emphasis omitted).

"When a report of a pleading is the subject of a request for immunity under section 74, a comparison of the pleading and the subsequent report of that pleading is the starting point for the analysis." *Carroll II*, 2023 WL 2669790, at *19 (citing *Karp*, 631 F. Supp. at 363).

With respect to Plaintiff's statement recounting her interaction with defense counsel, Plaintiff fails to identify *any* official proceeding or pleading that she purports to have been reporting on. Instead, she merely claims, in conclusory fashion, that her statement was a "report of events that occurred in the courtroom and [Defendant] does not deny that her accounts is accurate." *See* ECF 175 at 22. Yet, Plaintiff fails to reckon with the fact that her statement refers to a casual interaction between herself and opposing counsel that occurred *after* the *Carroll II* verdict had been rendered and outside of any official proceeding. *See* ECF 171 at 26 (alleging that Plaintiff's statement referred to an interaction that took place "following the conclusion of the trial in *Carroll II*."). Plaintiff cannot credibly argue that pleasantries exchanged after the close of trial should be construed as part of the court's official proceedings merely because the interaction "occurred in the courtroom." *Id.; see Kinsey v. New York Times Co.*, 991 F.3d 171, 180 (2d Cir. 2021) ("The key question is whether the reader is able to determine that the report is *of a proceeding*.") (emphasis added). Therefore, this statement is clearly outside the purview of Section 74.

As for Plaintiff's other statement, "oh yes he did, oh yes he did," Plaintiff admits that this "comment concerned the jury verdict specifically." *See* ECF 175 at 20. Thus, the proper analysis involves a "comparison" of Plaintiff's statement and the contents of the jury verdict form. *Karp*, 631 F. Supp. at 363; *see also Carroll II*, 2023 WL 2669790, at *19 (performing "[a] comparison

16

of [Defendant's] comments about [Plaintiff] in his October 12 statement and his assertions in his answer *in Carroll*[.]").

The jury verdict form, states, in pertinent part, "Did [Plaintiff] prove, by a preponderance of the evidence, that . . . [Defendant] raped [Plaintiff]," to which the jury answered, "No." *Carroll II*, ECF 174 at 1. Meanwhile, the statement Plaintiff claims was a "report" on the jury verdict was the following interaction during the CNN interview:

> Reporter: What about when that first finding was found? This jury found that Trump did not rape you. What about that moment?
>
> Plaintiff: Robbie can explain the legal.
>
> Reporter: Sure. And I want you to, but I just wonder, E. Jean, what went through your head when you heard that?
>
> Plaintiff: Well, I just immediately say in my own head, ***oh, yes, he did—oh, yes, he did. So that's my response***.

*See* ECF 175 at 6 (emphasis added).

Plaintiff's statement is not a "substantially accurate" report of the jury verdict; to the contrary, Plaintiff expressly disavows the jury's finding that the rape did not occur and claims that it is incorrect. In doing so, Plaintiff "transform[s] *allegations* . . . into *fact." Pisani*, 440 F. Supp. 2d at 178. Thus, her statement undoubtedly has a "different effect on the mind" of CNN viewers than the "actual truth" of what the jury recorded in its verdict form. In other words, her statement "suggests more serious conduct than that actually suggested" in the verdict form. *Daniel Goldreyer, Ltd. V. Van de Wetering*, 217 A.D.2d 434, 436 (1st Dep't 1995).

Therefore, Plaintiff's statements do not qualify as a "fair and true" report of any of the proceedings held in *Carroll II*.

**B. Plaintiff's Publication of Her Post-Verdict Statements to Defense Counsel is Defamatory**

In her motion papers, Plaintiff argues that her second statement—recounting on CNN her post-verdict interaction with defense counsel when she told him "he did it, and you know it"—is not defamatory. But Plaintiff is mistaken; this statement, like the first, presents a cognizable claim for defamation.

Plaintiff chiefly argues that the "it" referred to in her statement was sexual abuse, not rape, and that her statement to Mr. Tacopina was "[o]n its face . . . a reaction to—and endorsement of—the jury verdict." But the context in which the statement was made indicates otherwise. Indeed, moments earlier in the same CNN interview, Plaintiff had just described how her initial reaction to the jury's verdict was not an endorsement but a *rejection* of the finding that Defendant had not raped her. She then goes on to describe her interaction with opposing counsel—which occurred "right after the verdict was announced"—and told him "he did it, and you know it." The substance of this statement can easily be interpreted to be conveying the same thought she had moments earlier: the jury was wrong to find that the rape had not occurred, and, in Plaintiff's estimation, Mr. Tacopina knew it. *See Davis*, 24 N.Y.3d at 268 ("[I]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action" that survives a motion to dismiss.") (collecting citations); *see also Guiffre*, 165 F.Supp.3d at 154 ("It is a reasonable reading that in 'referring to the statement that was made,' Defendant was implying the content of the previous day's press release . . . [w]hether another listener could interpret Defendant's self-described reference merely as a declination to comment does not defeat the fact that Plaintiff's alleged reading is plausible.").

As for Plaintiff's arguments concerning substantial truth, actual malice and the fair and true reporting privilege, those arguments fail for the same reasons described *supra*.

Therefore, the second portion of Defendant's counterclaim, pertaining to Plaintiff's statements regarding her interactions with defense counsel, put forth a cognizable claim for defamation.

