**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, | Case No.: 1:24-cv-21050-CMA |
| Plaintiff, | |
| v. | ORAL ARGUMENT REQUESTED |
| AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC NEWS, INC., a Delaware corporation, and GEORGE STEPHANOPOULOS, an individual, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff President Donald J. Trump ("Plaintiff"), by and through his counsel and pursuant to Rule 12 of the Federal Rules of Civil Procedure, hereby files this Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Incorporated Memorandum of Law [D.E. 24], and in support thereof, states as follows:

## I.   INTRODUCTION

Plaintiff's Complaint is based upon Defendants' transmission and publication of knowingly and intentionally false and defamatory statements specifically about the express findings made by a jury in a *civil* trial[1] on E. Jean Carroll's ("Carroll") sexual battery claim against Plaintiff under New York's newly-enacted Adult Survivors Act law.  As is explained in further detail in the Complaint, this case stems from George Stephanopoulos' ("Stephanopoulos")

---

[1] As is alleged in the Complaint, there were two cases pending in the United States District Court for the Southern District of New York: *Carroll v. Trump*, Case No. 1:20-cv-17311-LAK ("*Carroll I*") and *Carroll v. Trump, et. al.*, Case No. 1:22-cv-10016-LAK ("*Carroll II*").

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

interview of United States Representative Nancy Mace ("Mace") on his weekly television show "This Week With George Stephanopoulos" on ABC on March 10, 2024 (the "Segment"). Despite Defendants' attempt to cast the allegations in the Complaint in a light that fits their theories of defense, this case *is not* about the difference between rape and sexual battery nor is it about Defendants' attempts to minimize the significant distinctions that exist between these terms. The claims, rather, relate to Defendants' unmistakably untruthful, knowingly false, and defamatory statements as to what the jury in the *Carroll II* case actually determined.

As Defendants readily admit in their Motion, and as is alleged in the Complaint to have been known by Stephanopoulos at the time that he made the defamatory statements, Plaintiff has never been found liable by a jury for raping Carroll, as that term is defined under New York's Penal Code. Despite plainly possessing such knowledge, Stephanopoulos intentionally and maliciously repeatedly stated more than ten times during the Segment that Plaintiff had been found *liable* or *guilty* by *multiple juries* for the *rape* of Carroll, when in fact, the jury specifically held that Carroll *did not* prove by a preponderance of the evidence that Plaintiff raped Carroll. Stephanopoulos' statements in this regard were false and defamatory.

As a result, Plaintiff filed the instant action against Defendants wherein it brought the following claims:

| | |
|---|---|
| Count I | Defamation *Per Se* |
| Count II | Defamation *Per Quod* |

*See* D.E. 1, ¶¶ 77-97. In response, Defendants have filed a Motion to Dismiss [D.E. 24] (the "Motion") wherein they seek to inject extraneous issues concerning Carroll's and Plaintiff's

defamation claims against each other in order to deflect from the true issues in this case.[2] In doing so, Defendants raise three legal theories as to why they believe their Motion should be granted: (i) the doctrine of collateral estoppel bars Plaintiff's claims, (ii) the substantial truth doctrine bars Plaintiff's claims, and (iii) the fair report privilege requires dismissal of Plaintiff's claims. For the reasons set forth below, none of Defendants' theories are well taken and the Motion should be denied in its entirety.

*First*, Defendants' collateral estoppel defense, which is procedurally improper to begin with, does not bar Plaintiff's claims because the facts and issues in this case are materially different from those in *Carroll I*, and the purported identical issue Defendants claim to have been previously decided was not necessarily decided and is not decisive of this action.  Namely, in *Carroll I*, Plaintiff alleged that Carroll defamed him when she publicly stated that Plaintiff raped her. *See* D.E. 25, pp. 33-35. Here, on the other hand, Plaintiff is alleging that Defendants, with full knowledge of the actual jury verdict in *Carroll II*, falsely and maliciously misrepresented the jury's verdict during the Segment. Although the Judge in *Carroll I* may not have agreed that Carroll's statements alleging that she believed that she was raped amounted to defamation, Defendants' knowingly and intentionally made false statements that Plaintiff had been found *liable* or *guilty* by *multiple juries* for the *rape* of Carroll, which plainly constitute defamation.  Clearly, these are not the same issues, nor has the court previously decided whether Defendants' statements are defamatory.  Rather, the Judge's comments about the jury's rape claim verdict are nothing but dicta that have no collateral estoppel effect.