## II. DEFENDANT'S COUNTERCLAIM IS PROCEDURALLY PROPER

"The timing as to when and how a party must file counterclaims is not specified in [Fed. R. Civ. P.] 15, or [Fed. R. Civ. P.] 13, which addresses counterclaims." *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441(WFK) (TAM), 2021 WL 5409605, at *4 (E.D.N.Y. Aug. 27, 2021), report and recommendation adopted, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021) (citing *Ramsay-Nobles v. Keyser*, No. 16-CV-5778 (CM), 2018 WL 6985228, at *3 (S.D.N.Y. Dec. 18, 2018)). As a result, the Federal Rules of Civil Procedure do "not provide clear guidance as to whether and/or when a Defendant can assert a new counterclaim or defense in an amended pleading as a matter of right, when the Defendant did not raise these claims in response to earlier pleadings." *Ramsay-Nobles*, 2018 WL 6985228, at *3.

Recently, in *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019), the Second Circuit clarified the proper method by which a Defendant should present new counterclaims. Specifically, the Second Circuit provided that a party is permitted to include a new counterclaim without leave of the court or otherwise consent of the opposing party when it is made within 14 days after service of an amended complaint. *Id*. at 101. Further, the Second Circuit made clear that a new counterclaim may be permitted at a later stage in the litigation as long as the counterclaim does not "exceed the scope of Plaintiff's new claims" and does not unduly prejudice a plaintiff. *Id*. at 100 (quoting 6 Wright & Miller, § 1488).

In filing his counterclaim, Defendant acted in accordance with the Second Circuit's guidance. The counterclaim arises from statements Plaintiff made in a televised interview on May

10, 2023. Plaintiff did not delay in bringing this counterclaim, and indeed it was timely filed within 14 days after Plaintiff filed her amended complaint. ECF 171.

Further, the counterclaim does not in any way exceed the scope of Plaintiff's original complaint. In her amended complaint, Plaintiff elected to include post-verdict statements made by Defendant as a way of amplifying her entitlement to damages. Specifically, in her Amended Complaint, Plaintiff states that his post-verdict comments were intended to "demean and mock [Plaintiff]". ECF 157, Ex. A, at ¶173. Plaintiff then goes on to restate the jury instructions provided in *Carroll II* with respect to punitive damages and alleged that Defendant's "defamatory statements post-verdict show the depth of his malice toward [Plaintiff]. *Id.* at ¶ 174. She then concludes that these statements merit a "very substantial punitive damages award in [Plaintiff's] favor" which would be designed to "punish [Defendant], to deter him from engaging in further defamation, and to deter others from doing the same." *Id.* Plaintiff's Amended Complaint thus seeks to modify her entitlement to damages by incorporating post-verdict statements of the opposing party. Defendant, in response, is seeking to do precisely the same thing, albeit in the form of a counterclaim since that is his only available form of relief at this stage in litigation. Thus, the scope of the changes are identical, and Defendant has not "exceeded" the scope of the amended complaint.

Moreover, at this juncture, the Defendant is not only permitted but *compelled* to raise his defamation claim because it qualifies as a compulsory counterclaims Rule 13(a) of the Federal Rules of Civil Procedure defines a compulsory counterclaim as a claim that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claims; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). In differentiating compulsory from permissive counterclaims, the Second Circuit looks to the "logical relationship" between the claim and counterclaim, analyzing whether essential facts

of various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit, and thus precise identity of issues and evidence between claim and counterclaim is not required. *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). Counterclaims based on state law are part of the same case or controversy when they share a "common nucleus of operative fact" with the plaintiff's claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, there can be no reasonable dispute that Defendant's counterclaim is compulsory, as it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir.2004) (quoting Fed. R. Civ. P. 13(a)). The counterclaim stems from the parties' competing accounts as to the nature and existence of the purported sexual assault at Bergdorf Goodman and goes to the heart of Plaintiff's original allegations. As Defendant's counterclaim is plainly compulsory, it would be waived if not raised in the instant action. This provides a "compelling" reason to permit its inclusion in the case at bar. *See Pfeffer v. Mark*, No. 98-CV-6771(ILG), 2000 WL 516891, at *2 (E.D.N.Y. Mar. 16, 2000) (explaining that because compulsory counterclaims "would not be assertable in a subsequent case were they omitted here . . . the argument for allowing amendment here is especially compelling" (internal quotation marks omitted)); Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1430 (3d ed. 2013) ("When the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases [at least in the federal courts] and the pleader will lose the opportunity to have the claim adjudicated."). Defendant would therefore be unduly prejudiced should this Court strike his counterclaim.

Further, Plaintiff's argument that Defendant's counterclaim should be dismissed because it would expand the scope of this litigation is wholly unavailing. Pending this Court's decision on the preclusive effect of the jury's verdict in *Carroll II*, discovery would likely be largely confined to the damages sustained by Defendant as a result of the defamatory statement. With trial scheduled for January 15, 2024, there appears to be ample time for the parties to engage in the necessary discovery practice without moving back the trial date. Therefore, Plaintiff will not be unduly prejudiced by the inclusion of Defendant's counterclaim.

## III.     None of Defendant's Affirmative Defenses Should be Stricken

Plaintiff's contention that five of the affirmative defenses set forth in Defendant's Amended Answer—the First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses—should be stricken is misplaced. These defenses remain valid and, therefore, must be preserved.

Pursuant to Federal Rule of Civil Procedure 12(f) "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike an affirmative defense are disfavored and are routinely denied unless there is no chance, on any set of facts or any interpretation of the law, that the defense is colorable. *See William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds sub nom, *Salcer v. Envicon Equities Corp.*, 478 U.S. 1015 (1986); *see also Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) ("Motions to strike under Rule 12(f) 'should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'") (quoting *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11-cv-6805 (DLC), 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013)).