---

[2] Notably, Plaintiff's Complaint does not even mention Plaintiff's defamation claims and only makes a passing reference to Carroll's defamation claims for the simple reason that those claims have no relation to Plaintiff's defamation claims here.

***Second***, the fact that the jury found Plaintiff liable for sexual abuse in *Carroll II* does not make Stephanopoulos' statements that the jury found Plaintiff liable for rape substantially true. This is especially true in light of the fact that the jury was specifically asked to find Plaintiff liable for rape, but expressly rejected such a claim.

***Third***, Defendants also cannot be permitted to obtain immunity from this lawsuit by professing editorial freedom. By handpicking the most salacious of allegations and omitting *Carroll II*'s factual (and eventual) outcome, Defendants did not present a fair report, but rather a sensationalized fiction. The fair report privilege serves to protect honest reporting, not to shield malicious and misleading narratives as Defendants have reported. Defendants' skewed and misleading narrative is not entitled to the safeguards of the fair report privilege.

Accordingly, as stated in further detail herein, Defendants' Motion [D.E. 24] should be denied.

## II.   <u>MEMORANDUM OF LAW</u>

### A.   Legal Standard

When a complaint is challenged under Fed. R. Civ. P. 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1066 (11th Cir. 2007). "Accordingly, a well pleaded complaint will survive a motion to dismiss even if appears that recovery is remote and unlikely." *Deuel v. Santander Consumer USA, Inc.,* 700 F. Supp. 2d 1306, 1309 (S.D. Fla. 2010) (internal quotations omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). Indeed, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Cole-Parmer Instrument Co. v. Prof'l Labs., Inc.,* 568 F. Supp. 3d 1307, 1313 (S.D. Fla. 2021) (internal quotations and citation omitted).

Additionally, when considering a motion to dismiss, the court's review is "limited to the four corners of the complaint." *Dershowitz v. Cable News Network, Inc.,* 541 F. Supp. 3d 1354, 1360-61 (S.D. Fla. 2021) (citing *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009). Generally, only items that are incorporated by reference in the complaint are properly considered at the motion to dismiss stage. *Id.* at 1362 (citing *Lozman v. City of Riviera Beach,* 713 F.3d 1066, 1075 n. 9 (11th Cir. 2013)). The Eleventh Circuit has made clear that "consideration of material falling outside the pleading converts a motion to dismiss into one for summary judgment." *Id.*

**B.    The Court Should Not Consider Extraneous and Irrelevant Documents Attached to Defendant's Motion.**

As an initial matter, Defendants improperly attach extraneous and irrelevant documents to their Motion, which is not proper on a motion to dismiss. *See* D.E. 25. Only two of the documents Defendants attach to their Motion are referenced in Plaintiff's Complaint – the jury verdict in the *Carroll II* case [D.E. 25, Exhibit 1] and the video[3] of the March 10, 2024 interview of Representative Nancy Mace [D.E. 25, Exhibit 3] – which the Court may properly consider.

The other documents, namely, Plaintiff's defamation counterclaim against Carroll [D.E. 25, Exhibit 2], a July 19, 2023 Washington Post article [D.E. 25, Exhibit 3],[4] and the briefs filed

---

[3] Notably, Plaintiff attached the full transcript of the interview to his Complaint in the Notice of Filing Exhibit A to Complaint [D.E. 3] and, as such, the video copy Defendants attach to their Motion is merely duplicative.

[4] Defendants' reliance upon Exhibit 3 is particularly egregious given that it is a news article setting forth a reporter's interpretation of a ruling made in the *Carroll I* case. Exhibit 3 is an entirely extraneous piece of information that ought not be considered on a motion to dismiss and is also inadmissible hearsay. *See Baker v. Joseph*, 938 F.Supp.2d 1265, 1268 (S.D. Fla. 2013) ("But the newspaper article from which Plaintiffs cite is inadmissible hearsay evidence. *See* Fed.R.Evid. 801–2").

by the parties in the *Carroll I* and *Carroll II* cases [D.E. 25, Exhibits 5 and 6], are not referenced in the Complaint, and the Court should decline to consider these extraneous documents.[5] *See Dershowitz,* 541 F. Supp. 3d at 1362. Although Plaintiff is addressing these extraneous documents in the instant Memorandum, Plaintiff is not waiving its argument that such documents should not be considered by the Court. Given the abundance of references in Defendants' Motion to these extraneous documents, Plaintiff is left with no alternative but to address the arguments raised by Defendants given their reliance on these extraneous documents. In essence, Plaintiff cannot allow the proverbial bell that has been improperly rung by Defendants to go unaddressed.