"In order to prevail on a motion to strike [an affirmative defense], a plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *GEOMC Co., Ltd.*, 918 F.3d at 96. This standard is "demanding," *Tardif v. City of New York,* 302 F.R.D. 31, 32 (S.D.N.Y. 2014), and the Second Circuit has cautioned that "courts should not tamper with the pleadings unless there is a strong reason for so doing," *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citations omitted).

Here, Plaintiff argues, without elaboration, that "the Court should strike [Defendant's] First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses because the Court considered and rejected each of these defenses in denying [Defendant's] motion for summary judgment." *See* ECF 175 at 27-28. At the outset, since Plaintiff fails to address the third prong—prejudice—she has waived any argument in this regard.

Further, Plaintiff is mistaken that the Court's Order dated July 5, 2023 is sufficient grounds to strike Defendant's First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses. *See generally Carroll*, No. 20 Civ. 7311, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) (the "MSJ Order"). In the MSJ Order, the Court came short of finding that there was "*no* question of fact" and "*no* question of law" that "might allow the defense[s] to succeed." *GEOMC Co., Ltd.,* 918 F.3d at 96 (emphasis added); *see also Tardif v. City of New York*, 302 F.R.D. 31, 36 (S.D.N.Y. 2014) (denying motion to strike affirmative defense because "there are questions of fact and law that might allow the defense to succeed"); *Levine v. Merrill Lynch*, No. 09 CIV. 304 (PGG), 2009 WL 10691070, at *1, 4 (S.D.N.Y. Dec. 22, 2009) (holding that "Plaintiffs have failed to demonstrate that there is no question of fact or substantial question of law that might permit these

23

defenses to succeed" and noting, "Defendants are not, at this stage, required to prove their affirmative defenses"); *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, No. 96 CIV. 9469 (RWS), 1999 WL 191527, at *19 (S.D.N.Y. Apr. 7, 1999) ("Because DST's affirmative defenses may raise issues of fact and law, the motion to strike DST's affirmative defenses is denied"); *Cohen v. Stephen Wise Free Synagogue*, No. 95 CIV. 1659 (PKL), 1996 WL 159096, at *5 (S.D.N.Y. Apr. 4, 1996) ("[B]ecause it is far from certain that defendant's statute of limitations affirmative defense with respect to the § 8-502 claim is legally insufficient, plaintiff's motion to strike must be denied").

For instance, with respect to Defendant's Twelfth Affirmative Defense, this Court determined only that Defendant "failed to establish that there is not a genuine issue of material fact as to whether the prerequisites to a punitive damages award in this case have been satisfied." *Carroll*, 2023 WL 4393067 at *20. This Court did not find that there is "no question of fact" which could potentially lead to Defendant successfully raising this defense at trial. *GEOMC Co., Ltd.*, 918 F.3d at 96 (emphasis added). In addition, Plaintiff's Amended Complaint adds an entirely new theory of punitive damages, relating to statements Defendant made on May 10, 2023, which Defendant has not yet had an opportunity to challenge. Therefore, it would be inappropriate to strike Plaintiff's Twelfth Affirmative Defense at this time.

Likewise, with respect to Defendant's Fifth Affirmative Defense, the Court specifically declined to rule as to whether the June 24, 2019 statement ("I'll say it with great respect: Number one, she's not my type. Number two, it never happened."), could be considered as non-actionable opinion. *Carroll*, 2023 WL 4393067 at *17 n. 85 ("Neither party addresses specifically [Defendant's] June 24, 2019 statement . . . [a]s the parties have not adequately addressed this point,

the Court does not now decide it."). Thus, striking Defendant's Fifth Affirmative Defense would be similarly premature.

Moreover, with respect to Defendant's Fifteenth Affirmative Defense, the Court found only that Plaintiff had "sufficiently pleaded a claim of libel *per se.*" *Carroll*, 2023 WL 4393067 at *14, but did not go so far as to find that there is "no chance, on any set of facts or any interpretation of the law, that the defense is colorable." *Salcer*, 744 F.2d at 939. Thus, Defendant's Fifteenth Affirmative Defense must also survive.

As for Defendant's First and Third Affirmative Defenses—asserting the defense of presidential immunity—although this Court has held that the presidential immunity defense was waived when it was not raised in Defendant's initial Answer, *see generally Carroll*, 2023 WL 4393067, this defense has now been properly and timely raised since it was asserted in connection with Defendant's Amended Answer.

It is well settled that an amended complaint "supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977)); *see also Harris v. City of N.Y.,* 186 F.3d 243, 249 (2d Cir. 1999) (an "Amended Complaint is the legally effective pleading for Rule 12(b)(6) purposes") (citation omitted). Thus, "an answer to an amended complaint is not itself an amended pleading . . . [a] defendant filing such an answer is not amending his original answer, he is instead responding for the first time to new issues raised in the plaintiff's amended pleading." *Deutsch v. Health Ins. Plan of Greater New York*, 573 F. Supp. 1443, 1445 (S.D.N.Y. 1983); *see also McFadden v. Monroe Cty. Sheriff*, No. 00 Civ. 6034, 2002 WL 1348508, at *3 (W.D.N.Y. Apr. 16, 2002) (explaining that defendants' response to the amended complaint "was not an amended answer, but merely an answer" and so defendants were permitted to raise previously

unpled affirmative defense); *Rodriguez v City of New York*, 18 CIV. 4805 (NRB), 2021 WL 5360120, at *4 (S.D.N.Y. Nov. 16, 2021) ("Just as plaintiff asserted new allegations in his [amended complaint], defendants are also permitted to assert new defenses in response."). In other words, "[a]n amended complaint represents a plaintiff's second bite at the apple, and a defendant should be accorded the same privilege." *Deutsch,* 573 F. Supp. at 1445.