**C.    Plaintiff's Claims Are Not Barred By The Doctrine of Collateral Estoppel.**

Defendants spend over thirteen pages of the Motion arguing that the affirmative defense of collateral estoppel bars Plaintiff's claims. Defendants' argument substantively and procedurally misses the mark. Specifically, neither the courts in the *Carroll* cases nor any other court has determined that the statements made by Stephanopoulos and broadcasted by the Defendants are not defamatory.

*1.    Collateral Estoppel is An Affirmative Defense and is Generally Not Appropriate for a Motion to Dismiss.*

---

[5] To the extent the Court is inclined to consider these documents and convert Defendants' Motion to a motion for summary judgment, Plaintiff respectfully requests that he be afforded the requisite time to properly supplement the record. *See Michel v. NY Post Holdings, Inc.,* 816 F.3d 686, 702 (11th Cir. 2016) ("The clear rule in this Circuit is that consideration of material falling outside the pleadings converts a motion to dismiss into one for summary judgment.  And in doing so, the judge must give notice to the parties and allow them 10 days in which to supplement the record").

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Under New York law,[6] collateral estoppel is not appropriately considered on a motion to dismiss *unless* the complaint demonstrates, *on its face*, the elements of issue preclusion. *See Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 299 (E.D.N.Y. 2013) (denying motion to dismiss on collateral estoppel grounds where it was not apparent from face of complaint that plaintiffs were estopped from bringing their claim).[7] "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). Indeed, if the motion to dismiss requires the court to consider matters outside the four corners of the complaint, then an affirmative defense does not appear on the face of the complaint.

"The following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *LeChase Constr. Servs., LLC v. Escobar Constr., Inc.*, 2019 WL 2743637, at *6 & n.4 (N.D.N.Y. July 1, 2019) (citing cases); *see also Semente v. Empire Healthchoice Assurance, Inc.*, 147 F. Supp. 3d 117, 120 (E.D.N.Y. 2015) (providing that the "four

---

[6] *See Szabo v. Cascone*, 799 Fed. Appx. 77, 79 (2d Cir. 2020) ("A federal court must apply the collateral estoppel rules of the state that rendered the prior judgment, here New York") (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

[7] Florida law is in accord. *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1339 (S.D. Fla. 2014).

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

corners" requirement "has been interpreted broadly" to include the four exceptions outlined above).

"To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *McKeefry v. Town of Bedford*, 2019 WL 6498312, at *3 (S.D.N.Y. Dec. 2, 2019) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)). Documents that are "integral" to a complaint such that they can be considered on a motion to dismiss despite not being incorporated by reference are those "where the complaint relies heavily upon [their] terms and effect." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough." *Id.* Rather, in determining whether a document is integral to a complaint, a court will consider whether the contents of the document "appear to have been necessary to the 'short and plain statement of the claim showing that [a plaintiff is] entitled to relief.'" *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "[A] necessary prerequisite" to a finding that materials are integral to a complaint "is that the 'plaintiff[ ] rel[y] on the terms and effect of [the] document in drafting the complaint ...; mere notice or possession is not enough.'" *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). And "[w]hen a court takes judicial notice of a document on a motion to dismiss, it should generally do so only 'to determine what statements the documents contain not for the truth of the matters asserted.'" *McKeefry v. Town of Bedford*, 2019 WL 6498312, at *3 (S.D.N.Y. Dec. 2, 2019) (quoting *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011)).

In the present case, Plaintiff's Complaint does not serve as a basis to apply collateral estoppel. Even if the Court were to accept Defendants' invitation to take judicial notice of certain court records in the *Carroll I* and *Carroll II* cases, those records negate Defendants' collateral estoppel defense.