In this context, the only "defenses and objections that are irrevocably waived by answering an original complaint are those that 'involve the core issue of a party's willingness to submit a dispute to judicial resolution,' such as objections to 'lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service.' *Id.*" *Shields*, 25 F.3d at 1124; *see also Feldman v. Comp. Trading, LLC*, No. 19-CV-4452 (RPK) (RLM), 2021 WL 930222, at *2 (E.D.N.Y. Mar. 11, 2021) ("When an amended complaint has been filed, "the only defenses that are waived because they were not contained in an earlier answer are 'those that involve the core issue of a party's willingness to submit a dispute to judicial resolution, such as objections to lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service.'") (citing *Shields*, 25 F.3d at 1128); *see also* 5C Charles Alan Wright & Arthur A. Miller, Federal Practice & Procedure § 1392 (3d ed. 2020) (explaining that defenses set out in Rule 12(h)(2) are not waived merely because they were not raised in the first responsive pleading).

In the matter *sub judice*, this Court has already determined that presidential immunity is not a jurisdictional matter. *See Carroll*, 2023 WL 4393067 at *7 ("[T]he fact that presidential immunity is grounded in separation of powers principles does not convert it into a jurisdictional issue. Mr. Trump relies chiefly on two points in support of his argument to the contrary. Neither withstands analysis."); *id.* at *8 ("Mr. Trump's argument that absolute presidential immunity is jurisdictional runs afoul of many of the same principles on which the immunity is based."). While

Defendant does not concur with or adopt the Court's ruling,[2] the Court's determination has been clearly stated. Given the Court's holding that presidential immunity is not jurisdictional in nature, it follows that said immunity is not a "core issue of a party's willingness to submit a dispute to judicial resolution." *Shields*, 25 F.3d at 1124. Therefore, consistent with the Court's reasoning, Defendant's presidential immunity defense could not have been "irrevocably waived," *id.*, by any failure to raise it in his initial Answer, and Defendant's subsequent assertion of this defense in his Amended Answer effectively "revive[d]" it, *Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 112 (2d Cir. 1987).

Moreover, given the position she advanced in opposition to Defendant's motion for summary judgment, Plaintiff is judicially estopped from arguing that absolute presidential immunity is not a merits-based, non-jurisdictional defense. *See* ECF 125 at 1 ("[A]bsolute immunity [including for judges and prosecutors] has long been treated as non-jurisdictional in nature."); *id.* at 3 ("Since Nixon, moreover, courts and litigants have broadly evinced an understanding that absolute immunity is not jurisdictional in nature."); *id.* at 3 ("This logic is also reflected in district court decisions that have dismissed claims on the merits without first considering an absolute presidential immunity defense [which, if it were jurisdictional, would have to precede the merits]) (citing *Cohen v. United States*, No. 21 Civ. 10774, 2022 WL 16925984, at *10 n.6 (S.D.N.Y. Nov. 14, 2022) (Liman, J.); *id.* at 5 (Referring to "the traditional rule that absolute immunity is a non-jurisdictional affirmative defense that must be properly invoked by the President."); *see also Clark v. AII Acquisition, LLC*, 886 F.3d 261, 264 (2d Cir. 2018) ("[T]he equitable doctrine of judicial estoppel . . . 'prevents a party from asserting a factual position in one

---

[2] Defendant has appealed the Court's July 5, 2023 Order and reserves all rights and arguments on appeal.

legal proceeding that is contrary to a position that it successfully advanced in another proceeding.").

Based on the foregoing, Plaintiff's motion to strike Defendant's First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses must be denied in its entirety.

## **CONCLUSION**

For the reasons set forth herein, Defendant respectfully requests that Plaintiff's Motion to Dismiss and Motion to Strike be denied in its entirety.

Dated: New York, New York
       July 25, 2023

Respectfully submitted

Alina Habba, Esq.
Michael T. Madaio, Esq.
Habba Madaio & Associates LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
           -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
          mmadaio@habbalaw.com

*Attorneys for Defendant, Donald J. Trump*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

        *Plaintiff,*

    v.

DONALD J. TRUMP, in his personal capacity,

        *Defendant.*

No. 20 Civ. 7311 (LAK)

---

## PLAINTIFF E. JEAN CARROLL'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF HER MOTION TO DISMISS AND MOTION TO STRIKE

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.   TRUMP FAILS TO STATE A CLAIM FOR DEFAMATION ...................................... 1

       A.  "Oh, Yes, He Did—Oh, Yes, He Did" ........................................................ 1

       B.  "He Did It and You Know It" ........................................................................ 5

    II.  TRUMP'S LATE-STAGE COUNTERCLAIM IS PROCEDURALLY IMPROPER ...... 6

    III. THE COURT SHOULD STRIKE CERTAIN AFFIRMATIVE DEFENSES .................. 8

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Aronson v. Wiersma*,
   65 N.Y.2d 592 (1985) ........................................................................................ 5

*Biro v. Condé Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) ............................................................... 4

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) .............................................................................. 4

*Brimelow v. N.Y. Times, Co.*,
   No. 21-66, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ...................................... 4

*Carroll v. Trump*,
   No. 22 Civ. 10016, 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023) ..................... 6

*Carroll v. Trump*,
   No. 20 Civ. 7311, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) ................. 7, 9, 10

*Carroll v. Trump*,
   No. 22 Civ. 10016, WL 4612082 (S.D.N.Y. July 19, 2023) ............................. 2, 3