         2.      *Plaintiff's Defamation Claims Against Defendants Are Not Barred by the Doctrine of Collateral Estoppel.*

Under New York law, "collateral estoppel bars relitigation of an issue when (1) the *identical* issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC,* 988 F.3d 634, 641 (2d Cir. 2021) (citation omitted) (emphasis added). "The burden of showing that the issues . . . were necessarily decided . . . rests with the party seeking . . . issue preclusion." *State Street Global Advisors Trust Co. v. Visbal,* 677 F. Supp. 3d 209, 242 (S.D.N.Y. 2023). "[B]ecause 'the consequences of a determination that a party is collaterally estopped from litigating a particular issue are great, strict requirements for application of the doctrine must be satisfied.'" *Emergency Physician Serv's of New York v. UnitedHealth Group, Inc.,* 2023 WL 2772285, *9 (S.D. Fla. Apr. 4, 2023) (citation omitted). Defendants have failed to carry their burden.

*First*, the issues are not identical. "For an identity of issues to exist, the issues presented must involve substantially identical legal theories and causes of action, and have no significant factual differences." *Downtown Acupuncture PC v. State Wide Ins. Co.,* 50 Misc. 3d 461, 466 (N.Y. Civil Court 2015); *see also Utica Mut. Ins. Co. v. Am. Re-Ins. Co.,* 193 N.Y.S. 3d 594, 596 (N.Y. Sup. Ct. 2023) (stating that "collateral estoppel will not apply to cases where the prior determination was based on different facts"). Indeed, "res judicata requires a party to bring in one litigation all its claims arising from a particular transaction." *Pentagen Technologies International,*

*Ltd. v. CACI International, Inc.*, 1996 WL 435157, at *7 (S.D.N.Y. Aug. 2, 1996) (quoting *Brown v. Felsen*, 442 U.S. 127, 132 (1979)). The determination of this element, standing alone, serves as sufficient basis to reject Defendants' contention that Plaintiff's claims are barred. As noted above, the crux of Plaintiff's claims here is that Defendants falsely and defamatorily represented the determination made by the jury in *Carroll II*. Given that it is inherently impossible for Plaintiff to have brought any claims against the Defendants in this action through his counterclaim in *Carroll I* (given that the Segment had not yet aired), New York law provides that collateral estoppel cannot apply.

In raising their argument, Defendants appear to gloss over the express allegations in the Complaint and instead seek to broadly aggregate Plaintiff's counterclaim against Carroll with his claims in this action against Defendants, who were not parties in either of the *Carroll* actions. A plain reading of the Complaint demonstrates that the facts and issues in this case are remarkably different from those in the *Carroll* cases. Here, Plaintiff's defamation claims are based entirely on Stephanopoulos' false and defamatory statements during the Segment that Plaintiff had been found liable by multiple juries for the ***rape*** of Carroll, when, in fact, the jury specifically found that Carroll ***did not*** prove by a preponderance of the evidence that Plaintiff ***raped*** Carroll. *See* Complaint, ¶ 28. In *Carroll I,* on the other hand, Plaintiff's defamation claim is based on statements made by Carroll during a completely different interview by a completely different news network following the jury's verdict in which she expressed her belief that she was raped. *See* Motion [D.E. 24], p. 12. Further, Stephanopoulos' statements (which are the subject of this action) center around what the *jury found,* while the defamation claim in *Carroll I* related to Carroll's statement about what *she believed*. This distinction is crucial to the Court's analysis and demonstrates that the

issues in this case are markedly different from those in the *Carroll* cases and, therefore, collateral estoppel does not apply.

*Second*, as part of Defendants' strained attempt to create an identity of issues to support their collateral estoppel defense, Defendants rely heavily upon the Court's comments in *dicta* in the *Carroll* cases. *See, e.g.*, Motion [D.E. 24], pp. 4-5 (Defendants rely on the court's comment in *Carroll II* that Plaintiff "raped" Carroll "in the sense of that term broader than the New York Penal Law definition" in its Memorandum Opinion Denying Defendants' Rule 59 Motion (*Carroll v. Trump*, 683 F. Supp. 3d 302 (S.D.N.Y. 2023)); Motion [D.E. 24], p. 6 (Defendants rely on the court's comment in *Carroll I* that Plaintiff "in fact did 'rape' [] Carroll as that term commonly is understood" in its Memorandum Opinion Granting Plaintiff's Motion to Dismiss Defendant's Counterclaim and Certain Purported Affirmative Defenses (*Carroll v. Trump*, 685 F. Supp. 3d 267 (S.D.N.Y. 2023)); Motion [D.E. 24], p. 7 (Defendants rely on the court's comment in *Carroll I* that "the fact that Mr. Trump sexually abused – indeed, raped – Ms. Carroll has been conclusively established" in its Memorandum Opinion Granding Plaintiff's Motion in Limine precluding Plaintiff from introducing evidence or arguing that the sexual assault did not occur (*Carroll v. Trump,* 2024 WL 97359, *6 (S.D.N.Y. Jan. 9, 2024)). These passing comments by the court were not necessary to resolve any of the issues at hand. The *dicta* in Judge Kaplan's ruling does not (and, notably, does not expressly seek to) supplant the jury's express findings that Plaintiff was not found liable for rape (a point made clear by Judge Kaplan's same ruling), which findings remain intact, yet were falsely reported by Defendants.