*Carroll v. Trump*,
   No. 20 Civ. 7311, 2023 WL 4744176 (S.D.N.Y. July 25, 2023) ......................... 2

*Chau v. Lewis*,
   935 F. Supp. 2d 644 (S.D.N.Y. 2013) ............................................................. 1, 2

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014) .............................................................................. 1

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
   551 F. Supp. 3d 320 (S.D.N.Y. 2021) ............................................................... 5

*Daleiden v. Planned Parenthood Fed'n of Am.*,
   No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) .................................... 5

*Davis v. Boeheim*,
   24 N.Y.3d 262 (2014) ..................................................................................... 6, 9

*Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*,
   No. 17 Civ. 124, 2020 WL 1031271 (S.D.N.Y. Mar. 2, 2020) ........................... 8

*Fine v. ESPN, Inc.*,
    11 F. Supp. 3d 209 (N.D.N.Y. 2014) ................................................................... 6

*Franklin v. Daily Holdings, Inc.*,
    135 A.D.3d 87 (1st Dep't 2015) ......................................................................... 2

*GEOMC Co. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019) ............................................................................. 6, 7

*Giuffre v. Maxwell*,
    165 F. Supp. 3d 147 (S.D.N.Y. 2016) ............................................................... 6

*Gonzalez v. Gray*,
    216 F.3d 1072 (2d Cir. 2000) ........................................................................... 5

*Karedes v. Ackerly Grp., Inc.*,
    423 F.3d 107 (2d Cir. 2005) ............................................................................. 3

*Karp v. Hill & Knowlton, Inc.*,
    631 F. Supp. 360 (S.D.N.Y. 1986) ................................................................... 4

*Kinsey v. N.Y. Times Co.*,
    991 F.3d 171 (2d Cir. 2021) ............................................................................. 4

*Pfeffer v. Mark*,
    No. 98 Civ. 6771, 2000 WL 516891 (E.D.N.Y. Mar. 16, 2000) ........................ 7

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................... 10

*Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*,
    No. 17 Civ. 8528, 2022 WL 836890 (S.D.N.Y. Mar. 21, 2022) ........................ 7

*Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*,
    No. 99 Civ. 4677, 2001 WL 1702151 (S.D.N.Y. Jan. 11, 2002) ........................ 7

**STATUTES**

N.Y. Civ. Rights Law § 74 ........................................................................................ 4

**RULES**

Federal Rule of Civil Procedure 13 ........................................................................... 7

Federal Rule of Civil Procedure 15 ........................................................................... 7

**OTHER AUTHORITIES**

Alan Feuer et al., *Trump Faces Major New Charges in Documents Case*, N.Y. Times
    (July 27, 2023) .................................................................................................. 8

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1430 (3d ed. 2013) ................................................. 7

## PRELIMINARY STATEMENT

Donald J. Trump continues to insist that a jury's finding that he forcibly shoved his fingers, but not his penis into E. Jean Carroll's vagina somehow exonerates him. But despite his strenuous efforts to distinguish between the crimes of which he's been accused, a jury determined that he committed sexually abusive conduct that formally qualifies as rape in many jurisdictions and that certainly constitutes rape within the colloquial sense of the term, as this Court has already recognized based on a careful study of the issue. Therefore, the allegedly defamatory statement by Carroll that is the sole focus of Trump's purported counterclaim is substantially true and cannot support liability as a matter of law.

For this and other reasons, Trump's defamation counterclaim—asserted almost four years into this action—should be dismissed. The affirmative defenses that Trump now asserts again after the Court rejected them should be stricken. And this case, properly narrowed, should proceed to trial.

## ARGUMENT

### I. TRUMP FAILS TO STATE A CLAIM FOR DEFAMATION

#### A. "Oh, Yes, He Did—Oh, Yes, He Did"

Trump has no credible answer to any of the three independent reasons for dismissal of his counterclaim.

***Substantial truth.*** Under New York precedent, the relevant question is whether it was substantially true to imply that Trump raped Carroll after the *Carroll II* jury found that Trump sexually abused her by forcibly penetrating her with his fingers. Truth in this context is not a "binary" question. *Chau v. Lewis*, 935 F. Supp. 2d 644, 662 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014). A court must instead consider the overall "gist" or "sting" of the alleged defamatory

statement, *id.*, asking if it would have a "different effect on the mind of [a listener] from that" of the actual truth, *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dep't 2015).

In his opposition brief, Trump ignores that controlling legal principle. ECF 181 ("Opp.") at 5–8. He doesn't grapple with *any* of the "substantial truth" precedents that provide the relevant framework. ECF 175 ("Mot.") at 10–12. He doesn't address the "sting" of the *Carroll II* verdict—that he was found liable for conduct that would amount to rape in many places outside of New York, *see Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 4612082, at *2 (S.D.N.Y. July 19, 2023), or that a criminal conviction for first-degree sexual abuse would require him to register as a sex offender for the rest of his life, *see* Mot. 12–14. And he studiously ignores Carroll's independent argument that collateral estoppel forecloses his counterclaim. Mot. 14–15.

Most remarkably, Trump fails even to acknowledge this Court's prior determination that Trump "'raped' [Carroll] in the sense of that term broader than the New York Penal Law definition." *Carroll*, 2023 WL 4612082, at *20. As the Court has explained, the jury's "finding that Ms. Carroll failed to prove that she was 'raped' within the meaning of the New York Penal Law does not mean that she failed to prove that Mr. Trump 'raped' her as many people commonly understand the word 'rape.' Indeed, as the evidence at trial … makes clear, the jury found that *Mr. Trump in fact did exactly that*." *Id.* at *2 (emphasis added); *accord id.* at *21 (referring to "jury's implicit finding that Mr. Trump digitally raped Ms. Carroll"); *Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 4744176, at *2 (S.D.N.Y. July 25, 2023) (noting the jury "implicitly determined that he had penetrated her vagina with his fingers, a form of 'rape' as that word often is used").