Under New York law, "[d]icta is 'not subject to the preclusive effect of . . . collateral estoppel[.]'" *Triaxx Prime CDO 2006-1 Ltd. v. U.S. Bank N.A.,* 2024 WL 1381354, *11 (S.D.N.Y. Mar. 31, 2024). Moreover, the issue raised by Plaintiff's Complaint, *i.e.*, whether Defendants'

statements that a jury found Plaintiff liable for rape, **was not** decided by the prior action. "[A]n issue is 'necessary or essential' to a prior judgment '***only*** when the final outcome hinges on it.'" *State Street Global Advisors Trust Co.,* 677 F. Supp. 3d at 242 (emphasis added).  Further, "[a]n issue is 'decisive in the present action' if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint.'" *Triaxx Prime CDO 2006-1 Ltd.,* 2024 WL 1381354 at *9. Ultimately, any "reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue." *State Street Global Advisors Trust Co.,* 677 F. Supp. 3d at 244 (quoting *Legnani v. Alitalia Linee Aeree Italiane,* 400 F. 3d 139, 142 n. 2 (2d Cir. 2005)).

Defendants erroneously argue that the court in *Carroll I* "necessarily decided that [Plaintiff] cannot state a claim for defamation by alleging the jury did not find him liable for rape – because (the court previously found that] it is substantially true that he raped Ms. Carroll" when it dismissed Plaintiff's defamation counterclaim. *See* D.E. 24, p. 12. But in dismissing Plaintiff's counterclaim in *Carroll I*, the Court found that the jury's answer to the rape question was "*unnecessary or immaterial*" to its decision on Plaintiff's counterclaim. In fact, the *Carroll I* court stated that "the verdict form could have omitted the rape question entirely, and the judgment in *Carroll II* would have been unaffected." *Carroll v. Trump*, 685 F. Supp. 3d 267, 276 (S.D.N.Y. 2023), *aff'd in part*, 88 F.4th 418 (2d Cir. 2023) (emphasis added).

Instead, the *Carroll I* court found that the jury's finding on the sexual abuse question was conclusive with respect to Plaintiff's counterclaim – namely, that Carroll's statements were substantially true. *Id.* (stating that the jury's finding on the sexual abuse question is conclusive with respect to Plaintiff's counterclaim – that it is the "truth [that is] relevant here"). In *Carroll I*, though, Plaintiff's defamation claim is based on statements made by Carroll about what *she*

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

*believed had occurred* and her belief that she was raped. *See* Motion [D.E. 24], p. 12. To the contrary, Stephanopoulos' statements (which are the subject of this action) center around the *jury's findings* in *Carroll II*, a distinction that is crucial to the Court's analysis. Here, Defendants' statements that a jury found Plaintiff liable for rape are not substantially true and are instead demonstrably false. *See* D.E. 1, ¶ 28. Clearly, the purported defamatory statements are remarkably different.

D. **The Substantial Truth Doctrine Does Not Bar Plaintiff's Claims.**

In making its determination as to whether the substantial truth doctrine applies, "the trier of fact must consider the context of the publication in determining whether the gist or sting associated with it differs from the actual truth." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014). A statement is considered false if it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999).

As is admitted in Defendants' Motion, "the jury did not find that [Plaintiff] had raped Carroll." *See* D.E. 24, p. 4. It cannot be denied that, in making his statements, Stephanopoulos communicated to ABC's viewers that Plaintiff was found guilty of rape. *See* D.E. 1, ¶ 42. Defendants contend that Stephanopoulos' statements were "substantially true" because "[t]he difference between [sexual abuse and rape] would have no different effect on the mind of the reader." *See* D.E. 24, p. 15. Plaintiff's attempt to dispel the notion that "rape" has a far more serious connotation than "sexual assault" is unfounded, unsupported, and requires a fact-specific analysis not properly conducted at this stage of the proceedings. As is stated in the Complaint, Stephanopoulos stated numerous times that Plaintiff was found "***liable for rape***" and that he was

"*found guilty*" of committing rape, even though the jury specifically found that Plaintiff did not rape Carroll on the verdict form. *See* D.E. 1, ¶ 42.