Against all this, Trump blithely asserts that his counterclaim raises a black-and-white question of whether he raped Carroll—which, he says, the jury "demonstrably" resolved in his favor. Opp. 5; *see id.* at 7 (declaring it "irrelevant" that rape has different meanings in different

jurisdictions because the jury here found "no 'rape'" under New York law). But as we have already explained, this position is defective twice over. First, Trump misstates the relevant legal standard—even advancing a "three-prong test" for substantial truth that is found nowhere in the case that he cites. *See Karedes v. Ackerly Grp., Inc.*, 423 F.3d 107, 113–14 (2d Cir. 2005) (setting forth three considerations for determining "whether a statement or publication is defamatory" before turning to the separate element of "falsity," which requires "substantial, not literal, accuracy"). Second, Trump "misinterprets the jury's verdict," for the reasons that this Court has already explained. *Carroll*, 2023 WL 4612082, at *3.[1] Accordingly, by virtue of the substantial truth doctrine, Trump fails to state a defamation claim upon which relief can be granted.

> **Actual malice.** Trump fares no better with respect to actual malice. He concedes that the standard is "demanding," Opp. 8, and takes no issue with the caselaw proscribing reliance on conclusory allegations or "actual-malice buzzwords," Mot. 15. But Trump nevertheless insists that he sufficiently pleads actual malice because he alleges that Carroll's "statements were clearly contrary to the jury verdict in *Carroll II*," and statements "made in direct contradiction to publicly available information are deemed to be made with actual malice." Opp. 9–10.

> Once again, Trump's position rests on a fundamental misunderstanding of the jury verdict. The jury *did* find that Trump raped Carroll within the commonly understood meaning of that word. *Carroll*, 2023 WL 4612082, at *2, *20–*21. And here, where Carroll explicitly referred legal questions about the meaning of the jury verdict to her attorney and made no effort whatsoever to mischaracterize the jury's finding on rape under the New York Penal Law, the verdict itself provides no basis to infer that her statement (in which she reflected on her contemporaneous,

---

[1] While Trump also argues that Carroll's statement is not protected as a matter of opinion because "prefatory phrases" like "I think" may still contain factual implications, Opp. 7 (citation omitted), Carroll does not even make that argument.

subjective reaction to that verdict from a non-legal perspective) was knowingly or recklessly false. *Brimelow v. N.Y. Times, Co.*, No. 21-66, 2021 WL 4901969, at *2–*3 (2d Cir. Oct. 21, 2021). Absent any allegations about Carroll's state of mind during the CNN interview, the conclusory sentence in Trump's pleading referring to actual malice is "simply not enough to nudge [his counterclaim] into discovery." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279–80 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

**Fair reporting privilege.** Trump's purported counterclaim is also independently foreclosed by the legal privilege set forth in Section 74 of the New York Civil Rights Law.

Here, Trump argues that Carroll's statement was not a "report" on a judicial proceeding because it either was "directed towards the underlying conduct that is alleged to have occurred in Bergdorf Goodman" or was "commentary on the *Carroll II* proceedings." Opp. 14. But the question is whether an "ordinary viewer" could determine that the statement was "reporting on [a judicial] proceeding." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 178–79 (2d Cir. 2021). In this regard, Trump ignores the context of the CNN interview—from its detailed discussion of the jury verdict and many other aspects of the trial to the trial-related chyrons that were plastered across the screen. That context would leave no doubt in a viewer's mind that the interview itself (and the surrounding discussion) was a report on the trial that had just ended the day before. Mot. 18.[2]

Trump also argues that Carroll's statement was not "fair and true" because it did not provide a "'substantially accurate' report of the jury verdict." Opp. 17. But the question posed to Carroll referred to the jury's "first finding … that Trump did not rape you," and Carroll's answer

---

[2] The "commentary" case on which Trump relies is easily distinguished. In *Karp v. Hill & Knowlton, Inc.*, the press release contained a "one word assessment of the Second Circuit's opinion" stating that "[t]he ruling support[ed]" a party's claim, when, in fact, it did not. 631 F. Supp. 360, 362–63 (S.D.N.Y. 1986). The court did not consider the statement a fair and true report because it did not "publish [the court's] opinion, or otherwise expose the public to the workings of the judicial system." *Id.* Here, by contrast, the CNN interview was an in-depth exploration of the trial, which reported the parties' respective positions and the various aspects of the jury verdict.

did not quibble in any way with what the reporter had just said or obscure the nature of the verdict itself. ECF 176-2. Moreover, the key question is whether Carroll's statement suggests "conduct more serious than the conduct alleged in the underlying court case[]." *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 331 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022). Coming just days after Carroll testified to rape on the witness stand and her attorney argued rape under New York law during summation, Carroll's statement was obviously "substantively equivalent" to her position in the case. *Gonzalez v. Gray*, 216 F.3d 1072, at *1 (2d Cir. 2000).

### B. "He Did It and You Know It"

Trump offers only a few arguments in support of his separate claim that Carroll defamed him by recounting on CNN her remark to Joe Tacopina that "he did it and you know it." ¶ 7.