Through the Motion, Defendants are improperly asking this Court to determine, at the motion to dismiss stage, what the "stigma" or "gist" associated with Stephanopoulos' statements *may or may not be*. The Court cannot make this determination at this stage "[b]ecause the trier of fact must consider the context of the publication in determining whether the gist or sting associated with it differs from the actual truth." *See Klayman*, 22 F. Supp. 3d at 1254 (S.D. Fla. 2014); *see also XTec, Inc. v. Hembree Consulting Services, Inc.*, 183 F. Supp. 3d 1245 (S.D. Fla. 2016) (issue of whether an alleged defamatory statement was true or substantially true was for jury in defamation action under Florida law). In *Klayman*, this very Court declined to grant summary judgment in favor of the defendant on defendant's affirmative defense of substantial truth because there remained a question of fact as to the "gist or sting associated with [the alleged defamatory statement]." *Id.*

Indeed, "the actual truth or falsity of a statement seems to be quintessentially a question of fact that ought not to be determined on a motion to dismiss." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016). "Where a communication is ambiguous and reasonably susceptible of a defamatory meaning, it is for the trier of fact to decide whether the communication was understood in the defamatory sense." *Maletta* v. *Woodle*, 2022 WL 2818108, at *3 (M.D. Fla. July 19, 2022); *Pep Boys v. New World Commc'ns of Tampa, Inc.*, 711 So.2d 1325, 1328 (Fla. 2d DCA 1998) ("The questions of whether the broadcast contained false statements and/or statements that could be interpreted as false are questions of fact which should be left for a jury to determine where the communication is ambiguous and is reasonably susceptible of a defamatory meaning"). There is no question that a reasonable person could interpret Stephanopoulos' statement, that Plaintiff

was found liable for rape as opposed to sexual abuse, which is entirely different than what the jury actually found in *Carroll II*.

In addition, Defendants improperly rely on a string of cases for the proposition that "courts have repeatedly held that it is substantially true to describe an individual alleged or found to have committed sexual assault as responsible for 'rape.'" *See* D.E. 24, p. 14.  While Defendants cite to these cases to support their proposition that the "two terms [rape and sexual abuse] are not materially different," the argument misses the mark[8] and none of the cases cited are binding on this Court. Further, the majority of the cases were not decided at the motion to dismiss stage. *Simonson v. United Press Intern., Inc.*, 654 F.2d 478 (7th Cir. 1981) (affirming a summary judgment ruling); *Nanji v. Nat'l Geographic Soc.*, 403 F. Supp. 2d 425, 427 (D. Md. 2005) (granting a motion for summary judgment); *Hovey v. Iowa State Daily Publ'n Bd., Inc.*, 372 N.W.2d 253 (Iowa 1985) (reversing and remanding a ruling on a motion for directed verdict); *Clark v. Clark*, 21 Media L. Rep. 2082 (Fla. 4th DCA 1993) (entering summary final judgment).

Additionally, while *Moore v. Lowe* was decided at the motion to dismiss stage, the facts in that case were substantially different because the court was not evaluating the difference between sexual assault and rape, but the difference between stating that the assailant "attempt[ed] rape" on the victim and stating that the victim "thought that [the assailant] was going to rape her." *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1108 (N.D. Ala. 2022). The court found that, either way, the two

---

[8]     At the risk of belaboring the specifics of Plaintiff's claims, the similarities and differences between rape and sexual assault are not at issue in this case and the analysis espoused by Defendants as to that issue is of no moment. The issue is whether Defendants intentionally and falsely represented the jury's determination of liability which the Complaint alleges that they did. A proper analysis of the actual allegations in the Complaint renders Defendants' "substantially true" defense meaningless.

phrases can be labeled as "an accusation of attempted rape." *Id.* This is far different than being accused of being found liable for rape in the face of an express jury finding to the contrary.

The difference between being labeled a rapist and an individual who was found not liable for committing rape cannot be vaster, more significant, and more heinous. When someone is labeled a rapist, it suggests the most violent and horrific crimes, leading to intense stigma and judgment. No degree or amount of justification by Defendants can excuse the malicious nature of Defendants' conduct nor should it serve as a basis to dismiss Plaintiff's claims.