On falsity, Trump argues that the "it" in Carroll's statement necessarily means rape as defined by the New York Penal Law, making it false for the same reasons as her statement "oh, yes, he did." Opp. 18. But a defamation claim cannot survive based on a "strained or artificial construction," *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985), and the facts alleged do not permit the interpretation that Trump posits: neither Carroll nor the CNN interviewer used the word "rape," and her comment to Tacopina came in response to his congratulations on the verdict in her favor (*i.e.*, the verdict finding Trump liable for sexual battery and defamation). *See* Mot. 21–22.

To be sure, Trump insists that a reasonable jury could infer rape because "moments earlier" Carroll had answered the interviewer's question about her reaction to the jury's rape verdict. Opp. 18. But those "moments" were actually multiple minutes, during which time the interview covered a host of other topics, including the implications of the jury's sexual abuse finding, an evidentiary issue that arose before trial, the witnesses and jurors, and the "perfect victim" narrative that was a defense theme. ECF 176-2. Even the cases that Trump cites extend only so far as a "reasonable

view of the stated facts"—and Trump's attempt to link the "it" to an entirely separate statement is not reasonable. *Davis v. Boeheim*, 24 N.Y.3d 262, 268 (2014); *Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 153–54 (S.D.N.Y. 2016) (where defendant stated, "I'm referring to the statement that was made," it was plausible that he was referring to prior day's statement, "particularly in the absence of any other 'statement that was made'"). Yet even if Trump's reading of "it" were plausible, his claim would still fail because Carroll's statement was substantially true. *See supra* at 1–3.

On actual malice, Trump simply reiterates his reliance on his single-sentence conclusory allegation, Opp. 18, which is insufficient for the reasons discussed above. *See supra* at 3–4.

On the fair reporting privilege, Trump argues that Carroll's "statement recounting her interaction with defense counsel" cannot be a report on an "official proceeding" because it occurred in a courtroom. Opp. 16. But a "report" for these purposes may take many forms and encompass "[s]tatements or allegations that go beyond matters in a proceeding." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 217 (N.D.N.Y. 2014). The relevant question is whether the "content or context" confirm that a statement is "sufficiently connected" to a legal proceeding and is not merely an independent attack focused "exclusively on underlying events." *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2669790, at *6 (S.D.N.Y. Mar. 28, 2023). Given that Carroll's comment to Tacopina was made in the courtroom and concerned the jury verdict issued moments earlier, and that Carroll later recounted it in an interview reporting on the trial that had just ended, her statement is a "report" as that term is used in the applicable caselaw. *See* Mot. 17–18.

## II.    TRUMP'S LATE-STAGE COUNTERCLAIM IS PROCEDURALLY IMPROPER

Trump's counterclaim should also be dismissed because it comes nearly four years into the case and plainly exceeds the scope of Carroll's amended complaint. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99–100 (2d Cir. 2019). Trump doesn't dispute that *GEOMC Co.* sets the relevant standard, Opp. 19, but commits multiple errors in arguing that he satisfies it.

Trump first argues that "the counterclaim does not in any way exceed the scope of Plaintiff's *original* complaint." Opp. 20 (emphasis added). But the relevant question is whether Trump's counterclaim raises issues "beyond the scope of the new claims" in Carroll's *amended* complaint, not her original complaint. *GEOMC Co.*, 918 F.3d at 100. As this Court has recognized, there are no new claims, *Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 4393067, at *2 n.6 (S.D.N.Y. July 5, 2023), so Trump's counterclaim can be dismissed on this basis alone.

Next, Trump argues that he should be allowed to bring his counterclaim because it is compulsory under Rule 13(a). Opp. 20–21. That, too, ignores *GEOMC Co.*, since the Second Circuit was clear that there was "no need to consider Rule 13's distinction between compulsory and permissive counterclaims." 918 F.3d at 99 n.11; *see also Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17 Civ. 8528, 2022 WL 836890, at *8–*9 & n.3 (S.D.N.Y. Mar. 21, 2022) (dismissing counterclaims based on *GEOMC Co.* that would otherwise qualify as compulsory). In reviewing a new counterclaim asserted in response to an amended complaint, a court may use Rule 15 standards to dismiss it. *See GEOMC Co.*, 918 F.3d at 101. In such circumstances, a defendant has no absolute right to assert a counterclaim even if it would have been considered compulsory under Rule 13 had it existed at the time of original pleading. *Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, No. 99 Civ. 4677, 2001 WL 1702151, at *5 (S.D.N.Y. Jan. 11, 2002).[3]

Trump further argues that no prejudice would come from allowing his late-stage counterclaim because "there appears to be ample time for the parties to engage in the necessary discovery practice without moving back the trial date." Opp. 22. Trump grossly understates the

---

[3] The authorities in Trump's opposition concern entirely distinct procedural postures. Opp. 21. In *Pfeffer v. Mark*, the defendants had asserted a compulsory counterclaim in their original answer, and the court considered whether to grant leave to replead when dismissing that counterclaim for failure to state a claim. No. 98 Civ. 6771, 2000 WL 516891, at *2 (E.D.N.Y. Mar. 16, 2000). The cited portion of Wright & Miller simply explains Rule 13(f), through which a party may seek leave "to amend the pleadings and assert a counterclaim that was omitted 'through oversight, inadvertence, or excusable neglect or if justice so requires.'" Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1430 (3d ed. 2013).

discovery that his counterclaim would require and ignores the additional motion practice and trial preparation that would inevitably ensue. Mot. 24–25. Moreover, Trump does not address the reasons why Carroll is justifiably concerned about delay. Mot. 25–27. The last promise Trump made to comply with a trial date ("I give you my word. … If you say April, I'm trying it in April. I'm not running from this obligation.") was followed by three separate adjournment requests. Conf. Tr. at 13, *Carroll v. Trump*, No. 22 Civ. 10016 (S.D.N.Y. Feb. 7, 2023); *Carroll II*, ECF 61, 106, 108. Delay is no doubt Trump's goal, as evidenced by the most recent motion to stay he filed just days ago. ECF 185. Especially with his legal problems mounting,[4] Trump should not be allowed to maintain a counterclaim that he will inevitably use to cause further delay here.