**E.     The Fair Report Privilege Does Not Extend to the Defamatory Statements.**

Next, Defendants contend that the fair report privilege bars Plaintiff's claim. The fair report privilege provides a qualified protection for reporting on government proceedings, but it does not apply when the reports are misleading or inaccurately portray the proceedings. *Folta v. New York Times Co.*, 2019 WL 1486776, at *2 (N.D. Fla. 2019) ("The fair report privilege is news media's qualified privilege ***to report accurately*** on information received from government officials"). While the fair report privilege is broad, it does not protect misleading or incomplete reporting. As noted in *Larreal v. Telemundo of Fla., LLC*, the privilege requires that reports be reasonably accurate and fair. 489 F. Supp. 3d 1309, 1319 (S.D. Fla. 2020). Similarly, the reporting should not have a "different effect" on the mind of the reader. *Miller v. Gizmodo Media Group, LLC*, 2019 WL 1790248, at *9 (S.D. Fla. Apr. 24, 2019) (denying a motion to dismiss because "a reasonable jury . . . could find the Article's attributions of the allegations to Jane Doe would have a 'different effect' on the mind of the average reader than would a reading of the Supplement").

The fair report privilege applies only if the report is a substantially correct account of the information from official records or government sources. *Folta*, 2019 WL 1486776, at *4 ("Determining whether a report is fair and accurate requires a close comparison of the report and

the documents and information from which it is drawn."); *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 362 (Fla. 4th DCA 1997) (comparing defamatory information with official documents for "material differences" that would defeat the fair report privilege).

In *Dershowitz*, the court found that sufficient plausible facts were alleged to withstand CNN's motion to dismiss despite the claimed privilege. *Dershowitz*, 541 F. Supp. 3d at 1363. The claim in *Dershowitz* stemmed from CNN's use of a "verbatim clip of the plaintiff's actual words spoken during a high-level government proceeding." *Id.* at 1363. CNN argued that, because the broadcast featured the actual words spoken by the plaintiff, the broadcast was protected by the fair report privilege. *Id.* The court stated that, in order to consider whether CNN's broadcast presented "an accurate or fair abridgement of [plaintiff's] comments," the court was required to "look to the source documents." *Id.* Ultimately, the court found that CNN's broadcast was not accurate because, while it presented an abridgement of the plaintiff's actual commentary, "it omitted a crucial qualification," which "changed the gist of what [the plaintiff] said." *Id.* at 1365-66. Similarly, here, as is alleged in the Complaint, the statements Stephanopoulos made present material differences from the actual legal proceedings.  Specifically, as alleged in the Complaint, the verdict form is clear — the jury determined that Carroll failed to prove her allegation of rape and found Plaintiff ***not    liable*** as to that allegation:

**Battery**

**Did Ms. Carroll prove, by a preponderance of the evidence, that**

    1.   Mr. Trump raped Ms. Carroll?

          YES _____      NO ___✓___

*See* D.E. 1, ¶ 42.

Notably, Stephanopoulos previously reported – *accurately* – during a "Good Morning America" segment on May 10, 2023, that Plaintiff **was not** found liable for rape, highlighting his awareness of the true verdicts. *Id.* at ¶¶ 47-51. Despite knowing full well of the truth, Stephanopoulos purposefully changed his story during his March 10, 2024 Segment when he interviewed Mace, who had revealed that she was a victim of rape during a recent speech, and was now endorsing Plaintiff. Stephanopoulos said multiple times that Plaintiff had been found **liable** or **guilty** by **multiple juries** for the **rape** of Carroll. *See* D.E. 1, ¶ 42. Stephanopoulos omitted the fact that the jury did not actually find Plaintiff liable for rape. By omitting critical details and context – namely, the jury's actual verdict – and, instead, handpicking the most salacious of allegations, Stephanopoulos intentionally skewed the narrative and misled the audience. Given Stephanopoulos' knowledge of the actual verdict, the fair report privilege cannot protect his plainly incorrect and misleading statements made on the Segment.

The substantial inaccuracies and omissions in Stephanopoulos' statements, as detailed in the Complaint, and Defendants' attempts at downplaying the negative connotation associated with stating that Plaintiff "raped" Carroll in the face of contrary facts, necessitate a finding that the privilege does not apply. Accordingly, given the allegations and the supporting case law, the Complaint sufficiently pleads facts that, if proven, would show that the fair report privilege does not apply and that the defamation claims are plausible. Therefore, Defendants' Motion to Dismiss should be denied, allowing the case to proceed to further stages for a thorough examination of the claims.