## III.     THE COURT SHOULD STRIKE CERTAIN AFFIRMATIVE DEFENSES

While Trump relies on general caselaw that disfavors striking affirmative defenses, Opp. 22–24, he ignores the special considerations that apply in a case like this one, where a defendant presses an affirmative defense that has already been rejected. In such circumstances, the law-of-the-case doctrine means that "[t]here is no need to litigate the same issue again," and the defense may be stricken. *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, No. 17 Civ. 124, 2020 WL 1031271, at *2 (S.D.N.Y. Mar. 2, 2020); *see* Mot. 27 (collecting cases).[5]

With respect to his defense of **nonactionable opinion** (Fifth Affirmative Defense), Trump concedes that his June 21 and 22 statements were not statements of opinion, but suggests that his June 24 statement—in which he claimed that the sexual assault "never happened"—might be. Opp. 24. The Court didn't address this issue on summary judgment because Trump never raised

---

[4] *E.g.*, Alan Feuer et al., *Trump Faces Major New Charges in Documents Case*, N.Y. Times (July 27, 2023), https://www.nytimes.com/2023/07/27/us/politics/trump-documents-carlos-de-oliveira-charged.html.

[5] Carroll's motion inadvertently listed Trump's Third Affirmative Defense. Mot. 27–28. That was an error, and we apologize for any confusion. Because that defense was not resolved by the Court's recent summary judgment decision, Carroll does not seek to strike it on law-of-the-case grounds.

it, and Trump does not now explain how a statement denying that a sexual assault "happened" does anything but "convey[] facts about" Carroll and the underlying events. *Davis*, 24 N.Y.3d at 270 (citation omitted). Given that a jury has determined *as a factual matter* that Trump sexually assaulted Carroll, it strains credulity for him to suggest that he intends to raise opinion as a defense. *See also* Opp. 6–7 (arguing that whether he raped Carroll is *not* a question of opinion).

With respect to **punitive damages** (Twelfth Affirmative Defense), Trump insists that "this Court determined only that Defendant 'failed to establish that there is not a genuine issue of material fact as to whether the prerequisites to a punitive damages award in this case have been satisfied.'" Opp. 24 (quoting *Carroll*, 2023 WL 4393067, at *20). But that's exactly the point. As written, Trump's affirmative defense is that Carroll is "not entitled to punitive damages as a matter of law," ECF 171 at 22 ¶ 12—meaning the jury is precluded from awarding punitive damages at trial. Trump can advance whatever *factual* positions he wants, but the Court's summary judgment decision certainly allows the jury to decide the question of punitive damages.

With respect to **defamation *per se*** (Fifteenth Affirmative Defense), Trump admits that the Court held that Carroll "had 'sufficiently pleaded a claim of libel *per se*.'" Opp. 25 (quoting *Carroll*, 2023 WL 4393067, at *14). But a pleading failure is exactly the argument in his defense. *See* ECF 171 at 22 ¶ 15 ("Plaintiff has not sufficiently pled defamation or defamation *per se*.").

Finally, with respect to the affirmative defense of **absolute presidential immunity** (First Affirmative Defense), Trump argues that despite his waiver of immunity, *see Carroll*, 2023 WL 4393067, at *5, "the defense has now been properly and timely raised since it was asserted in connection with Defendant's Amended Answer," Opp. 25. The law is clear, however, that defenses that "involve the core issue of a party's willingness to submit a dispute to judicial resolution, such as objections to lack of personal jurisdiction, improper venue, insufficiency of process and

9

insufficiency of service," are "irrevocably waived" if not raised in the initial answer and cannot be revived in an answer to an amended pleading. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (cleaned up). Absolute presidential immunity is one such defense since the "fundamental purpose of presidential immunity is to avoid diversion of the president's energies and distracting a President from his or her public duties by subjecting the president to concern with private lawsuits." *Carroll*, 2023 WL 4393067, at *11 (cleaned up). In developing the doctrine, the Supreme Court left a president with the "ability to choose whether or not to defend himself or herself in a civil lawsuit in federal court," *id.* at *8, and Trump chose to defend himself here. *E.g.*, *Carroll v. Trump*, No. 160694/2019 (N.Y. Sup. Ct.), NYSCEF No. 103 at 3 (letter from Trump's attorney: "Plaintiff is free to pursue this action when the President is no longer in office."). This record establishes what the Second Circuit has called the "core issue," or Trump's "willingness to submit a dispute to judicial resolution." *Shields*, 25 F.3d at 1128.[6] By failing to assert absolute immunity when he was required to do so—and for multiple years thereafter—Trump waived his absolute presidential immunity defense. *See Carroll*, 2023 WL 4393067, at *5, *11.

## CONCLUSION

For the reasons above and in Carroll's opening brief, the Court should grant Carroll's motion to dismiss the counterclaim on substantive and procedural grounds, and should grant Carroll's motion to strike.

---

[6] While Trump argues that presidential immunity is *not* an issue of subject matter of jurisdiction, Opp. 26, that in no way helps him here. Since an objection to subject matter jurisdiction can never be waived, the "irrevocably waived" defenses discussed in *Shields* necessarily have to be defenses of a different kind. 25 F.3d at 1128.

Dated: New York, New York
August 1, 2023

Respectfully submitted,

_____

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*