### F.     Request For Leave to Amend.

While Plaintiff maintains its position that Defendants' Motion should be denied, in the event the Court is inclined to consider the Complaint to be deficient, Plaintiff, in the alternative,

respectfully requests that the Court grant him leave to amend his Complaint to cure any such deficiencies.

"[A] district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *See Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1270 (11th Cir. 2006) (internal quotation and citations omitted). None of these reasons are apparent here.

Plaintiff submits that the substance of his amendment, should the Court be inclined to grant Defendants' Motion, would include additional facts to flesh out the differences between the *Carroll* cases and the instant case to demonstrate why Stephanopoulos' statements during the Segment are untrue and are not protective by the fair report privilege. Accordingly, Plaintiff's request should be granted. *See, e.g., Wallis v. Cueto*, 2017 WL 6388914, at *7 (S.D. Fla. Aug. 9, 2017) (granting Plaintiff's request for leave to amend defamation claim following dismissal of claim); *Jetaire Aerospace, LLC v. AerSale, Inc.,* 2024 WL 193518, *3 (S.D. Fla. Apr. 17, 2024) (granting motion for reconsideration of denial of motion for leave to amend complaint for defamation where amendment would provide further specificity supporting defamation claim); *Log Creek, LLC v. Kessler,* 717 F. Supp. 2d 1239, 1251 (N.D. Fla. 2010) (granting leave to amend defamation claim following dismissal in order to allege additional facts to support defamation claim); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (granting plaintiff's

motion for leave to amend in a defamation action); *Aflalo v. Weiner*, 2018 WL 3235529, at *5 (S.D. Fla. July 2, 2018) (granting leave to amend in a defamation action); *XTec, Inc. v. Hembree Consulting Services, Inc.*, 2014 WL 12729173, at *4 (S.D. Fla. Aug. 1, 2014) (dismissing defamation counterclaim with leave to amend).

### III.     REQUEST FOR ORAL ARGUMENT

Pursuant to S.D. Fla. L. R. 7.1(b)(2), Plaintiff hereby respectfully requests oral argument on the Motion due to the complex legal issues raised in the Motion, as well as the factual intricacies of the *Carroll* decisions and how they affect the Court's ultimate ruling on the Motion. Specifically, Plaintiff believes that Defendants' reliance on extraneous exhibits in support of the Motion may require further explanation as to the context of those exhibits and why they are not relevant to the issues in dispute. Further, the determination of the issues raised in the Motion relating to Defendants' reliance on the substantial truth doctrine may warrant further argument. Plaintiff also believes that the Court would benefit from an oral argument in order for the parties to flesh out the issues in greater detail and provide the Court with further context should the Court require it. Plaintiff believes that the oral argument will last approximately one hour.

### IV.     CONCLUSION

**WHEREFORE,** Plaintiff President Donald J. Trump respectfully requests that the Court enter an Order: (a) denying Defendants' Motion to Dismiss, and (b) granting Plaintiff any additional relief that this Court deems just and proper.  Alternatively, in the event that the Court grants any portion of Defendants' Motion to Dismiss, Plaintiff respectfully request that the Court grant Plaintiff leave to amend his Complaint in order to cure any pleading deficiencies.

Date:  May 24, 2024

Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office:  305-614-4071
Fax:  305-440-4385


By: /s/ *Alejandro Brito*
      **ALEJANDRO BRITO**
      Florida Bar No. 098442
      Primary: abrito@britopllc.com
      Secondary: apiriou@britopllc.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on May 24, 2024 the foregoing was served via the Court's

CM/ECF System upon:

SHULLMAN FUGATE PLLC
Rachel E. Fugate, Esq.
Minch Minchin, Esq.
2101 Vista Parkway Suite 4006
West Palm Beach, Florida 33411
rfugate@shullmanfugate.com
mminchin@shullmanfugate.com

DAVIS WRIGHT TREMAINE LLP
Nathan Siegel (*pro hac vice*)
1301 K Street NW, Suite 500
Washington, DC 20005
nathansiegel@dwt.com

Elizabeth A. McNamara (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
lizmcnamara@dwt.com

*Counsel for Defendants*

By: /s/ *Alejandro Brito*